# EXHIBIT 1

**SUM-100**

# SUMMONS
## *(CITACION JUDICIAL)*

FOR COURT USE ONLY
*(SOLO PARA USO DE LA CORTE)*

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*

Monsanto Company; Bayer Cropscience LP; Wilbur-Ellis Company, LLC; Wilbur-Ellis Feed, LLC; and DOES 1-10

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*
Denise Surette

**ELECTRONICALLY FILED**
Superior Court of California
County of Sacramento
06/13/2025
By: _____ T. Dyer _____ Deputy

NOTICE! You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have **30 CALENDAR DAYS** after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (*www.lawhelpcalifornia.org*), the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), or by contacting your local court or county bar association. **NOTE:** The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.

*¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.*

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.*

The name and address of the court is:
*(El nombre y dirección de la corte es):* Gordon D. Schaber Courthouse

720 Ninth Street, Sacramento, CA 95814

**CASE NUMBER:**
*(Número del Caso):* 25CV014052

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
David J. Wool, Wool Trial Law, LLC, 1001 N. Bannock Street, Ste. 410, Denver, CO 80204

DATE:
*(Fecha)* 06/13/2025
Clerk, by
*(Secretario)* /s/ T. Dyer , Deputy
*(Adjunto)*

*(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)*
*(Para prueba de entrega de esta citatión use el formulario Proof of Service of Summons, (POS-010)).*

[SEAL]

**NOTICE TO THE PERSON SERVED:** You are served
1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify):*

3. ☐ on behalf of *(specify):*

   under: ☐ CCP 416.10 (corporation) ☐ CCP 416.60 (minor)
   ☐ CCP 416.20 (defunct corporation) ☐ CCP 416.70 (conservatee)
   ☐ CCP 416.40 (association or partnership) ☐ CCP 416.90 (authorized person)
   ☐ other *(specify):*
4. ☐ by personal delivery on *(date):*

**Page 1 of 1**

Form Adopted for Mandatory Use
Judicial Council of California
SUM-100 [Rev. July 1, 2009]

**SUMMONS**

Code of Civil Procedure §§ 412.20, 465
*www.courts.ca.gov*

ELECTRONICALLY FILED
Superior Court of California
County of Sacramento
06/13/2025
By: _____ T. Dyer _____ Deputy

David J. Wool (SBN 324124)
**Wool Trial Law, LLC**
1001 N. Bannock St
Suite 410
Denver, CO 80204
Tel: (720) 509-9101
david@wooltriallaw.com

Devin van der Hahn (*pro hac vice* forthcoming)
**VanderHahn LLP**
1000 Main St, Suite 2300
Houston, TX 77002
Tel. 281.688.5000
Fax 832.734.7120
devin@vanderhahn.com

Sean Duddy (*pro hac vice* forthcoming)
**Duddy & Czarnecki PLLC**
601 Pennsylvania Ave NW
South Building, Suite 900
Washington, DC 20004
202-771-7978
skd@duddyczarnecki.com

*Attorneys for Plaintiff*

## THE SUPERIOR COURT OF THE STATE OF CALIFORNIA,

## IN AND FOR THE COUNTY OF SACRAMENTO

| | |
|---|---|
| DENISE SURETTE,<br><br>     *Plaintiff,*<br>    vs.<br><br>MONSANTO COMPANY; BAYER CROPSCIENCE LP;<br>WILBUR-ELLIS COMPANY, LLC;<br>WILBUR-ELLIS FEED, LLC;<br>and DOES 1-10.<br><br>     *Defendants*. | CASE NO: 25CV014052<br><br>**COMPLAINT FOR DAMAGES FOR:**<br><br>1) Strict Liability –Design Defect<br>2) Strict Liability – Failure To Warn<br>3) Negligence<br>4) Punitive Damages<br><br>**DEMAND FOR JURY TRIAL** |

## COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff Denise Surette (hereinafter, "Plaintiff") by and through her undersigned attorneys, alleges the following:

## STATEMENT OF THE CASE

1.     In 1970, Defendant Monsanto Company discovered the herbicidal properties of glyphosate and began marketing it in products in 1974 under the brand name Roundup. Roundup is a non-selective herbicide used to kill weeds that commonly compete with the growing of crops. By 2001, glyphosate had become the most-used active ingredient in American agriculture with 85–90 millions of pounds used annually. That number grew to 185 million pounds by 2007. As of 2013, glyphosate was the world's most widely used herbicide.

2.     Monsanto is a multinational agricultural biotechnology corporation based in St. Louis, Missouri. It is the world's leading producer of glyphosate. As of 2009, Monsanto was the world's leading producer of seeds, accounting for 27% of the world seed market. The majority of these seeds are of the Roundup Ready® brand. The stated advantage of Roundup Ready® crops is that they substantially improve a farmer's ability to control weeds, since glyphosate can be sprayed in the fields during the growing season without harming their crops. In 2010, an estimated 70% of corn and cotton, and 90% of soybean fields in the United States were Roundup Ready®.

3.     Monsanto's glyphosate products are registered in 130 countries and approved for use on over 100 different crops. They are ubiquitous in the environment. Numerous studies confirm that glyphosate is found in rivers, streams, and groundwater in agricultural areas where Roundup is used. It has been found in food, in the urine of agricultural workers, and even in the urine of urban dwellers who are not in direct contact with glyphosate.

4.     On March 20, 2015, the International Agency for Research on Cancer ("IARC"), an agency of the World Health Organization ("WHO"), issued an evaluation of several herbicides, including glyphosate. That evaluation was based, in part, on studies of exposures to

glyphosate in several countries around the world, and it traces the health implications from exposure to glyphosate since 2001.

5.    On July 29, 2015, IARC issued the formal monograph relating to glyphosate. In that monograph, the IARC Working Group provides a thorough review of the numerous studies and data relating to glyphosate exposure in humans.

6.    The IARC Working Group classified glyphosate as a Group 2A herbicide, which means that it is probably carcinogenic to humans. The IARC Working Group concluded that the cancers most associated with glyphosate exposure are non-Hodgkin lymphoma and other hematopoietic cancers, including lymphocytic lymphoma/chronic lymphocytic leukemia, B-cell lymphoma, and multiple myeloma.

7.    The IARC evaluation is significant. It confirms what has been believed for years: that glyphosate is toxic to humans.

8.    Nevertheless, Monsanto, since it began selling Roundup, has represented it as safe to humans and the environment. Indeed, Monsanto has repeatedly proclaimed and continues to proclaim to the world, and particularly to United States consumers, that glyphosate-based herbicides, including Roundup, create no unreasonable risks to human health or to the environment.

**JURISDICTION AND VENUE**

9.    This Court has jurisdiction over this action pursuant to Constitution Article VI, Section 10, which grants the Superior Court "original jurisdiction in all causes except those given by statute to other trial courts."  The Statutes under which this action is brought do not specify any other basis for jurisdiction.

10.    This Court has jurisdiction over the Defendants because, based upon information and belief, each is a California resident, a corporation and/or entity organized under the laws of the State of California, a foreign corporation or association authorized to do business in California and registered with the California Secretary of State or has sufficient minimum

contacts in California, or otherwise purposefully avails itself of the California market so as to render the exercise of jurisdiction over it by the California courts consistent with traditional notions of fair play and substantial justice. Defendants have also purposefully availed themselves of the benefits and the protections of the laws within the State of California.

11.    Venue is proper in this Court pursuant to California Code of Civil Procedure Section 395(a) because at all relevant times Plaintiff Denise Surette resided in this county and the injuries alleged herein arose from conduct that occurred in this county.

12.    Plaintiff seeks relief that is within the jurisdictional limits of the Court.

## THE PARTIES

### Plaintiff

13.    Plaintiff Denise Surette is and was at all relevant times a resident and citizen of California.  Plaintiff purchased and used Roundup from approximately 2009 through 2022. She was diagnosed with Non-Hodgkin's lymphoma in 2022.

### Defendants

14.    Defendant Monsanto Company ("Monsanto") is a Delaware corporation with its headquarters and principal place of business in St. Louis, Missouri.  At all times relevant to this complaint, Monsanto was the entity that discovered the herbicidal properties of glyphosate and the manufacturer of Roundup.  Monsanto has regularly transacted and conducted business within the state of California, and has derived substantial revenue from goods and products, including Roundup, used in the State of California.  Monsanto expected or should have expected their acts to have consequences within the State of California, and derived substantial revenue from interstate commerce.

15.    Defendant Bayer Cropscience LP ("Bayer Cropscience") is a Delaware limited partnership with its principal place of business in Research Triangle Park, North Carolina. It is an indirect subsidiary of Bayer AG. Bayer Cropscience has regularly transacted and conducted business within the state of California, and has derived substantial revenue from goods and

products, including Roundup, used in the State of California and can be served through its registered agent CSC - Lawyers Incorporating Service, 2710 Gateway Oaks Drive, Sacramento, CA. Bayer Cropscience expected or should have expected their acts to have consequences within the State of California, and derived substantial revenue from interstate commerce.

16.     Defendant Wilbur-Ellis Company LLC is a California limited liability corporation with its headquarters and principal place of business in San Francisco, California. At all times relevant to this complaint, Wilbur-Ellis Company, LLC sold and distributed Monsanto products including Roundup, within the State of California.

17.     Defendant Wilbur-Ellis Feed LLC (with Wilbur-Ellis Company LLC, hereinafter ("Wilbur-Ellis") is a California limited liability corporation with its headquarters and principal place of business in San Francisco, California.  At all times relevant to this complaint, Wilbur Ellis Feed, LLC sold and distributed Monsanto products including Roundup, within the State of California.

18.     The true names of Does 1 through 10, whether individual, corporate, associate, agency or otherwise, are unknown to Plaintiff, which, under California Code of Civil Procedure section 474, sues these Doe Defendants under fictitious names.

19.     Plaintiff is informed and believes, and based thereon alleges, that in committing the acts alleged herein, each and every managing agent, agent, representative and/or employee of the Defendants was working within the course and scope of said agency, representation and/or employment with the knowledge, consent, ratification, and authorization of the Defendants and their directors, officers and/or managing agents.

## FACTS

20.     Glyphosate is a broad-spectrum, non-selective herbicide used in a wide variety of herbicidal products around the world.

COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

21.    Plants treated with glyphosate translocate the systemic herbicide to their roots, shoot regions and fruit, where it interferes with the plant's ability to form aromatic amino acids necessary for protein synthesis. Treated plants generally die within two to three days. Because plants absorb glyphosate, it cannot be completely removed by washing or peeling produce or by milling, baking, or brewing grains.

22.    For nearly 40 years, farms across the world have used Roundup without knowing of the dangers its use poses. That is because when Monsanto first introduced Roundup, it touted glyphosate as a technological breakthrough: it could kill almost every weed without causing harm either to people or to the environment. Of course, history has shown that not to be true. According to the WHO, the main chemical ingredient of Roundup—glyphosate—is a probable cause of cancer. Those most at risk are farm workers and other individuals with workplace exposure to Roundup, such as workers in garden centers, nurseries, and landscapers. Agricultural workers are, once again, victims of corporate greed. Monsanto assured the public that Roundup was harmless. In order to prove this, Monsanto championed falsified data and attacked legitimate studies that revealed its dangers. Monsanto led a prolonged campaign of misinformation to convince government agencies, farmers, and the general population that Roundup was safe.

### The Discovery of Glyphosate and Development of Roundup

23.    The herbicidal properties of glyphosate were discovered in 1970 by Monsanto chemist John Franz. The first glyphosate-based herbicide was introduced to the market in the mid-1970s under the brand name Roundup. From the outset, Monsanto marketed Roundup as a "safe" general-purpose herbicide for widespread commercial and consumer use; Monsanto still markets Roundup as safe today.

### Registration of Herbicides under Federal Law

24.    The manufacture, formulation and distribution of herbicides, such as Roundup, are regulated under the Federal Insecticide, Fungicide, and Rodenticide Act ("FIFRA" or "Act"), 7 U.S.C. § 136 et seq. FIFRA requires that all pesticides be registered with the Environmental

Protection Agency ("EPA" or "Agency") prior to their distribution, sale, or use, except as described by the Act. 7 U.S.C. § 136a(a).

25.    As part of the pesticide registration process, the EPA requires, among other things, a variety of tests to evaluate the potential for exposure to pesticides, toxicity to people and other potential non-target organisms, and other adverse effects on the environment.

26.    As a general rule, FIFRA requires registrants, the chemical companies registered to sell the pesticides, to perform health and safety testing of pesticides. However, FIFRA does not require the EPA itself to perform health and safety testing of pesticides, and the EPA generally does not perform such testing.

27.    Because pesticides are toxic to plants, animals, and humans, at least to some degree, the EPA requires as part of the registration process, among other things, a variety of tests to evaluate the potential for exposure to pesticides, toxicity to people and other potential non-target organisms, and other adverse effects on the environment. Registration by the EPA, however, is not an assurance or finding of safety. The determination the Agency must make in registering or re-registering a product is not that the product is "safe," but rather that use of the product in accordance with its label directions "will not generally cause unreasonable adverse effects on the environment." 7 U.S.C. § 136a(c)(5)(D).

28.    The EPA registers (or re-registers) a pesticide if it is persuaded, based largely on studies and data submitted by the registrant, that: (1) its composition is such as to warrant the proposed claims for it, 7 U.S.C. § 136a(c)(5)(A); (2) its labeling and other material required to be submitted comply with the requirements of FIFRA, 7 U.S.C. § 136a(c)(5)(B); (3) it will perform its intended function without unreasonable adverse effects on the environment, 7 U.S.C. § 136a(c)(5)(C); and (4) when used in accordance with widespread and commonly recognized practice it will not generally cause unreasonable adverse effects on the environment, 7 U.S.C. § 136a(c)(5)(D).

COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

29.     FIFRA defines "unreasonable adverse effects on the environment" to mean "any unreasonable risk to man or the environment, taking into account the economic, social, and environmental costs and benefits of the use of any pesticide." 7 U.S.C. § 136(bb). FIFRA thus requires EPA to make a risk/benefit analysis in determining whether a registration should be granted or allowed to continue to be sold in commerce.

30.     The EPA registered Roundup for distribution, sale, and manufacture in the United States.

31.     FIFRA generally requires that the registrant, Monsanto in the case of Roundup, conducts the health and safety testing of pesticide products. The EPA has protocols governing the conduct of tests required for registration and the laboratory practices that must be followed in conducting these tests. The data produced by the registrant must be submitted to the EPA for review and evaluation. The government is not required, nor is it able, however, to perform the product tests that are required of the manufacturer.

32.     Under FIFRA, "[a]s long as no cancellation proceedings are in effect registration of a pesticide shall be prima facie evidence that the pesticide, its labeling and packaging comply with the registration provisions of [FIFRA]." 7 U.S.C. § 136a(f)(2). However, FIFRA further provides that "[i]n no event shall registration of an article be construed as a defense for the commission of any offense under [FIFRA]." 7 U.S.C. § 136a(f)(2).

33.     The distribution or sale of a pesticide that is misbranded is an offense under FIFRA, which provides in relevant part that "it shall be unlawful for any person in any State to distribute or sell to any person ... any pesticide which is ... misbranded." 7 U.S.C. § 136j(a)(1)(E). A pesticide is misbranded under FIFRA if, among other things: (1) its labeling bears any statement, design, or graphic representation relative thereto or to its ingredients which is false or misleading in any particular, 7 U.S.C. § 136(q)(1)(A); (2) the labeling accompanying it does not contain directions for use which are necessary for

effecting the purpose for which the product is intended and if complied with, together with any requirements imposed under section 136a(d) of this title, are adequate to protect health and the environment, 7 U.S.C. § 136(q)(1)(F); or (3) the label does not contain a warning or caution statement which may be necessary and if complied with, together with any requirements imposed under section 136a(d) of this title, is adequate to protect health and the environment," 7 U.S.C. § 136(q)(1)(G).

34.    As a result, a pesticide may be misbranded despite an EPA determination that it met FIFRA's registration criteria. In other words, notwithstanding its registration, a pesticide is misbranded if its label contains "false or misleading" statements, has inadequate instructions for use, or omits warnings or cautionary statements necessary to protect human health. Similarly, a pesticide may be found to cause unreasonable adverse effects on humans when used according to the approved label despite a determination by the EPA that it would not.

35.    Plaintiff does not seek in this action to impose on Defendants any labeling or packaging requirement in addition to or different from those required under FIFRA. Any allegation in this Complaint that a Defendant breached a duty to provide adequate directions for the use of or warnings about Roundup, breached a duty to provide adequate packaging for Roundup, concealed, suppressed, or omitted to disclose any material fact about Roundup, or engaged in any unfair or deceptive practice regarding Roundup, is intended and should be construed to be consistent with that alleged breach, concealment, suppression, or omission, or unfair or deceptive practice having rendered the Roundup "misbranded" under FIFRA. However, Plaintiff brings claims and seeks relief in this action only under state law and does not bring any claims or seek any relief in this action under FIFRA.

36.     On April 8, 2022, the EPA stated that the following label language was not false or misleading and therefore the EPA would approve inclusion of the following on a glyphosate label if requested by registrants:

> "Using this product can expose you to glyphosate.  The International Agency for Research of Cancer classified glyphosate as probably carcinogenic to humans.  US EPA has determined that glyphosate is not likely to be carcinogenic to humans; other authorities have made similar determinations. A wide variety of factors affect your potential risk, including the level and duration of exposure to the chemical.  For more information including ways to reduce your exposure, go to www.P65Warnings.ca/gov/glyphosate."

37.     The US EPA further stated that products containing this warning would not be considered misbranded.

### Scientific Fraud Underlying the Marketing and Sale of Glyphosate/Roundup

38.     Based on early studies that glyphosate could cause cancer in laboratory animals, the EPA originally classified glyphosate as possibly carcinogenic to humans (Group C) in 1985. After pressure from Monsanto, including contrary studies it provided to the EPA, the EPA changed its classification to evidence of non-carcinogenicity in humans (Group E) in 1991. In so classifying glyphosate, however, the EPA made clear that the designation did not mean the chemical does not cause cancer: "It should be emphasized, however, that designation of an agent in Group E is based on the available evidence at the time of evaluation and should not be interpreted as a definitive conclusion that the agent will not be a carcinogen under any circumstances."

39.     On two occasions, the EPA found that the laboratories hired by Monsanto to test the toxicity of its Roundup products for registration purposes committed fraud.

40.    In the first instance, Monsanto, in seeking initial registration of Roundup by EPA, hired Industrial Bio-Test Laboratories ("IBT") to perform and evaluate pesticide toxicology studies relating to Roundup. IBT performed about 30 tests on glyphosate and glyphosate-containing products, including nine of the 15 residue studies needed to register Roundup.

41.    In 1976, the United States Food and Drug Administration ("FDA") performed an inspection of IBT that revealed discrepancies between the raw data and the final report relating to the toxicological impacts of glyphosate. The EPA subsequently audited IBT; it too found the toxicology studies conducted for the Roundup herbicide to be invalid. An EPA reviewer stated, after finding "routine falsification of data" at IBT, that it was "hard to believe the scientific integrity of the studies when they said they took specimens of the uterus from male rabbits."

42.    Three top executives of IBT were convicted of fraud in 1983.

43.    In the second incident of data falsification, Monsanto hired Craven Laboratories in 1991 to perform pesticide and herbicide studies, including for Roundup. In that same year, the owner of Craven Laboratories and three of its employees were indicted, and later convicted, of fraudulent laboratory practices in the testing of pesticides and herbicides.

44.    Despite the falsity of the tests that underlie its registration, within a few years of its launch, Monsanto was marketing Roundup in 115 countries.

### The Importance of Roundup to Monsanto's Market Dominance Profits

45.    The success of Roundup was key to Monsanto's continued reputation and dominance in the marketplace. Largely due to the success of Roundup sales, Monsanto's agriculture division was out-performing its chemicals division's operating income, and that gap increased yearly. But with its patent for glyphosate expiring in the United States in the year 2000, Monsanto needed a strategy to maintain its Roundup market dominance and to ward off impending competition.

46.    In response, Monsanto began the development and sale of genetically engineered Roundup Ready® seeds in 1996. Since Roundup Ready® crops are resistant to glyphosate;

COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

farmers can spray Roundup onto their fields during the growing season without harming the crop. This allowed Monsanto to expand its market for Roundup even further; by 2000, Monsanto's biotechnology seeds were planted on more than 80 million acres worldwide and nearly 70% of American soybeans were planted from Roundup Ready® seeds. It also secured Monsanto's dominant share of the glyphosate/Roundup market through a marketing strategy that coupled proprietary Roundup Ready® seeds with continued sales of its Roundup herbicide.

47.     Through a three-pronged strategy of increased production, decreased prices, and by coupling with Roundup Ready® seeds, Roundup became Monsanto's most profitable product. In 2000, Roundup accounted for almost $2.8 billion in sales, outselling other herbicides by a margin of five to one, and accounting for close to half of Monsanto's revenue. Today, glyphosate remains one of the world's largest herbicides by sales volume.

### Monsanto has known for decades that it falsely advertises the safety of Roundup.

48.     In 1996, the New York Attorney General ("NYAG") filed a lawsuit against Monsanto based on its false and misleading advertising of Roundup ® products. Specifically, the lawsuit challenged Monsanto's general representations that its spray-on glyphosate-based herbicides, including Roundup, were "safer than table salt" and "practically non-toxic" to mammals, birds, and fish. Among the representations the NYAG found deceptive and misleading about the human and environmental safety of Roundup are the following:

a)    Remember that environmentally friendly Roundup herbicide is biodegradable. It won't build up in the soil so you can use Roundup with confidence along customers' driveways, sidewalks and fences ...

b)    And remember that Roundup is biodegradable and won't build up in the soil. That will give you the environmental confidence you need to use Roundup everywhere you've got a weed, brush, edging or trimming problem.

c)    Roundup biodegrades into naturally occurring elements.

---

COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

d)  Remember that versatile Roundup herbicide stays where you put it. That means there's no washing or leaching to harm customers' shrubs or other desirable vegetation.

e)  This non-residual herbicide will not wash or leach in the soil. It ... stays where you apply it.

f)  You can apply Accord with "confidence because it will stay where you put it" it bonds tightly to soil particles, preventing leaching. Then, soon after application, soil microorganisms biodegrade Accord into natural products.

g)  Glyphosate is less toxic to rats than table salt following acute oral ingestion.

h)  Glyphosate's safety margin is much greater than required. It has over a 1,000-fold safety margin in food and over a 700-fold safety margin for workers who manufacture it or use it.

i) You can feel good about using herbicides by Monsanto. They carry a toxicity category rating of 'practically non-toxic' as it pertains to mammals, birds and fish.

j)  "Roundup can be used where kids and pets will play and breaks down into natural material." This ad depicts a person with his head in the ground and a pet dog standing in an area which has been treated with Roundup.

49. On November 19, 1996, Monsanto entered into an Assurance of Discontinuance with NYAG, in which Monsanto agreed, among other things, "to cease and desist from publishing or broadcasting any advertisements [in New York] that represent, directly or by implication" that:

a)  its glyphosate-containing pesticide products or any component thereof are safe, non-toxic, harmless or free from risk. ***

b)  its glyphosate-containing pesticide products or any component thereof manufactured, formulated, distributed or sold by Monsanto are biodegradable ***

COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

c)  its glyphosate-containing pesticide products or any component thereof stay where they are applied under all circumstances and will not move through the environment by any means. ***

d)  its glyphosate-containing pesticide products or any component thereof are "good" for the environment or are "known for their environmental characteristics." * * *

e)  glyphosate-containing pesticide products or any component thereof are safer or less toxic than common consumer products other than herbicides;

f)  its glyphosate-containing products or any component thereof might be classified as "practically non-toxic."

50.    Monsanto did not alter its advertising in the same manner in any state other than New York, and on information and belief still has not done so today.

51.    In 2009, France's highest court ruled that Monsanto had not told the truth about the safety of Roundup. The French court affirmed an earlier judgement that Monsanto had falsely advertised its herbicide Roundup as "biodegradable" and that it "left the soil clean."

### *Classifications and Assessments of Glyphosate*

52.    The IARC process for the classification of glyphosate followed the stringent procedures for the evaluation of a chemical agent. Over time, the IARC Monograph program has reviewed 980 agents. Of those reviewed, it has determined 116 agents to be Group 1 (Known Human Carcinogens); 73 agents to be Group 2A (Probable Human Carcinogens); 287 agents to be Group 2B (Possible Human Carcinogens); 503 agents to be Group 3 (Not Classified); and one agent to be Probably Not Carcinogenic.

53.    The established procedure for IARC Monograph evaluations is described in the IARC Programme's Preamble. Evaluations are performed by panels of international experts, selected on the basis of their expertise and the absence of actual or apparent conflicts of interest.

54.     One year before the Monograph meeting, the meeting is announced and there is a call both for data and for experts. Eight months before the Monograph meeting, the Working Group membership is selected and the sections of the Monograph are developed by the Working Group members. One month prior to the Monograph meeting, the call for data is closed and the various draft sections are distributed among Working Group members for review and comment. Finally, at the Monograph meeting, the Working Group finalizes review of all literature, evaluates the evidence in each category, and completes the overall evaluation. Within two weeks after the Monograph meeting, the summary of the Working Group findings is published in Lancet Oncology, and within a year after the meeting, the final Monograph is finalized and published.

55.     In assessing an agent, the IARC Working Group reviews the following information:

a)      human, experimental, and mechanistic data;

b)      all pertinent epidemiological studies and cancer bioassays; and

c)      representative mechanistic data. The studies must be publicly available and have sufficient detail for meaningful review, and reviewers cannot be associated with the underlying study.

56.     In March 2015, IARC reassessed glyphosate. The summary published in The Lancet Oncology reported that glyphosate is a Group 2A agent and probably carcinogenic in humans.

57.     On July 29, 2015, IARC issued its Monograph for glyphosate, Monograph 112. For Volume 112, the volume that assessed glyphosate, a Working Group of 17 experts from 11 countries met at IARC from March 3–10, 2015, to assess the carcinogenicity of certain herbicides, including glyphosate. The March meeting culminated nearly a one-year review and preparation by the IARC Secretariat and the Working Group, including a comprehensive review of the latest available scientific evidence. According to published procedures, the Working

Group considered "reports that have been published or accepted for publication in the openly available scientific literature" as well as "data from governmental reports that are publicly available."

58.    The studies considered the following exposure groups: occupational exposure of farmers and tree nursery workers in the United States, forestry workers in Canada and Finland, and municipal weed-control workers in the United Kingdom; and para-occupational exposure in farming families.

59.    Glyphosate was identified as the second-most used household herbicide in the United States for weed control between 2001 and 2007 and the most heavily used herbicide in the world in 2012.

60.    Exposure pathways are identified as air (especially during spraying), water, and food. Community exposure to glyphosate is widespread and found in soil, air, surface water, and groundwater, as well as in food.

61.    The assessment of the IARC Working Group identified several case control studies of occupational exposure in the United States, Canada, and Sweden. These studies show a human health concern from agricultural and other work-related exposure to glyphosate.

62.    The IARC Working Group found an increased risk between exposure to glyphosate and non-Hodgkin lymphoma ("NHL") and several subtypes of NHL, and the increased risk persisted after adjustment for other pesticides.

63.    The IARC Working Group also found that glyphosate caused DNA and chromosomal damage in human cells. One study in community residents reported increases in blood markers of chromosomal damage (micronuclei) after glyphosate formulations were sprayed.

64.    In male CD-1 mice, glyphosate induced a positive trend in the incidence of a rare tumor, renal tubule carcinoma. A second study reported a positive trend for haemangiosarcoma

COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

in male mice. Glyphosate increased pancreatic islet-cell adenoma in male rats in two studies. A glyphosate formulation promoted skin tumors in an initiation-promotion study in mice.

65.    The IARC Working Group also noted that glyphosate has been detected in the urine of agricultural workers, indicating absorption. Soil microbes degrade glyphosate to aminomethylphosphoric acid (AMPA). Blood AMPA detection after exposure suggests intestinal microbial metabolism in humans.

66.    The IARC Working Group further found that glyphosate and glyphosate formulations induced DNA and chromosomal damage in mammals, and in human and animal cells in utero.

67.    The IARC Working Group also noted genotoxic, hormonal, and enzymatic effects in mammals exposed to glyphosate. Essentially, glyphosate inhibits the biosynthesis of aromatic amino acids, which leads to several metabolic disturbances, including the inhibition of protein and secondary product biosynthesis and general metabolic disruption.

68.    The IARC Working Group also reviewed an Agricultural Health Study, consisting of a prospective cohort of 57,311 licensed pesticide applicators in Iowa and North Carolina. While this study differed from others in that it was based on a self-administered questionnaire, the results support an association between glyphosate exposure and Multiple Myeloma, Hairy Cell Leukemia (HCL), and Chronic Lymphocytic Leukemia (CLL), in addition to several other cancers.

### Other Earlier Findings About Glyphosate's Dangers to Human Health

69.    The EPA has a technical fact sheet, as part of its Drinking Water and Health, National Primary Drinking Water Regulations publication, relating to glyphosate. This technical fact sheet predates the IARC March 20, 2015, evaluation. The fact sheet describes the release patterns for glyphosate as follows:

### Release Patterns

70.     Glyphosate is released to the environment in its use as a herbicide for controlling woody and herbaceous weeds on forestry, right-of-way, cropped and non-cropped sites. These sites may be around water and in wetlands. It may also be released to the environment during its manufacture, formulation, transport, storage, disposal, and cleanup, and from spills. Since glyphosate is not a listed chemical in the Toxics Release Inventory, data on releases during its manufacture and handling are not available. Occupational workers and home gardeners may be exposed to glyphosate by inhalation and dermal contact during spraying, mixing, and cleanup. They may also be exposed by touching soil and plants to which glyphosate was applied. Occupational exposure may also occur during glyphosate's manufacture, transport storage, and disposal.

71.     In 1995, the Northwest Coalition for Alternatives to Pesticides reported that in California, the state with the most comprehensive program for reporting of pesticide-caused illness, glyphosate was the third most commonly-reported cause of pesticide illness among agricultural workers.

***The Toxicity of Other Ingredients in Roundup***

72.     In addition to the toxicity of the active ingredient, glyphosate, several studies support the hypothesis that the glyphosate-based formulation in Defendant's Roundup products is more dangerous and toxic than glyphosate alone. Indeed, as early as 1991, available evidence demonstrated that glyphosate formulations were significantly more toxic than glyphosate alone.[1]

73.     In 2002, a study by Julie Marc, entitled "Pesticide Roundup Provokes Cell Division Dysfunction at the Level of CDK1/Cyclin B Activation," revealed that Roundup causes delays in the cell cycles of sea urchins but that the same concentrations of glyphosate alone were ineffective and did not alter cell cycles.[2]

---

[1] Martinez, T.T. and K. Brown, *Oral and pulmonary toxicology of the surfactant used in Roundup herbicide*, PROC. WEST. PHARMACOL. SOC. 34:43-46 (1991).

[2] Julie Marc, et al., *Pesticide Roundup Provokes Cell Division Dysfunction at the Level of CDK1/Cyclin B Activation*, 15 CHEM. RES. TOXICOL. 326–331 (2002), *available at* http://pubs.acs.org/doi/full/10.1021/tx015543g.

74.    A 2004 study by Marc and others, entitled "Glyphosate-based pesticides affect cell cycle regulation," demonstrated a molecular link between glyphosate-based products and cell cycle dysregulation. The researchers noted that "cell-cycle dysregulation is a hallmark of tumor cells and human cancer. Failure in the cell-cycle checkpoints leads genomic instability and subsequent development of cancers from the initial affected cell." Further, "[s]ince cell cycle disorders such as cancer result from dysfunction of a unique cell, it was of interest to evaluate the threshold dose of glyphosate affecting the cells."[3]

75.    In 2005, a study by Francisco Peixoto, entitled "Comparative effects of the Roundup and glyphosate on mitochondrial oxidative phosphorylation," demonstrated that Roundup's effects on rat liver mitochondria are far more toxic than equal concentrations of glyphosate alone. The Peixoto study further suggested that the harmful effects of Roundup on mitochondrial bioenergetics could not be exclusively attributed to glyphosate but could be the result of other chemicals, such as the surfactant, or in the alternative, due to a potential synergic effect between glyphosate and other ingredients in the Roundup formulation.[4]

76.    In 2009, Nora Benachour and Gilles-Eric Seralini published a study examining the effects of Roundup and glyphosate on human umbilical, embryonic, and placental cells. The study tested dilution levels of Roundup and glyphosate that were far below agricultural recommendations, corresponding with low levels of residue in food. The researchers ultimately concluded that supposed "inert" ingredients, and possibly the surfactant present in Roundup, alter human cell permeability and amplify toxicity of glyphosate alone. The researchers further suggested that assessments of glyphosate toxicity should account for the presence of adjuvants or additional chemicals used in the formulation of the complete pesticide. The study confirmed

[3] Julie Marc, et al., *Glyphosate-based pesticides affect cell cycle regulation*, 96 BIOLOGY OF THE CELL 245, 245-249 (2004), *available at* http://onlinelibrary.wiley.com/doi/10.1016/j.biolcel.2003.11.010/epdf.
[4] Francisco Peixoto, *Comparative effects of the Roundup and glyphosate on mitochondrial oxidative phosphorylation*, 61 CHEMOSPHERE 1115, 1122 (2005), *available at* https://www.researchgate.net/publication/7504567_Comparative_effects_of_the_Roundup_and_glyphosate_on_mitochondrial_oxidative_phosphorylation.

that the adjuvants present in Roundup are not, in fact, inert and that Roundup is potentially far more toxic than its active ingredient glyphosate alone.[5]

77.    The results of these studies were at all times available to Defendant.

78.    Monsanto's chief toxicologist Donna Farmer has admitted that she cannot say that Roundup does not cause cancer because Monsanto has not performed carcinogenicity studies with the formulated product Roundup, the very product that caused Plaintiff's NHL.[6] Indeed, she further admitted that in the 35 years that Monsanto has marketed Roundup to the public, Monsanto has conducted no chronic carcinogenicity studies on the formulated Roundup product merely because EPA did not require that such a study be performed for registration of glyphosate.[7]

79.    Defendant thus knew or should have known that Roundup is more toxic than glyphosate alone and that safety studies of Roundup, impurities within Roundup, Roundup's adjuvants and "inert" ingredients, and/or the surfactant were necessary to protect Plaintiff from Roundup.

80.    Despite its knowledge that Roundup is considerably more dangerous than glyphosate alone, Defendant continued to promote Roundup as safe.

### *Impurities Make Roundup Even More Dangerous*

81.    Apart from the surfactant and anti-foam agent, Roundup formulations contain a number of other chemicals and/or impurities that increase its toxicity including n-nitrosoglyphosate ("NNG"), formaldehyde, arsenic, ethylene oxide, and 1,4 dioxane.

82.    Though these impurities *by themselves* are not responsible for Plaintiff's NHL, their effect is additive to the overall carcinogenicity of Roundup formulations. It is a generally

---

[5] Nora Benachour, et al., *Glyphosate Formulations Induce Apoptosis and Necrosis in Human Umbilical, Embryonic, and Placental Cells*, 22 CHEM. RES. TOXICOL. 97-105 (2008), *available at* http://big.assets.huffingtonpost.com/france.pdf.
[6] *See* Plaintiffs' Submission in Response to Pretrial Order No. 8, Ex. 7, *In re: Roundup Products Liability Litigation*, MDL No. 2741 (N.D. Cal., Mar. 14, 2017), ECF No. 187-7.
[7] *See id.*

20

COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

accepted principle of toxicology that adding carcinogens to an already carcinogenic substance creates and additive or synergistic effect. *See* Kawaguchi I, Doi M, Kakinuma S, Shimada Y. Combined effect of multiple carcinogens and synergy index. J Theor Biol. 2006;243(1):143-151. For example, additives in cigarettes, like those in Roundup, make cigarettes more carcinogenic and dangerous, even though no scientists believes benzene, tar, or nitrosamines in cigarettes cause cancer in smokers, independent of the cigarette as a whole.

83.    Monsanto was aware for decades that 1,4-dioxane, an impurity found in many Roundup surfactants, acts as a tumor promoter, meaning that it facilitates the growth of existing cancers, even if it does not cause them itself.

84.    Arsenic and formaldehyde (both indisputable carcinogens) are also impurities that exist within Roundup. Each makes the formulation more dangerous as both are capable of suppressing the human immune system, thereby facilitating the development of NHL.

85.    Ethylene oxide is highly carcinogenic in its own right and can cause NHL.

86.    Monsanto also willfully blinded itself to the amount of arsenic in its Roundup formulations, which is as high as 173 ppb.

87.    N-Nitrosoglyphosate ("NNG") is another impurity that is inherent to glyphosate.

88.    NNG belongs to a class of chemicals called nitrosamines. Nitrosamines are so dangerous that The Environmental Protection Agency ("EPA") **presumes** them to be carcinogenic when they occur at certain levels. EPA based its approach on testing that found that 80% of the nitrosamines tested are carcinogenic. *See* 45 Fed. Reg. 42855.

89.    Studies have found that as much as 90% of nitrosamines studied are carcinogenic. *See* Straif, Kurt, et al. "Exposure to high concentrations of nitrosamines and cancer mortality among a cohort of rubber workers," Occupational & Environmental Medicine 57:180-187 (2000); Bogovski P., et al "Animal species in which N-nitroso compounds induce cancer" Int'l J. Cancer, 27(4):471-4 (1981); Preussmann, R.; Stewart, B. W. "N-Nitroso carcinogens; ACS Monogr.", *182* (Chem. Carcinog.,2nd Ed., Vol. 2), 643-8 (1984).

90.     Given the data, experts universally regard nitrosamines to be among the most potent carcinogens known to man.

91.     Due to acute safety concerns with nitrosamines, EPA sets a hard limit of 1 part per million ("ppm") of NNG in pesticides, including glyphosate products.

92.     However, glyphosate, by its nature, is an unstable chemical in the presence of nitrites. Any time glyphosate reacts with nitrites, which are prevalent in everyday environments such as city air, exhaust from cars, and water, glyphosate degrades into NNG. In other words, the glyphosate has a parent child relationship to NNG, and NNG can properly be understood as glyphosate that has gone bad.

93.     Internally, Monsanto scientists do not consider any of these impurities to be "trace impurities." Rather "trace impurity" is a litigation term coined by Monsanto's lawyers to downplay the dangerous presence of carcinogenic impurities in Roundup and to make them seem safe when they are not.

### The EPA's Review of Glyphosate

94.     In April 2016, personnel within the EPA's Office of Pesticides Program (OPP) leaked and posted on the internet a draft report on glyphosate carcinogenicity, entitled Cancer Assessment Review Committee (CARC) report, dated October 2015. The EPA removed the documents by May 2, 2016, within days of initially posting it online. An EPA spokesperson subsequently issued a statement on the agency's glyphosate review:

> Glyphosate documents were inadvertently posted to the Agency's docket. These documents have now been taken down because our assessment is not final. EPA has not completed our cancer review. We will look at the work of other governments as well as work by HHS's Agricultural Health Study as we move to make a decision on glyphosate. Our assessment will be peer reviewed and completed by end of 2016.[8]

---

[8] Carey Gillam, *What Is Going On With Glyphosate? EPA's Odd Handling of Controversial Chemical*, HUFFINGTON POST, May 2, 2016, *available at*

95.    On September 12, 2016, EPA's OPP submitted a report on the carcinogenic potential of glyphosate, wherein it issued a "proposed conclusion" that glyphosate is "'not likely to be carcinogenic to humans' at doses relevant to human health risk assessment."[9] There are no authors listed on this issue paper, which reiterates and adopts the conclusions of the October 2015 leaked assessment. The issue paper is based upon a review of industry-sponsored articles and studies. The OPP acknowledged that it rejected all studies that considered Roundup—the formulated product—instead of studies that isolated glyphosate because "[g]lyphosate formulations contain various components other than glyphosate and it has been hypothesized these components are more toxic than glyphosate alone."[10]

96.    Thus, the OPP notes dozens of studies considered by IARC were not reviewed by the OPP because the OPP's "evaluation focused on studies on the active ingredient glyphosate" and "additional research could also be performed to determine whether formulation components, such as surfactants, influence the toxicity of glyphosate formulations."[11]

97.    From December 13 to 16, 2016, the EPA held FIFRA Scientific Advisory Panel ("SAP") meetings to consider issues raised by the OPP's evaluation of glyphosate. Again, OPP only allowed the SAP to consider studies of glyphosate alone, and not any study of the formulated product. In its Charge to the FIFRA SAP, the OPP noted that "[a]lthough there are studies available on glyphosate-based pesticide formulations, the agency is soliciting advice

---

http://www.huffingtonpost.com/carey-gillam/what-is-going-on-with-gly_b_9825326.html; *see also* P.J. Huffstutter, *EPA takes offline report that says glyphosate not likely carcinogenic*, REUTERS, May 2, 2016, available at http://www.reuters.com/article/us-usa-glyphosate-epa-idUSKCN0XU01K.
[9] See EPA's Office of Pesticide Programs, Glyphosate Issue Paper: Evaluation of Carcinogenic Potential (Sept. 12, 2016), *available at* https://www.epa.gov/sites/production/files/2016-09/documents/glyphosate_issue_paper_evaluation_of_carcincogenic_potential.pdf.
[10] *Id.*
[11] *Id.*

COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

from the FIFRA Scientific Advisory Panel (SAP) on this evaluation of human carcinogenic potential for the active ingredient glyphosate only at this time."[12]

98.    The OPP draft assessment therefore does not actually consider the product at issue in this litigation or, more importantly, how glyphosate, in conjunction with surfactants and other chemicals, affects carcinogenicity.

99.    On March 16, 2017, the final SAP meeting minutes and report were released, revealing disagreement and lack of consensus among the scientists on whether there was a positive association between **glyphosate** exposure and NHL.[13]

100.    EPA's various reviews also failed to consider the actual level of carcinogenic impurities within Roundup. For example, although EPA sets a hard limit of 1ppm for NNG, Monsanto has known for decades that its products can exceed this limit in real world conditions.

### Monsanto's Industry Ties

101.    Recently unsealed documents in the federal Roundup MDL litigation reveal the extent to which Monsanto has been able to leverage its contacts within the EPA to protect glyphosate and Roundup from scrutiny and review.

102.    Internal Monsanto documents, including email communications, demonstrate that Jess Rowland, former Deputy Division Director, Health Effects Division of the EPA's OPP, and formerly the chair of the CARC (the same committee that inadvertently leaked the EPA's glyphosate report in April 2016), repeatedly and directly intervened on Monsanto's behalf. These same documents reveal that Monsanto was secure in the knowledge that it had allies within the EPA.

---

[12] EPA OPP, Glyphosate: Evaluation of Carcinogenic Potential, Charge to the FIFRA SAP for the October 18-21, 2016 Meeting, available at, https://www.epa.gov/sites/production/files/2016-11/documents/glyphosate_sap_charge_questions_-final.pdf.
[13] FIFRA Scientific Advisory Panel Meeting Minutes and Final Report No. 2017-01, A Set of Scientific Issues Being Considered by the Environmental Protection Agency Regarding: EPA's Evaluation of the Carcinogenic Potential of Glyphosate, *available at* https://www.epa.gov/sites/production/files/2017-03/documents/december_13-16_2016_final_report_03162017.pdf.

103.    To begin, in the months following IARC's initial March 2015 announcement that it had classified glyphosate as a probable carcinogen, Monsanto turned its attention to the EPA's review of glyphosate. In one April 27, 2015 email, Monsanto official Bill Heydens wrote to colleagues to suggest "approaching EPA and…. ask if there is anything that would help them defend the situation?" His colleague Dan Jenkins responded: "I think you and I could get on the phone w Jess Rowland and discuss this pretty openly. He'll give us straight talk."[14]

104.    The following day, Mr. Jenkins spoke to Mr. Rowland by telephone and then relayed the substance of the conversation for his colleagues in an April 28, 2015 email. Specifically, he reported back that with respect to the CARC investigation, Mr. Rowland had stated: "We have enough to sustain our conclusions. Don't need gene tox or epi . . . . I am the chair of the CARC and my folks are running this process for glyphosate in reg review. I have called a CARC meeting in June."[15] Thus, even though the ostensible purpose of the CARC review was to evaluate the exhaustive IARC assessment on glyphosate, and even though the full IARC monograph on glyphosate would not be completed until July 2015, Mr. Rowland had already formed his conclusion months earlier—in April 2015.

105.    Mr. Rowland also intervened to halt another agency's review of glyphosate. When the Agency for Toxic Substances and Disease Registry (ATSDR), a federal public health agency of the U.S. Department of Health and Human Services, announced in February 2015 that it planned to publish a toxicological review of glyphosate, it was Mr. Rowland who helped Monsanto stop the ATSDR's investigation. In the same April 28, 2015, email discussed above, Mr. Jenkins explained that Mr. Rowland wanted to help Monsanto stop an investigation concerning the carcinogenicity of glyphosate being conducted by ATSDR.[16] Since ATSDR is not controlled by the EPA, according to Mr. Jenkins, Mr. Rowland had bragged: "If I can kill

---

[14] *See* Plaintiffs' Motion to Compel the Deposition of Jess Rowland, Ex. D, In re: Roundup Products Liability Litigation, MDL No. 2741 (N.D. Cal., Mar. 14, 2017), ECF No. 189-4.
[15] *Id.*
[16] *Id.*

this I should get a medal."[17] Jenkins cautioned, however, that Monsanto should not "get your hopes up, I doubt EPA and Jess can kill this; but it's good to know they are going to actually make the effort now to coordinate due to our pressing and their shared concern that ATSDR is consistent in its conclusions with the EPA."[18] The ATSDR never published its toxicological profile of glyphosate. Further, the released documents reveal Monsanto's confidence that its allies within the EPA would continue to support glyphosate. In an internal memo on glyphosate, Monsanto executives wrote: "We know, *but cannot say*, that EPA's Office of Pesticide Program scientists strongly feel that glyphosate does not cause cancer and have defended their written determination internally for months."[19] Notably, when Mr. Rowland attended the IARC glyphosate meetings as an observed for the EPA, internal communications indicate Monsanto was not displeased with his attendance since, "we all know Jess."[20]

### *Recent Worldwide Bans on Roundup/Glyphosate*

106.    Several countries around the world have instituted bans on the sale of Roundup and other glyphosate-containing herbicides, both before and since IARC first announced its assessment for glyphosate in March 2015, and more countries undoubtedly will follow suit as the dangers of the use of Roundup are more widely known. The Netherlands issued a ban on all glyphosate-based herbicides in April 2014, including Roundup, which took effect by the end of 2015. In issuing the ban, the Dutch Parliament member who introduced the successful legislation stated: "Agricultural pesticides in user-friendly packaging are sold in abundance to private persons. In garden centers, Roundup is promoted as harmless, but unsuspecting customers have no idea what the risks of this product are. Especially children are sensitive to toxic substances and should therefore not be exposed to it."

---

[17] *Id.*

[18] *Id.*

[19] See Plaintiffs' Motion to Compel the Deposition of Jess Rowland, Ex. E, In re: Roundup Products Liability Litigation, MDL No. 2741 (N.D. Cal., Mar. 14, 2017), ECF No. 189-5 (emphasis original).

[20] *See* Plaintiffs' Motion to Compel the Deposition of Jess Rowland, Ex. G, *In re: Roundup Products Liability Litigation*, MDL No. 2741 (N.D. Cal., Mar. 14, 2017), ECF No. 189-7.

107.    The Brazilian Public Prosecutor in the Federal District requested that the Brazilian Justice Department suspend the use of glyphosate.

108.    France banned the private sale of Roundup and glyphosate following the IARC assessment for Glyphosate.

109.    Bermuda banned both the private and commercial sale of glyphosates, including Roundup. The Bermuda government explained its ban as follows: "Following a recent scientific study carried out by a leading cancer agency, the importation of weed spray 'Roundup' has been suspended."

110.    The Sri Lankan government banned the private and commercial use of glyphosates, particularly out of concern that glyphosate has been linked to fatal kidney disease in agricultural workers.

111.    The government of Columbia announced its ban on using Roundup and glyphosate to destroy illegal plantations of coca, the raw ingredient for cocaine, because of the WHO's finding that glyphosate is probably carcinogenic.

112.    On information and belief, Wilbur-Ellis was, at all relevant times, engaged in the distribution of Roundup and other glyphosate-containing products from Monsanto to retailers and commercial/agricultural users in California.

113.    Wilbur-Ellis had superior knowledge compared to Roundup users and any consumers including regarding the carcinogenic properties of the product, yet failed to accompany its sales and/or marketing of Roundup with any warnings or precautions for that grave danger. On information and belief, Wilbur-Ellis was one of the distributors providing Roundup and other glyphosate-containing products actually used by the Plaintiff.

### *EFSA Report on Glyphosate*

114.    On November 12, 2015, the European Food Safety Authority (EFSA), the European Union's primary agency for food safety, reported on its evaluation of the Renewal

Assessment Report (RAR) on glyphosate.[21] The Rapporteur Member State assigned to glyphosate, the German Federal Institute for Risk Assessment (BfR), had produced the RAR as part of the renewal process for glyphosate in the EU.

115.    BfR sent its draft RAR to EFSA and the RAR underwent a peer review process by EFSA, other member states, and industry groups. As part of the on-going peer review of Germany's reevaluation of glyphosate, EFSA had also received a second mandate from the European Commission to consider IARC's findings regarding the potential carcinogenicity of glyphosate and glyphosate-containing products.

116.    Based on a review of the RAR, which included data from industry-submitted unpublished studies, EFSA sent its own report ("Conclusion") to the European Commission, finding that "glyphosate is unlikely to pose a carcinogenic hazard to humans and the evidence does not support classification with regard to its carcinogenic potential according to Regulation (EC) No 1272/2008."[22] EFSA therefore disagreed with IARC: glyphosate was not genotoxic and did not present a carcinogenic threat to humans.

117.    In explaining why its results departed from IARC's conclusion, EFSA drew a distinction between the EU and IARC approaches to the study and classification of chemicals.[23] Although IARC examined "both glyphosate—an active substance—and glyphosate-based formulations, grouping all formulations regardless of their composition," EFSA explained that it considered only glyphosate and that its assessment focuses on "each individual chemical, and each marketed mixture separately."[24] IARC, on the other hand, "assesses generic agents, including groups of related chemicals, as well as occupational or environmental exposure, and

---

[21] European Food Safety Auth., Conclusion on the peer review of the pesticide risk assessment of the active substance glyphosate, *available at*
http://www.efsa.europa.eu/sites/default/files/scientific_output/files/main_documents/4302.pdf.
[22] *Id.*
[23] EFSA Fact Sheet: Glyphosate, EFSA
http://www.efsa.europa.eu/sites/default/files/corporate_publications/files/efsaexplainsglyphosate151112en.pdf.
[24] *Id.*

COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

cultural or behavioral practices."[25] EFSA accorded greater weight to studies conducted with glyphosate alone than studies of formulated products.[26]

118.    EFSA went further and noted:

> [A]lthough some studies suggest that certain glyphosate-based formulations may be genotoxic (i.e. damaging to DNA), others that look solely at the active substance glyphosate do not show this effect. It is likely, therefore, that *the genotoxic effects observed in some glyphosate-based formulations are related to the other constituents or "co-formulants"*. Similarly, certain glyphosate-based formulations display higher toxicity than that of the active ingredient, presumably because of the presence of co-formulants. In its assessment, *EFSA proposes that the toxicity of each pesticide formulation and in particular its genotoxic potential should be further considered and addressed by Member State authorities while they re-assess uses of glyphosate-based formulations in their own territories*.[27]

119.    Notwithstanding its conclusion, EFSA did set exposure levels for glyphosate. Specifically, EFSA proposed an acceptable daily intake (ADI) of 0.5 mg/kg of body weight per day; an acute reference dose (ARfD) of 0.5 mg/kg of body weight; and an acceptable operator exposure level (AOEL) of 0.1 mg/kg bw per day.[28]

### *Leading Scientists Dispute EFSA's Conclusion*

120.    On November 27, 2015, 96 independent academic and governmental scientists from around the world submitted an open letter to the EU health commissioner, Vytenis

---

[25] *Id*.
[26] *Id*.
[27] *Id*.
[28] European Food Safety Auth., Conclusion on the peer review of the pesticide risk assessment of the active substance glyphosate, *supra.*

Andriukaitis.[29] The scientists expressed their strong concerns and urged the commissioner to disregard the "flawed" EFSA report, arguing that "the BfR decision is not credible because it is not supported by the evidence and it was not reached in an open and transparent manner."[30]

121.    Signatories to the letter included Dr. Christopher J. Portier, Ph.D., and other renowned international experts in the field, some of whom were part of the IARC Working Group assigned to glyphosate.

122.    In an exhaustive and careful examination, the scientists scrutinized EFSA's conclusions and outlined why the IARC Working Group decision was "by far the more credible":

> The IARC WG decision was reached relying on open and transparent
> procedures by independent scientists who completed thorough conflict-
> of-interest statements and were not affiliated or financially supported in
> any way by the chemical manufacturing industry. It is fully referenced
> and depends entirely on reports published in the open, peer-reviewed
> biomedical literature. It is part of a long tradition of deeply researched
> and highly credible reports on the carcinogenicity of hundreds of
> chemicals issued over the past four decades by IARC and used today by
> international agencies and regulatory bodies around the world as a basis
> for risk assessment, regulation and public health policy.[31]

123.    With respect to human data, the scientists pointed out that EFSA agreed with IARC that there was "*limited evidence* of carcinogenicity" for NHL, but EFSA nonetheless dismissed an association between glyphosate exposure and carcinogenicity. IARC applies three levels of evidence in its analyses of human data, including sufficient evidence and limited

---

[29] Letter from Christopher J. Portier et al. to Commission Vytenis Andriukaitis, Open letter: Review of the Carcinogenicity of Glyphosate by EFSA and BfR (Nov. 27, 2015), http://www.zeit.de/wissen/umwelt/2015-11/glyphosat-offener-brief.pdf; http://www.theguardian.com/environment/2016/jan/13/eu-scientists-in-row-over-safety-of-glyphosate-weedkiller.
[30] *Id.*
[31] *Id.*

COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

evidence. EFSA's ultimate conclusion that "there was no unequivocal evidence for a clear and strong association of NHL with glyphosate" was misleading because it was tantamount to IARC's highest level of evidence: "sufficient evidence," which means that a causal relationship has been established. However, the scientists argued, "[l]egitimate public health concerns arise when 'causality is credible,' i.e., when there is *limited evidence*."[32]

124.    Among its many other deficiencies, EFSA's conclusions regarding animal carcinogenicity data were "scientifically unacceptable," particularly in BfR's use of historical control data and in its trend analysis. Indeed, BfR's analysis directly contradicted the Organization for Economic Co-operation and Development ("OECD") testing guidelines while citing and purporting to follow those same guidelines. For instance, the EFSA report dismisses observed trends in tumor incidence "because there are no individual treatment groups that are significantly different from controls and because the maximum observed response is reportedly within the range of the historical control data." However, according to the scientists, concurrent controls are recommended over historical controls in all guidelines, scientific reports, and publications, and, if it is employed, historical control data "should be from studies in the same timeframe, for the same exact animal strain, preferably from the same laboratory or the same supplier and preferably reviewed by the same pathologist." BfR's use of historical control data violated these precautions: "only a single study used the same mouse strain as the historical controls, but was reported more than 10 years after the historical control dataset was developed." Further deviating from sound scientific practices, the data used by the BfR came from studies in seven different laboratories. The scientists concluded:

> BfR reported seven positive mouse studies with three studies showing
> increases in renal tumors, two with positive findings for
> hemangiosarcomas, and two with positive findings for malignant
> lymphomas. BfR additionally reported two positive findings for tumors

---

[32] *Id.*

in rats. Eliminating the inappropriate use of historical data, the

unequivocal conclusion is that these are not negative studies, but in fact

document the carcinogenicity of glyphosate in laboratory animals.[33]

125.    The letter also critiqued the EFSA report's lack of transparency and the opacity surrounding the data cited in the report: "citations for almost all of the references, even those from the open scientific literature, have been redacted from the document" and "there are no authors or contributors listed for either document, a requirement for publication in virtually all scientific journals." Because BfR relied on unpublished, confidential industry-provided studies, it is "impossible for any scientist not associated with BfR to review this conclusion with scientific confidence."[34]

126.    On March 3, 2016, the letter was published in the Journal of Epidemiology & Community Health.[35]

### Statement of Concern Regarding Glyphosate-Based Herbicides

127.    On February 17, 2016, a consensus statement published in the journal Environmental Health, entitled "Concerns over use of glyphosate-based herbicides and risks associated with exposures: a consensus statement," assessed the safety of glyphosate-based herbicides (GBHs).[36] The paper's "focus is on the unanticipated effects arising from the worldwide increase in use of GBHs, coupled with recent discoveries about the toxicity and human health risks stemming from use of GBHs."[37] The researchers drew seven factual conclusions about GBHs:

---

[33] *Id.*

[34] *Id.*

[35] Christopher J. Portier, et al., *Differences in the carcinogenic evaluation of glyphosate between the International Agency for Research on Cancer (IARC) and the European Food Safety Authority (EFSA)*, JOURNAL OF EPIDEMIOLOGY & CMTY. HEALTH, Mar. 3, 2016, *available at* http://jech.bmj.com/content/early/2016/03/03/jech-2015-207005.full.

[36] John P. Myers, et al, *Concerns over use of glyphosate-based herbicides and risks associated with exposures: a consensus statement*, Environmental Health (2016), *available at* http://ehjournal.biomedcentral.com/articles/10.1186/s12940-016-0117-0.

[37] *Id.*

COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

a.  GBHs are the most heavily applied herbicide in the world and usage continues to rise;

b.  Worldwide, GBHs often contaminate drinking water sources, precipitation, and air, especially in agricultural regions;

c.  The half-life of glyphosate in water and soil is longer than previously recognized;

d.  Glyphosate and its metabolites are widely present in the global soybean supply;

e.  Human exposures to GBHs are rising;

f.  Glyphosate is now authoritatively classified as a probable human carcinogen; and

g.  Regulatory estimates of tolerable daily intakes for glyphosate in the United States and European Union are based on outdated science.[38]

128.    The researchers noted that GBH use has increased approximately 100-fold since the 1970s. Further, far from posing a limited hazard to vertebrates, as previously believed, two decades of evidence demonstrated that "several vertebrate pathways are likely targets of action, including hepatorenal damage, effects on nutrient balance through glyphosate chelating action and endocrine disruption."[39]

129.    The paper attributes uncertainties in current assessments of glyphosate formulations to the fact that "[t]he full list of chemicals in most commercial GBHs is protected as 'commercial business information,' despite the universally accepted relevance of such information to scientists hoping to conduct an accurate risk assessment of these herbicide formulations." Further, the researchers argue, "[t]he distinction in regulatory review and decision

---

[38] *Id.*
[39] *Id.*

COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

processes between 'active' and 'inert' ingredients has no toxicological justification, given increasing evidence that several so-called 'inert' adjuvants are toxic in their own right."[40]

130.    Among various implications, the researchers conclude that "existing toxicological data and risk assessments are not sufficient to infer that GBHs, as currently used, are safe." Further, "GBH-product formulations are more potent, or toxic, than glyphosate alone to a wide array of non-target organisms including mammals, aquatic insects, and fish." Accordingly, "risk assessments of GBHs that are based on studies quantifying the impacts of glyphosate alone underestimate both toxicity and exposure, and thus risk." The paper concludes that this "shortcoming has repeatedly led regulators to set inappropriately high exposure thresholds."[41]

131.    The researchers also critique the current practice of regulators who largely rely on "unpublished, non-peer reviewed data generated by the registrants" but ignore "published research because it often uses standards and procedures to assess quality that are different from those codified in regulatory agency data requirements, which largely focus on avoiding fraud." In the researchers' view, "[s]cientists independent of the registrants should conduct regulatory tests of GBHs that include glyphosate alone, as well as GBH-product formulations."[42]

132.    The researchers also call for greater inclusion of GBHs in government-led toxicology testing programs:

> [A] fresh and independent examination of GBH toxicity should be
> undertaken, and . . . this re-examination be accompanied by systematic
> efforts by relevant agencies to monitor GBH levels in people and in the
> food supply, none of which are occurring today. The U.S. National
> Toxicology Program should prioritize a thorough toxicological

---

[40] *Id.*
[41] *Id.*
[42] *Id.*

assessment of the multiple pathways now identified as potentially

vulnerable to GBHs.[43]

133.    The researchers suggest that, in order to fill the gap created by an absence of

government funds to support research on GBHs, regulators could adopt a system through which

manufacturers fund the registration process and the necessary testing:

> "[W]e recommend that a system be put in place through which
> manufacturers of GBHs provide funds to the appropriate regulatory body
> as part of routine registration actions and fees. Such funds should then
> be transferred to appropriate government research institutes, or to an
> agency experienced in the award of competitive grants. In either case,
> funds would be made available to independent scientists to conduct the
> appropriate long-term (minimum 2 years) safety studies in recognized
> animal model systems. A thorough and modern assessment of GBH
> toxicity will encompass potential endocrine disruption, impacts on the
> gut microbiome, carcinogenicity, and multigenerational effects looking
> at reproductive capability and frequency of birth defects."[44]

134.    Despite these stated concerns, Monsanto, to date, has failed to test its formulated

Roundup products.

### European Union Vote on Glyphosate Renewal

135.    The license for glyphosate in the European Union (EU) was set to expire on June

30, 2016.

136.    Without an extension of the license, Monsanto's Roundup and other glyphosate-

based herbicides faced a general phase out in EU markets.[45]

---

[43] *Id.*
[44] *Id.*
[45] Philip Blenkinsop, Alissa de Carbonnel & Barbara Lewis European, *Commission to extend glyphosate license for 18 months*, REUTERS, June 28, 2016, *available at* http://www.reuters.com/article/us-health-eu-glyphosate-idUSKCN0ZE25B.

COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

137. In the months leading up to the license expiration date, protracted meetings and votes among national experts from the 28 EU Member States failed to produce agreement on an extension.

138. On June 29, 2016, the EU Commission extended the European license for glyphosate for 18 months to allow the European Chemical Agency (ECHA) to rule on the safety of the chemical, which was expected by the end of 2017.[46]

139. On July 11, 2016, the EU voted in favor of a proposal to restrict the conditions of use of glyphosate in the EU, including a ban on common co-formulant POE-tallowamine (POEA) from all glyphosate-based herbicides, including Roundup.[47]

140. In March 2017, ECHA's Committee for Risk Assessment (RAC) concluded that the available scientific evidence did not meet the criteria to classify glyphosate as a carcinogen.[48]

141. With the glyphosate license set to again expire on December 15, 2017, and after months of indecision among EU member states, on November 27, 2017, the EU voted to extend the glyphosate license for five more years.[49] Of the 28 EU members, 18 countries voted in favor of a European Commission proposal to extend the glyphosate license, 9 countries voted against, and 1 country abstained.[50]

## EQUITABLE TOLLING OF APPLICABLE STATUTE OF LIMITATIONS

142. Plaintiff incorporates by reference all prior paragraphs of this Complaint as if fully set forth herein.

---

[46] Arthur Neslen, *Controversial chemical in Roundup weedkiller escapes immediate ban*, THE GUARDIAN, June 29, 2016, *available at*
https://www.theguardian.com/business/2016/jun/29/controversial-chemical-roundup-weedkiller-escapes-immediate-ban

[47] Sarantis Michalopoulos, *EU agrees ban on glyphosate co-formulant*, EURACTIV, July 11, 2016, *available at* http://www.euractiv.com/section/agriculture-food/news/eu-agrees-ban-on-glyphosate-co-formulant/?nl_ref=16562829

[48] https://echa.europa.eu/-/glyphosate-not-classified-as-a-carcinogen-by-echa.

[49] *See* Philip Blenkinsop, *Germany swings EU vote in favor of weed-killer glyphosate, Reuters, Nov. 27, 2017, https://www.reuters.com/article/us-eu-health-glyphosate/germany-swings-eu-vote-in-favor-of-weed-killer-glyphosate-idUSKBN1DR1SG*

[50] *Id.*

143.    Plaintiff has suffered an illness that has a latency period and may not arise until years after exposure. Plaintiff had no way of knowing about the risks of serious illness associated with the use of and/or exposure to Roundup and glyphosate until they were made aware that their NHL could be caused by their use of and/or exposure to Roundup. Consequently, the discovery rule applies to these cases, and the statute of limitations has been tolled until the day that Plaintiff knew or had reason to know that his NHL was linked to their use of and/or exposure to Roundup.

144.    Within the time period of any applicable statutes of limitations, Plaintiff could not have discovered, through the exercise of reasonable diligence, that exposure to Roundup and glyphosate is injurious to human health.

145.    Plaintiff did not discover and did not know of facts that would cause a reasonable person to suspect, the risks associated with the use of and/or exposure to Roundup and glyphosate; nor would a reasonable and diligent investigation by them have disclosed that Roundup and glyphosate would cause his NHL.

146.    For these reasons, all applicable statutes of limitations have been tolled by operation of the discovery rule with respect to Plaintiff's claims.

### *Fraudulent Concealment*

147.    Furthermore, the running of the statute of limitations has been equitably tolled by reason of Defendant's fraudulent concealment and conduct, as alleged above. Through its affirmative misrepresentations and omissions, Defendant actively concealed from Plaintiff the true risks associated with use of or exposure to Roundup.

148.    As a result of Defendant's actions, Plaintiff was unaware, and could not reasonably know or have learned through reasonable diligence, that Plaintiff had been exposed to the risks alleged herein and that those risks were the direct and proximate result of Defendant's acts and omissions.

149.    Defendant is estopped from relying on any statute of limitations because of its concealment of the truth regarding the safety of Roundup. Defendant was under a duty to disclose the true character, quality and nature of Roundup because this was non-public information over which it continues to have exclusive control. Defendant knew that this information was not available to Plaintiff, his medical providers and/or their health facilities, yet it failed to disclose the information to the public.

150.    Defendant had the ability to and did spend enormous amounts of money in furtherance of its purposes of marketing and promoting a profitable product, notwithstanding the known or reasonably knowable risks. Plaintiff and medical professionals could not have afforded to and could not have possibly conducted studies to determine the nature, extent and identity of related health risks, and they were forced to rely on Defendant's representations.

### *Estoppel*

151.    Monsanto was under a continuous duty to disclose to consumers, users and other persons coming into contact with its products, including Plaintiff, accurate safety information concerning its products and the risks associated with the use of and/or exposure to Roundup and glyphosate.

152.    Instead, Monsanto knowingly, affirmatively, and actively concealed safety information concerning Roundup and glyphosate and the serious risks associated with the use of and/or exposure to its products.

153.    Based on the foregoing, Monsanto is estopped from relying on any statutes of limitations in defense of this action.

### FIRST CAUSE OF ACTION- STRICT LIABILITY (DESIGN DEFECT)
### (AGAINST MONSANTO/BAYER DEFENDANTS ONLY)

154.    Plaintiff incorporates by reference each and every allegation set forth in the preceding paragraphs as if fully stated herein.

155.    Plaintiff brings this strict liability claim against Monsanto for defective design.

156.    At all times relevant to this litigation, Monsanto engaged in the business of testing, developing, manufacturing, selling, distributing, and Monsanto engaged in the marketing, packaging design, and promotion of Roundup products, which are defective and unreasonably dangerous to consumers, including Plaintiff, thereby placing Roundup products into the stream of commerce. These actions were under the ultimate control and supervision of Monsanto. At all times relevant to this litigation, Monsanto designed, researched, developed, manufactured, produced, tested, assembled, labeled, advertised, promoted, marketed, sold, and distributed the Roundup products used by the Plaintiff, as described above.

157.    At all times relevant to this litigation, Roundup products were manufactured, designed, and labeled in an unsafe, defective, and inherently dangerous manner that was dangerous for use by or exposure to the public, and, in particular, the Plaintiff.

158.    At all times relevant to this litigation, Roundup products reached the intended consumers, handlers, and users or other persons coming into contact with these products in Missouri and throughout the United States, including Plaintiff, without substantial change in their condition as designed, manufactured, sold, distributed, labeled, and marketed by Monsanto.

159.    Roundup products, as researched, tested, developed, designed, licensed, manufactured, packaged, labeled, distributed, sold, and marketed by Monsanto were defective in design and formulation in that when they left the hands of the manufacturers and/or suppliers, they were unreasonably dangerous and dangerous to an extent beyond that which an ordinary consumer would contemplate.

160.    Roundup products, as researched, tested, developed, designed, licensed, manufactured, packaged, labeled, distributed, sold, and marketed by Monsanto were defective in design and formulation in that when they left the hands of the manufacturers and/or suppliers, the foreseeable risks exceeded the alleged benefits associated with their design and formulation.

161.    At all times relevant to this action, Monsanto knew or had reason to know that Roundup products were defective and were inherently dangerous and unsafe when used in the manner instructed and provided by Monsanto.

162.    Therefore, at all times relevant to this litigation, Roundup products, as researched, tested, developed, designed, licensed, manufactured, packaged, labeled, distributed, sold, and marketed by Monsanto were defective in design and formulation, in one or more of the following ways:

a)  When placed in the stream of commerce, Roundup products were defective in design and formulation, and, consequently, dangerous to an extent beyond that which an ordinary consumer would contemplate.

b)  When placed in the stream of commerce, Roundup products were unreasonably dangerous in that they were hazardous and posed a grave risk of cancer and other serious illnesses when used in a reasonably anticipated manner.

c)  When placed in the stream of commerce, Roundup products contained unreasonably dangerous design defects and were not reasonably safe when used in a reasonably anticipated or intended manner.

d)  Monsanto did not sufficiently test, investigate, or study Roundup products and, specifically, the active ingredient glyphosate.

e)  Exposure to Roundup and glyphosate-containing products presents a risk of harmful side effects that outweigh any potential utility stemming from the use of the herbicide.

f)  At the time of marketing its Roundup products, Roundup was defective in that exposure to Roundup and specifically, its active ingredient glyphosate, could result in cancer and other severe illnesses and injuries.

g)  Monsanto did not conduct adequate post-marketing surveillance of its Roundup products.

COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

h)  Monsanto could have employed safer alternative designs and formulations.

163.    Plaintiff was exposed to Roundup products in the course of their work, as described above, without knowledge of their dangerous characteristics.

164.    At all times relevant to this litigation, Plaintiff used and/or was exposed to the use of Roundup products in an intended or reasonably foreseeable manner without knowledge of their dangerous characteristics.

165.    Plaintiff could not have reasonably discovered the defects and risks associated with Roundup or glyphosate-containing products before or at the time of exposure.

166.    The harm caused by Roundup products far outweighed their benefit, rendering these products dangerous to an extent beyond that which an ordinary consumer would contemplate. Roundup products were and are more dangerous than alternative products and Monsanto could have designed Roundup products (including their packaging and sales aids) to make them less dangerous. Indeed, at the time that Monsanto designed Roundup products, the state of the industry's scientific knowledge was such that a less risky design or formulation was attainable.

167.    At the time Roundup products left Monsanto's control, there was a practical, technically feasible and safer alternative design that would have prevented the harm without substantially impairing the reasonably anticipated or intended function of those herbicides.

168.    Monsanto's defective design of Roundup products was willful, wanton, fraudulent, malicious, and conducted with reckless disregard for the health and safety of users of the Roundup products, including the Plaintiff herein. Indeed, as alleged herein, Monsanto is guilty of oppression, fraud and/or malice.

169.    Therefore, as a result of the unreasonably dangerous condition of its Roundup products, Monsanto is strictly liable to the Plaintiff.

170.    The defects in Roundup products caused or contributed to cause Plaintiff grave injuries, and, but for Monsanto's misconduct and omissions, Plaintiff would not have sustained their injuries.

171.    Monsanto's conduct, as described above, was reckless, malicious, oppressive and fraudulent. Monsanto's conduct was despicable and done with a willful and conscious disregard of the rights and safety of plaintiff.  Indeed, as alleged herein, Monsanto is guilty of oppression, fraud and/or malice. Among other things, Monsanto risked the lives of consumers and users of its products, including Plaintiff, with knowledge of the safety problems associated with Roundup and glyphosate-containing products, and suppressed this knowledge from the general public. Monsanto made conscious decisions not to redesign, warn, or inform the unsuspecting public. Monsanto's reckless, malicious, oppressive and fraudulent conduct warrants an award of exemplary damages.

172.    As a direct and proximate result of Monsanto placing defective Roundup products into the stream of commerce, Plaintiff has suffered and continues to suffer grave injuries, and has endured physical pain and discomfort, as well as economic hardship, including considerable financial expenses for medical care and treatment.

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment in Plaintiff's favor for compensatory and punitive damages in an amount to be proven at trial, together with interest, costs herein incurred, and all such other and further relief as this Court deems just and proper. Plaintiff also demandd a jury trial on the issues contained herein.

## SECOND CAUSE OF ACTION - STRICT LIABILITY (FAILURE TO WARN)
### (AGAINST MONSANTO/BAYER DEFENDANTS ONLY)

173.    Plaintiff incorporates by reference each and every allegation set forth in the preceding paragraphs as if fully stated herein.

174.    Plaintiff brings this strict liability claim against Monsanto for failure to warn.

175.    At all times relevant to this litigation, Monsanto engaged in the business of testing, developing, designing, manufacturing, marketing, selling, distributing, and promoting Roundup products, which are defective and unreasonably dangerous to consumers, including Plaintiff, because they do not contain adequate warnings or instructions concerning the dangerous characteristics of Roundup and, specifically, the active ingredient glyphosate. These actions were under the ultimate control and supervision of Monsanto.

176.    Monsanto researched, developed, designed, tested, manufactured, inspected, labeled, distributed, marketed, promoted, sold, and otherwise released into the stream of commerce Roundup products, and in the course of same, directly advertised or marketed the products to consumers and end users, including the Plaintiff, and therefore had a duty to warn of the risks associated with the use of Roundup and glyphosate-containing products.

177.    At all times relevant to this litigation, Monsanto had a duty to properly test, develop, design, manufacture, inspect, package, label, market, promote, sell, distribute, maintain supply, provide proper warnings, and take such steps as necessary to ensure that Roundup products did not cause users and consumers to suffer from unreasonable and dangerous risks. Monsanto had a continuing duty to warn the Plaintiff of the dangers associated with Roundup use and exposure. Monsanto, as manufacturer, seller, promoter, marketer, or distributor of chemical herbicides are held to the knowledge of an expert in the field.

178.    At the time of manufacture, Monsanto could have provided the warnings or instructions regarding the full and complete risks of Roundup and glyphosate-containing products because it knew or should have known of the unreasonable risks of harm associated with the use of and/or exposure to such products.

179.    At all times relevant to this litigation, Monsanto failed to investigate, study, test, or promote the safety or to minimize the dangers to users and consumers of its product and to those who would foreseeably use or be harmed by these herbicides, including Plaintiff.

COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

180.     Despite the fact that Monsanto knew or should have known that Roundup posed a grave risk of harm, it failed to exercise reasonable care to warn of the dangerous risks associated with use and exposure. The dangerous propensities of these products and the carcinogenic characteristics of glyphosate, as described above, were known to Monsanto, or scientifically knowable to Monsanto through appropriate research and testing by known methods, at the time it distributed, marketed, promoted, supplied, or sold the product, and not known to end users and consumers, such as Plaintiff.

181.     Monsanto failed to seek EPA approval for a modified Roundup label that included an adequate warning, even though FIFRA requires that registrants propose amendments when labeling becomes misleading in light of new information. Monsanto similarly failed to utilize EPA's notification procedure to modify the labels of Roundup products, and also failed to adequate point of sale warnings or to provide adequate warnings through its advertisements.

182.     These products created significant risks of serious bodily harm to consumers, as alleged herein, and Monsanto failed to adequately warn consumers and reasonably foreseeable users of the risks of exposure to its products. Monsanto has wrongfully concealed information concerning the dangerous nature of Roundup and its active ingredient glyphosate, and further made false and/or misleading statements concerning the safety of Roundup and glyphosate.

183.     At all times relevant to this litigation, Roundup products reached the intended consumers, handlers, and users or other persons coming into contact with these products in Missouri and throughout the United States, including Plaintiff, without substantial change in their condition as designed, manufactured, sold, distributed, labeled, promoted, and marketed by Monsanto.

184.     Plaintiff was exposed to Roundup products in the course of their employment and/or personal use of Roundup, without knowledge of its dangerous characteristics.

185.    At all times relevant to this litigation, Plaintiff used and/or was exposed to the use of Roundup products in their intended or reasonably foreseeable manner without knowledge of their dangerous characteristics.

186.    Plaintiff could not have reasonably discovered the defects and risks associated with Roundup or glyphosate-containing products prior to or at the time of Plaintiff's exposure. Plaintiff relied upon the skill, superior knowledge, and judgment of Monsanto.

187.    These products were defective because the minimal warnings disseminated with Roundup products were inadequate, and they failed to communicate adequate information on the dangers and safe use/exposure and failed to communicate warnings and instructions that were appropriate and adequate to render the products safe for their ordinary, intended, and reasonably foreseeable uses, including agricultural and landscaping applications.

188.    The information that Monsanto did provide or communicate failed to contain relevant warnings, hazards, and precautions that would have enabled consumers such as Plaintiff to utilize the products safely and with adequate protection. Instead, Monsanto disseminated information that was inaccurate, false, and misleading and which failed to communicate accurately or adequately the comparative severity, duration, and extent of the risk of injuries with use of and/or exposure to Roundup and glyphosate; continued to aggressively promote the efficacy of its products, even after it knew or should have known of the unreasonable risks from use or exposure; and concealed, downplayed, or otherwise suppressed, through aggressive marketing and promotion, any information or research about the risks and dangers of exposure to Roundup and glyphosate.

189.    To this day, Monsanto has failed to adequately and accurately warn of the true risks of Plaintiff's injuries associated with the use of and exposure to Roundup and its active ingredient glyphosate, a probable carcinogen.

190.    As a result of their inadequate warnings, Roundup products were defective and unreasonably dangerous when they left the possession and/or control of Monsanto, were distributed, marketed, and promoted by Monsanto, and used by Plaintiff in their work.

191.    Monsanto is liable to Plaintiff for injuries caused by its negligent or willful failure, as described above, to provide adequate warnings or other clinically relevant information and data regarding the appropriate use of these products and the risks associated with the use of or exposure to Roundup and glyphosate.

192.    The defects in Roundup products caused or contributed to cause Plaintiff's injuries, and, but for this misconduct and omissions, Plaintiff would not have sustained their injuries.

193.    Had Monsanto provided adequate warnings and instructions and properly disclosed and disseminated the risks associated with Roundup products, Plaintiff could have avoided the risk of developing injuries as alleged herein.

194.    As a direct and proximate result of Monsanto placing defective Roundup products into the stream of commerce, Plaintiff has suffered severe injuries and has endured physical pain and discomfort, as well as economic hardship, including considerable financial expenses for medical care and treatment.

## **THIRD CAUSE OF ACTION – NEGLIGENCE**
### **(AGAINST ALL DEFENDANTS)**

195.    Plaintiff incorporates by reference each and every allegation set forth in the preceding paragraphs as if fully stated herein.

196.    Monsanto, directly or indirectly, caused Roundup products to be sold, distributed, packaged, labeled, marketed, promoted, and/or used by Plaintiff.

197.    At all times relevant to this litigation, Monsanto had a duty to exercise reasonable care in the design, research, manufacture, marketing, advertisement, supply, promotion, packaging, sale, and distribution of Roundup products, including the duty to take all reasonable

steps necessary to manufacture, promote, and/or sell a product that was not unreasonably dangerous to consumers and users of the product.

198.    At all times relevant to this litigation, Monsanto had a duty to exercise reasonable care in the marketing, advertisement, and sale of the Roundup products. Monsanto's duty of care owed to consumers and the general public included providing accurate, true, and correct information concerning the risks of using Roundup and appropriate, complete, and accurate warnings concerning the potential adverse effects of exposure to Roundup, and, in particular, its active ingredient glyphosate.

199.    At all times relevant to this litigation, Monsanto knew or, in the exercise of reasonable care, should have known of the hazards and dangers of Roundup and specifically, the carcinogenic properties of the chemical glyphosate.

200.    Accordingly, at all times relevant to this litigation, Monsanto knew or, in the exercise of reasonable care, should have known that use of or exposure to its Roundup products could cause or be associated with Plaintiff's injuries and thus created a dangerous and unreasonable risk of injury to the users of these products, including Plaintiff.

201.    Monsanto also knew or, in the exercise of reasonable care, should have known that users and consumers of Roundup were unaware of the risks and the magnitude of the risks associated with use of and/or exposure to Roundup and glyphosate-containing products.

202.    As such, Monsanto breached the duty of reasonable care and failed to exercise ordinary care in the design, research, development, manufacture, testing, marketing, supply, promotion, advertisement, packaging, sale, and distribution of its Roundup products, in that Monsanto manufactured, marketed, promoted, and sold defective herbicides containing the chemical glyphosate, knew or had reason to know of the defects inherent in these products, knew or had reason to know that a user's or consumer's exposure to the products created a significant risk of harm and unreasonably dangerous side effects, and failed to prevent or adequately warn of these risks and injuries.

203.    Despite an ability and means to investigate, study, and test these products and to provide adequate warnings, Monsanto has failed to do so. Indeed, Monsanto has wrongfully concealed information and has further made false and/or misleading statements concerning the safety and/or exposure to Roundup and glyphosate.

204.    Monsanto was negligent in the following respects:

a)    Manufacturing, producing, promoting, formulating, creating, developing, designing, selling, and/or distributing its Roundup products without thorough and adequate pre- and post-market testing;

b)    Manufacturing, producing, promoting, formulating, creating, developing, designing, selling, and/or distributing Roundup while negligently and/or intentionally concealing and failing to disclose the results of trials, tests, and studies of exposure to glyphosate, and, consequently, the risk of serious harm associated with human use of and exposure to Roundup;

c)    Failing to undertake sufficient studies and conduct necessary tests to determine whether or not Roundup products and glyphosate-containing products were safe for their intended uses in agriculture and horticulture;

d)    Failing to use reasonable and prudent care in the design, research, manufacture, and development of Roundup products so as to avoid the risk of serious harm associated with the prevalent use of Roundup/glyphosate as an herbicide;

e)    Failing to design and manufacture Roundup products so as to ensure they were at least as safe and effective as other herbicides on the market;

f)    Failing to provide adequate instructions, guidelines, and safety precautions to those persons who Monsanto could reasonably foresee would use and be exposed to its Roundup products;

g) Failing to disclose to Plaintiff, users/consumers, and the general public that use of and exposure to Roundup presented severe risks of cancer and other grave illnesses;

h) Failing to warn Plaintiff, consumers, and the general public that the product's risk of harm was unreasonable and that there were safer and effective alternative herbicides available to Plaintiff and other consumers;

i) Systematically suppressing or downplaying contrary evidence about the risks, incidence, and prevalence of the side effects of Roundup and glyphosate-containing products;

j) Representing that its Roundup products were safe for their intended use when, in fact, Monsanto knew or should have known that the products were not safe for their intended purpose;

k) Declining to make or propose any changes to Roundup products' labeling or other promotional materials that would alert the consumers and the general public of the risks of Roundup and glyphosate;

l) Advertising, marketing, and recommending the use of the Roundup products, while concealing and failing to disclose or warn of the dangers known by Monsanto to be associated with or caused by the use of or exposure to Roundup and glyphosate;

m) Continuing to disseminate information to its consumers, which indicate or imply that Monsanto's Roundup products are not unsafe for use in the agricultural and horticultural industries; and

n) Continuing the manufacture and sale of its products with the knowledge that the products were unreasonably unsafe and dangerous.

205.    Monsanto knew and/or should have known that it was foreseeable that consumers such as Plaintiff would suffer injuries as a result of Monsanto's failure to exercise ordinary care in the manufacturing, marketing, promotion, labeling, distribution, and sale of Roundup.

206.    Plaintiff did not know the nature and extent of the injuries that could result from the intended use of and/or exposure to Roundup or its active ingredient glyphosate.

207.    Monsanto's negligence was the proximate cause of the injuries, harm, and economic losses that Plaintiff suffered, as described herein.

208.    Monsanto's willfull and wanton conduct, as described above, was more than mere simple negligence, but rather reckless. Monsanto's conduct was despicable and done with a willful and conscious disregard of the rights and safety of plaintiff.  Indeed, as alleged herein, Monsanto is guilty of oppression, fraud and/or malice.  Among other things, Monsanto regularly risked the lives of consumers and users of its products, including Plaintiff, with full knowledge of the dangers of these products. Monsanto has made conscious decisions not to redesign, re-label, warn, or inform the unsuspecting public, including Plaintiff. Monsanto's reckless conduct therefore warrants an award of aggravated or punitive damages.

209.    As a proximate result of Monsanto's wrongful acts and omissions in placing defective Roundup products into the stream of commerce without adequate warnings of the hazardous and carcinogenic nature of glyphosate, Plaintiff has suffered severe and permanent physical and emotional injuries. Plaintiff has endured pain and suffering and have suffered economic losses (including significant expenses for medical care and treatment) in an amount to be determined.

## <u>FOURTH CAUSE OF ACTION –PUNITIVE DAMAGES</u>
### (AGAINST MONSANTO/BAYER DEFENDANTS)

210.    Plaintiff incorporates by reference each and every allegation set forth in the preceding paragraphs as if fully stated herein.

211.    At all times material hereto, the Defendants knew or should have known that glyphosate-containing products, like Roundup, were inherently dangerous with respect to their health risk.

212.    At all times material hereto, the Defendants attempted to misrepresent and did misrepresent facts concerning the safety of glyphosate-containing products, like Roundup.

213.    Defendants' Defendants' misrepresentations included knowingly withholding material information from the public, including the Plaintiff herein, concerning the safety of glyphosate-containing products, like Roundup.

214.    At all times material hereto, the Defendants knew and recklessly disregarded the fact that human exposure to glyphosate-containing products, like Roundup, can and do cause health hazards, including NHL.

215.    Notwithstanding the foregoing, the Defendants continued to aggressively market and apply glyphosate-containing products, like Roundup, without disclosing aforesaid risks.

216.    Defendants knew of glyphosate-containing products, like Roundup's defective and unreasonably dangerous nature as set forth herein, but continued to design, develop, manufacture, market, distribute, sell and apply it so as to maximize sales and profits at the expense of the health and safety of the public, including Plaintiff herein, in conscious and/or negligent disregard of the foreseeable harm caused by glyphosate-containing products, like Roundup.

217.    The Defendants intentionally concealed and/or recklessly failed to disclose to the public, including the Plaintiffs herein, the potentially life-threatening hazards of glyphosate-containing products, like Roundup, in order to ensure continued and increased sales.

218.    The Defendants' intentional and/or reckless failure to disclose information deprived the Plaintiffs of necessary information to enable Plaintiff to weigh the true risks of using or being exposed to glyphosate-containing products, like Roundup, against the benefits.

COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

219.    As a direct and proximate result of Defendants' conscious and deliberate disregard for the rights and safety of consumers such as Plaintiff, Plaintiff suffered severe and permanent physical injuries. Plaintiff has endured substantial pain and suffering and has undergone extensive medical and surgical procedures. Plaintiff has incurred significant expenses for medical care and treatment and will continue to incur such expenses in the future.

220.    Plaintiff has lost past earnings and has suffered a loss of earning capacity. Plaintiff has suffered and will continue to suffer economic loss, and have otherwise been physically, emotionally and economically injured. Plaintiff's injuries and damages are permanent and will continue into the future.

221.    The aforesaid conduct of the Defendants was committed with knowing, conscious, and deliberate disregard for the rights and safety of consumers, including Plaintiff herein, and punitive damages thereby deter them from similar conduct in the future.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests that the Court enter judgment against the Defendant on each of the above-referenced claims and causes of action and as follows:

1.    General damages in excess of the jurisdictional amount, including, but not limited to pain, suffering, emotional distress, loss of enjoyment of life, and other non-economic damages in an amount to be determined at trial of this action;

2.    Special  damages in in an amount to be determine at trial of this action;

3.    Punitive damages based on defendants' malice, oppression and fraudulent conduct;

4.    Pre-judgment interest;

5.    Post-judgment interest;

6.    All costs of suit; and

7.    Such other and further relief as this Court deems just and proper.

COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

1

2
## **DEMAND FOR JURY TRIAL**

3
Plaintiff demands trial by jury on all issues of which it is permitted by law.

4
Dated: June 13, 2024

5
Respectfully submitted,

6
*/s/ David J. Wool*
David J Wool, #324124

7
**Wool Trial Law**

8
1001 N Bannock St
Denver, CO 80204

9
Tel: (720) 509-9101

10
david@wooltriallaw.com

11
Devin van der Hahn (*pro hac vice* forthcoming)

12
**VanderHahn LLP**
1000 Main St, Suite 2300

13
Houston, TX 77002

14
Tel. 281.688.5000
Fax 832.734.7120

15
devin@vanderhahn.com

16
Sean Duddy (*pro hac vice* forthcoming)

17
**Duddy & Czarnecki PLLC**
601 Pennsylvania Ave NW

18
South Building, Suite 900
Washington, DC 20004

19
202-771-7978
skd@duddyczarnecki.com

20

21
*Attorneys for Plaintiff*

22

23

24

25

26

27

28

29
COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

## SUPERIOR COURT OF CALIFORNIA
## COUNTY OF SACRAMENTO

### 25CV014052: SURETTE vs MONSANTO COMPANY, et al.
### 09/05/2025 Case Management Conference in Department 22

Tentative Ruling

The Court has read and considered the Joint Case Management Statement filed by the parties and now issues the following tentative ruling:

**APPEARANCE REQUIRED. The parties shall be prepared to address the issues raised in the Joint Statement.**

*Parties requesting services of a court reporter will need to arrange for private court reporter services at their own expense, pursuant to Government code §68086 and California Rules of Court, Rule 2.956.*

*Requirements for requesting a court reporter are listed in the **Policy for Official Reporter Pro Tempore** available on the Sacramento Superior Court website at https://www.saccourt.ca.gov/court-reporters/docs/crtrp-6a.pdf. Parties may contact Court-Approved Official Reporters Pro Tempore by utilizing the list of Court Approved Official Reporters Pro Tempore available at https://www.saccourt.ca.gov/court-reporters/docs/crtrp-13.Pdf*

*A **Stipulation and Appointment of Official Reporter Pro Tempore** (CV/E-206) is required to be signed by each party, the private court reporter, and the Judge prior to the hearing, if not using a reporter from the Court's Approved Official Reporter Pro Tempore list, Once the form is signed it must be filed with the clerk.*

*If a litigant has been granted a fee waiver and requests a court reporter, the party must submit a **Request for Court Reporter by a Party with a Fee Waiver** (CV/E-211) and it must be filed with the clerk at least 10 days prior to the hearing or at the time the proceeding is scheduled if less than 10 days away. Once approved, the clerk will be forward the form to the Court Reporter's Office and an official reporter will be provided.*

***The parties are encouraged to attend via Zoom with the links below:***
*To join by Zoom link - https://saccourt-ca-gov.zoomgov.com/my/sscdept22*
*To join by phone dial (833) 568-8864 ID 16184738886*

***Please note that the Complex Civil Case Department now provides information to assist you in managing your complex case on the Court website at https://www.saccourt.ca.gov/civil/complex-civil-cases.aspx. The Court strongly encourages parties to review this website regularly to stay abreast of the most recent complex civil case procedures. Please refer to the website before directly contacting the Court Clerk for information.***

**SUPERIOR COURT OF CALIFORNIA**
**COUNTY OF SACRAMENTO**

**25CV014052: SURETTE vs MONSANTO COMPANY, et al.**
**11/14/2025 Case Management Conference in Department 22**

Tentative Ruling

**NO APPEARANCE REQUIRED.  The Court has adopted the parties' proposed case management order and sets a further CMC as set forth below.**

The parties shall file and email a Joint Case Management Statement to the department no later than 15 calendar days before the next CMC.

*Please check your tentative ruling before the next Court date at www.saccourt.ca.gov.*

*Please note that the Complex Civil Case Department now provides information to assist you in managing your complex case on the Court website at https://www.saccourt.ca.gov/civil/complex-civil-cases.aspx. The Court strongly encourages parties to review this website regularly to stay abreast of the most recent complex civil case procedures. Please refer to the website before directly contacting the Court Clerk for information.*


FURTHER CONFERENCE
A Case Management Conference is scheduled for 02/27/2026 at 10:30 AM in Department 22.

**SUPERIOR COURT OF CALIFORNIA**
**COUNTY OF SACRAMENTO**

**25CV014052: SURETTE vs MONSANTO COMPANY, et al.**
**08/22/2025 Case Management Conference in Department 22**

Tentative Ruling

The parties failed to file a Joint Case Management Statement as ordered. The Court will continue the CMC to allow the parties to do so. The Joint Statement shall be filed at least 7 days before the CMC. Please be advised that future failures to comply with Court orders could result in the imposition of sanctions under CCP 177.5.

FURTHER CONFERENCE
A Case Management Conference is scheduled for 09/05/2025 at 10:30 AM in Department 22.

**CIV-110**

| ATTORNEY OR PARTY WITHOUT ATTORNEY | STATE BAR NUMBER: 324124 | *FOR COURT USE ONLY* |
|---|---|---|

NAME:  David J. Wool
FIRM NAME:  Wool Trial Law, LLC
STREET ADDRESS:  1001 N. Bannock St., Suite 410
CITY:  Denver          STATE: CO     ZIP CODE: 80204
TELEPHONE NO.:  720-509-9101          FAX NO.:
EMAIL ADDRESS:  david@wooltriallaw.com
ATTORNEY FOR *(name)*:  Plaintiff Denise Surette

**ELECTRONICALLY FILED**
Superior Court of California
County of Sacramento
07/01/2025
By: _____ A. Gray _____ Deputy

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF  SACRAMENTO**
STREET ADDRESS:  720 9th Street
MAILING ADDRESS:  720 9th Street
CITY AND ZIP CODE:  Sacramento 95814
BRANCH NAME:  Gordon D. Schaber Sacramento County Courthouse

PLAINTIFF/PETITIONER: Denise Surette
DEFENDANT/RESPONDENT: Monsanto Company, et al.

| **REQUEST FOR DISMISSAL** | CASE NUMBER: 25CV014052 |
|---|---|

**A conformed copy will not be returned by the clerk unless a method of return is provided with the document.**

**This form may not be used for dismissal of a derivative action or a class action or of any party or cause of action in a class action. (Cal. Rules of Court, rules 3.760 and 3.770.)**

1. TO THE CLERK: Please **dismiss** this action as follows:
   a. (1) ☐ With prejudice   (2) ☒ Without prejudice   (3) ☐ Without prejudice and with the court retaining jurisdiction (Code Civ. Proc., § 664.6)
   b. (1) ☐ Complaint   (2) ☐ Petition
      (3) ☐ Cross-complaint filed on *(date):*          by *(name):*
      (4) ☐ Cross-complaint filed on *(date):*          by *(name):*
      (5) ☐ Entire action of all parties and all causes of action
      (6) ☒ Other  *(specify)*\*: Defendant Wilbur-Ellis Feed, LLC ONLY

2. *(Complete in all cases except family law cases.)*
   The court ☐ did   ☒ did not   waive court fees and costs for a party in this case. *(This information may be obtained from the clerk. If court fees and costs were waived, the declaration on the back of this form must be completed.)*

Date: July 1, 2025

David J. Wool
_____
(TYPE OR PRINT NAME OF  ☒ ATTORNEY  ☐ PARTY WITHOUT ATTORNEY)

\* If dismissal requested is of specified parties only, of specified causes of action only, or of specified cross-complaints only, so state and identify the parties, causes of action, or cross-complaints to be dismissed

► _____ *DW* _____
(SIGNATURE)
Attorney or party without attorney for
☒ Plaintiff/Petitioner   ☐ Defendant/Respondent
☐ Cross-Complainant

3. TO THE CLERK: Consent to the above dismissal is hereby given.†
Date: July 1, 2025

David J. Wool
_____
(TYPE OR PRINT NAME OF  ☐ ATTORNEY  ☐ PARTY WITHOUT ATTORNEY)

† If item 1a(3) is checked, all parties must sign.
If a cross-complaint—or *Response—Marriage/Domestic Partnership* (form FL-120) seeking affirmative relief—is on file, the attorney for cross-complainant (respondent) must sign this consent if required by Code of Civil Procedure section 581(i) or (j).

► _____ *DW* _____
(SIGNATURE)
Attorney or party without attorney for
☒ Plaintiff/Petitioner   ☐ Defendant/Respondent
☐ Cross-Complainant

☐ Check here and use form MC-025 or a separate page for additional signatures. Include date, printed name, and party information.

*(To be completed by clerk)*

4. ☑ Dismissal entered as requested on *(date):* 〈EREDACTED〉
5. ☐ Dismissal entered on *(date):*          as to only *(name):*
6. ☐ Dismissal **not entered** as requested for the following reasons *(specify):*

7. a. ☐ Attorney or party without attorney notified on *(date):*
   b. ☐ Attorney or party without attorney not notified. Filing party failed to provide
      ☐ a copy to be conformed   ☐ means to return conformed copy

Date: 〈REDACTED〉          Clerk, by _____ */s/ A. Gray* _____, Deputy

| Form Adopted for Mandatory Use<br>Judicial Council of California<br>CIV-110 [Rev. January 1, 2025] | **REQUEST FOR DISMISSAL** | Code of Civil Procedure, § 581 et seq.;<br>Government Code, § 68637(c); Cal. Rules of Court, rule 3.1390<br>www.courts.ca.gov |
|---|---|---|

Page 1 of 2

CIV-110

| PLAINTIFF/PETITIONER: Denise Surette | CASE NUMBER: |
|---|---|
| DEFENDANT/RESPONDENT: Monsanto Company, et al. | 25CV014052 |

## COURT'S RECOVERY OF WAIVED COURT FEES AND COSTS

If a party whose court fees and costs were initially waived has recovered or will recover $10,000 or more in value by way of settlement, compromise, arbitration award, mediation settlement, or other means, the court has a statutory lien on that recovery. The court may refuse to dismiss the case until the lien is satisfied. (Gov. Code, § 68637.)

## Declaration Concerning Waived Court Fees

1. The court waived court fees and costs in this action for *(name):*

2. The person named in item 1 is *(check one below)*

    a. ☐ not recovering anything of value by this action.

    b. ☐ recovering less than $10,000 in value by this action.

    c. ☐ recovering $10,000 or more in value by this action. *(If item 2c is checked, item 3 must be completed.)*

3. All court fees and court costs that were waived in this action have been paid to the court *(check one):* ☐ Yes ☐ No

I declare under penalty of perjury under the laws of the State of California that the information above is true and correct.

Date:

▶

_____          _____
(TYPE OR PRINT NAME OF ☐ ATTORNEY ☐ PARTY MAKING DECLARATION)                    (SIGNATURE)

| Attorney or Party without Attorney: | For Court Use Only |
|---|---|
| David J. Wool, Esq. (SBN 324124)<br>Wool Trial Law, PC<br>1001 Bannock St Suite 410<br>Denver, CO 80204<br>  Telephone No: 720-868-9021<br><br>  Attorney For: Plaintiff | **ELECTRONICALLY FILED**<br>Superior Court of California<br>County of Sacramento<br>**07/01/2025**<br>By: _____ Deputy<br>    A. Gray |
| *Ref. No. or File No.:*<br>Surette v Monsanto | |

*Insert name of Court, and Judicial District and Branch Court:*
IN THE SUPERIOR COURT OF THE STATE OF CALIFORNIA IN AND FOR THE COUNTY OF SACRAMENTO

*Plaintiff:*   DENISE SURETTE
*Defendant:*   MONSANTO COMPANY; et al.

| PROOF OF SERVICE SUMMONS | Hearing Date: | Time: | Dept/Div: | Case Number:<br>25CV014052 |
|---|---|---|---|---|

1. *At the time of service I was at least 18 years of age and not a party to this action.*

2. I served copies of the SUMMONS; COMPLAINT FOR DAMAGES; CIVIL CASE COVER SHEET; NOTICE OF CASE ASSIGNMENT

3. *a.*   Party served:     BAYER CROPSCIENCE LP
   *b.*   Person served:   Alex Jenkins, authorized employee associate for CSC, Registered Agent

4. *Address where the party was served:*   2710 Gateway Oaks Drive Suite 150N, Sacramento, CA 95833

5. *I served the party:*
   **a. by personal service.**    I personally delivered the documents listed in item 2 to the party or person authorized to receive
                          service of process for the party (1) on *(date)*: Tue, Jun 17 2025 (2) at *(time)*: 11:01 AM

   (1)   [X]   **(business)**
   (2)   [ ]   **(home)**
   (3)   [ ]   **(other)** :

6. The "Notice to the Person Served" (on the summons) was completed as follows:
   a.   [ ]   as an individual defendant.
   b.   [ ]   as the person sued under the fictitious name of *(specify)*:
   c.   [ ]   as occupant.
   d.   [X]   On behalf of *(specify)*:   BAYER CROPSCIENCE LP
         under the following Code of Civil Procedure section:
         [ ]   416.10 (corporation)                  [ ]   415.95 (business organization, form unknown)
         [ ]   416.20 (defunct corporation)            [ ]   416.60 (minor)
         [ ]   416.30 (joint stock company/association)   [ ]   416.70 (ward or conservatee)
         [X]   416.40 (association or partnership)      [ ]   416.90 (authorized person)
         [ ]   416.50 (public entity)                   [ ]   415.46 (occupant)
         [ ]   other:



Judicial Council Form POS-010
Rule 2.150.(a)&(b) Rev January 1, 2007

**PROOF OF
SERVICE
SUMMONS**

*13536722*
*(408208)*
**Page 1 of 2**

| Plaintiff: | DENISE SURETTE | Case Number: |
|---|---|---|
| Defendant: | MONSANTO COMPANY; et al. | 25CV014052 |

Recoverable cost Per CCP 1033.5(a)(4)(B)

7. **Person who served papers**
   a.  Name:                Michael Morris
   b.  Address:          **FIRST LEGAL**
                               1000 G Street, Suite 120
                               SACRAMENTO, CA 95814
   c.  Telephone number:    (916) 444-5111
   d.  **The fee** for service was:
   e.  I am:
      (1)  ☐  not a registered California process server.
      (2)  ☐  exempt from registration under Business and Professions Code section 22350(b).
      (3)  ☒  a registered California process server:
          (i)    ☐ owner   ☐ employee  ☒ independent contractor
          (ii)   Registration No:   2012-33, Sacramento
          (iii)  County:   Sacramento

8. *I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.*

06/18/2025
*(Date)*

*Michael Morris*



Judicial Council Form POS-010
Rule 2.150.(a)&(b) Rev January 1, 2007

**PROOF OF
SERVICE
SUMMONS**

*13536722
(408208)*
Page 2 of 2

| Attorney or Party without Attorney:<br>David J. Wool, Esq. (SBN 324124)<br>Wool Trial Law, PC<br>1001 Bannock St Suite 410<br>Denver, CO 80204<br>  Telephone No: 720-868-9021<br><br>  Attorney For: Plaintiff | *For Court Use Only* |
|---|---|
| *Ref. No. or File No.:*<br>Surette v Monsanto | **ELECTRONICALLY FILED**<br>Superior Court of California<br>County of Sacramento<br>07/01/2025<br>By: _____ A. Gray _____ Deputy |

*Insert name of Court, and Judicial District and Branch Court:*
IN THE SUPERIOR COURT OF THE STATE OF CALIFORNIA IN AND FOR THE COUNTY OF SACRAMENTO

*Plaintiff:* DENISE SURETTE
*Defendant:* MONSANTO COMPANY; et al.

| **PROOF OF SERVICE<br>SUMMONS** | *Hearing Date:* | *Time:* | *Dept/Div:* | *Case Number:*<br>25CV014052 |
|---|---|---|---|---|

1. *At the time of service I was at least 18 years of age and not a party to this action.*

2. I served copies of the SUMMONS; COMPLAINT FOR DAMAGES; CIVIL CASE COVER SHEET; NOTICE OF CASE ASSIGNMENT

3. *a.* Party served: WILBUR-ELLIS COMPANY, LLC
   *b.* Person served: Jackson Yang, authorized agent for Registered Agent Solutions, Registered Agent

4. *Address where the party was served:* 720 14th Street, Sacramento, CA 95814

5. *I served the party:*
   a. **by personal service.** I personally delivered the documents listed in item 2 to the party or person authorized to receive service of process for the party (1) on *(date)*: Tue, Jun 17 2025 (2) at *(time)*: 10:44 AM
   (1) [X] (business)
   (2) [ ] (home)
   (3) [ ] (other) :

6. The "Notice to the Person Served" (on the summons) was completed as follows:
   a. [ ] as an individual defendant.
   b. [ ] as the person sued under the fictitious name of *(specify)*:
   c. [ ] as occupant.
   d. [X] On behalf of *(specify)*: WILBUR-ELLIS COMPANY, LLC
      under the following Code of Civil Procedure section:
      [ ] 416.10 (corporation)         [ ] 415.95 (business organization, form unknown)
      [ ] 416.20 (defunct corporation)   [ ] 416.60 (minor)
      [ ] 416.30 (joint stock company/association)   [ ] 416.70 (ward or conservatee)
      [X] 416.40 (association or partnership)   [ ] 416.90 (authorized person)
      [ ] 416.50 (public entity)       [ ] 415.46 (occupant)
      [ ] other:



Judicial Council Form POS-010
Rule 2.150.(a)&(b) Rev January 1, 2007

**PROOF OF
SERVICE
SUMMONS**

*13536726*
*(408207)*
**Page 1 of 2**

| *Plaintiff:* DENISE SURETTE | *Case Number:* |
|---|---|
| *Defendant:* MONSANTO COMPANY; et al. | 25CV014052 |

Recoverable cost Per CCP 1033.5(a)(4)(B)

7.  **Person who served papers**
   a.  Name:                        Tori Williams
   b.  Address:                  **FIRST LEGAL**
                                         1000 G Street, Suite 120
                                         SACRAMENTO, CA 95814
   c.  Telephone number:    (916) 444-5111
   d.  **The fee** for service was:
   e.  I am:
       (1)  ☐  not a registered California process server.
       (2)  ☐  exempt from registration under Business and Professions Code section 22350(b).
       (3)  ☒  a registered California process server:
            (i)   ☐ owner   ☐ employee   ☒ independent contractor
            (ii)  Registration No:   2025-018
            (iii) County:   Sacramento County

8.  *I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.*

06/18/2025
*(Date)*

Tori Williams

Judicial Council Form POS-010
Rule 2.150.(a)&(b) Rev January 1, 2007

**PROOF OF
SERVICE
SUMMONS**

*13536726*
*(408207)*
**Page 2 of 2**

| | |
|---|---|
| *Attorney or Party without Attorney:*<br>David J. Wool, Esq. (SBN 324124)<br>Wool Trial Law, PC<br>1001 Bannock St Suite 410<br>Denver, CO 80204<br>  *Telephone No:*  720-868-9021 | *For Court Use Only*<br><br>**ELECTRONICALLY FILED**<br>Superior Court of California<br>County of Sacramento<br>07/01/2025<br>By: _____ A. Gray _____ Deputy |

*Attorney For:*  Plaintiff | *Ref. No. or File No.:*<br>Surette v Monsanto

*Insert name of Court, and Judicial District and Branch Court:*
IN THE SUPERIOR COURT OF THE STATE OF CALIFORNIA IN AND FOR THE COUNTY OF SACRAMENTO

*Plaintiff:*  DENISE SURETTE
*Defendant:*  MONSANTO COMPANY; et al.

| **PROOF OF SERVICE**<br>**SUMMONS** | *Hearing Date:* | *Time:* | *Dept/Div:* | *Case Number:*<br>25CV014052 |
|---|---|---|---|---|

1. *At the time of service I was at least 18 years of age and not a party to this action.*

2. I served copies of the SUMMONS; COMPLAINT FOR DAMAGES; CIVIL CASE COVER SHEET; NOTICE OF CASE ASSIGNMENT

3. *a.*   *Party served:*     MONSANTO COMPANY
   *b.*   *Person served:*   Alex Jenkins authorized employee associate for CSC, Registered Agent

4. *Address where the party was served:*   2710 Gateway Oaks Drive Suite 150N, Sacramento, CA 95833

5. *I served the party:*
   a. **by personal service.**   I personally delivered the documents listed in item 2 to the party or person authorized to receive
                               service of process for the party (1) on *(date)*: Tue, Jun 17 2025 (2) at *(time)*: 11:01 AM
   (1)   [X]   **(business)**
   (2)   [  ]   **(home)**
   (3)   [  ]   **(other) :**

6. The "Notice to the Person Served" (on the summons) was completed as follows:
   a.   [  ]   as an individual defendant.
   b.   [  ]   as the person sued under the fictitious name of *(specify):*
   c.   [  ]   as occupant.
   d.   [X]   On behalf of *(specify):*   MONSANTO COMPANY
         under the following Code of Civil Procedure section:
         [X]  416.10 (corporation)                   [  ]  415.95 (business organization, form unknown)
         [  ]  416.20 (defunct corporation)           [  ]  416.60 (minor)
         [  ]  416.30 (joint stock company/association)    [  ]  416.70 (ward or conservatee)
         [  ]  416.40 (association or partnership)      [  ]  416.90 (authorized person)
         [  ]  416.50 (public entity)              [  ]  415.46 (occupant)
         [  ]  other:



Judicial Council Form POS-010
Rule 2.150.(a)&(b) Rev January 1, 2007

**PROOF OF**
**SERVICE**
**SUMMONS**

*13536718*
*(408205)*
**Page 1 of 2**

| Plaintiff: | DENISE SURETTE | Case Number: |
|---|---|---|
| Defendant: | MONSANTO COMPANY; et al. | 25CV014052 |

Recoverable cost Per CCP 1033.5(a)(4)(B)

7.  **Person who served papers**
    a.  Name:                    Michael Morris
    b.  Address:                **FIRST LEGAL**
                                  1000 G Street, Suite 120
                                  SACRAMENTO, CA 95814
    c.  Telephone number:      (916) 444-5111
    d.  **The fee** for service was:
    e.  I am:
        (1)  ☐  not a registered California process server.
        (2)  ☐  exempt from registration under Business and Professions Code section 22350(b).
        (3)  ☒  a registered California process server:
            (i)  ☐ owner    ☐ employee  ☒ independent contractor
            (ii)  Registration No:    2012-33, Sacramento
            (iii)  County:   Sacramento

8.  *I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.*

| | |
|---|---|
| 06/18/2025 | |
| *(Date)* | *Michael Morris* |

Judicial Council Form POS-010
Rule 2.150.(a)&(b) Rev January 1, 2007

**PROOF OF SERVICE SUMMONS**

*13536718*
*(408205)*
**Page 2 of 2**

| Attorney or Party without Attorney: | For Court Use Only |
|---|---|
| David J Wool, Esq.<br>Wool Trial Law, PC<br>1001 Bannock St Suite 410<br>Denver, CO 80204<br>Telephone No: 720-868-9021<br>Attorney For: Plaintiff | **ELECTRONICALLY FILED**<br>Superior Court of California<br>County of Sacramento<br>07/16/2025<br>By: _____ A. Gray _____ Deputy |

| Ref. No. or File No.:<br>Surette v Monsanto | |

Insert name of Court, and Judicial District and Branch Court:
IN THE SUPERIOR COURT OF THE STATE OF CALIFORNIA IN AND FOR THE COUNTY OF SACRAMENTO

Plaintiff: DENISE SURETTE
Defendant: MONSANTO COMPANY; et al.

| **PROOF OF SERVICE** | Hearing Date:<br>8/22/25 | Time:<br>10:30am | Dept/Div: | Case Number:<br>25CV014052 |
|---|---|---|---|---|

1. *At the time of service I was at least 18 years of age and not a party to this action.*

2. I served copies of the Notice of Case Management Conference and Orders Re: Complex Case Management Procedures

3. *a.* Party served: Monsanto Company
   *b.* Person served: Aaron Canales authorized employee associate for CSC, Registered Agent

4. *Address where the party was served:* 2710 Gateway Oaks Drive Suite 150N, Sacramento, CA 95833

5. *I served the party:*
   a. **by personal service.** I personally delivered the documents listed in item 2 to the party or person authorized to receive process for the party (1) on: Mon, Jul 14 2025 (2) at: 01:49 PM

   Recoverable cost Per CCP 1033.5(a)(4)(B)

6. *Person Who Served Papers:*
   a. Michael Morris (2012-33, Sacramento)
   b. **FIRST LEGAL**
     1000 G Street, Suite 120
     SACRAMENTO, CA 95814
   c. (916) 444-5111

   d. *The Fee* for Service was:
   e. I am: A Registered California Process Server

7. **I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.**

_____07/15/2025_____
*(Date)*

_____
*(Signature)*



Judicial Council Form
Rule 2.150.(a)&(b) Rev January 1, 2007

**PROOF OF SERVICE**

13718651
(409364)

| | |
|---|---|
| *Attorney or Party without Attorney:*<br>David J Wool, Esq.<br>Wool Trial Law, PC<br>1001 Bannock St Suite 410<br>Denver, CO 80204<br>*Telephone No:* 720-868-9021 | *For Court Use Only*<br><br>**ELECTRONICALLY FILED**<br>Superior Court of California<br>County of Sacramento<br>07/16/2025<br>By: _____ A. Gray _____ Deputy |
| *Attorney For:* Plaintiff    *Ref. No. or File No.:*<br>Surette v Monsanto | |

| *Insert name of Court, and Judicial District and Branch Court:*<br>IN THE SUPERIOR COURT OF THE STATE OF CALIFORNIA IN AND FOR THE COUNTY OF SACRAMENTO |
|---|

| *Plaintiff:* DENISE SURETTE<br>*Defendant:* MONSANTO COMPANY; et al. |
|---|

| **PROOF OF SERVICE** | *Hearing Date:*<br>8/22/25 | *Time:*<br>10:30am | *Dept/Div:* | *Case Number:*<br>25CV014052 |
|---|---|---|---|---|

1. *At the time of service I was at least 18 years of age and not a party to this action.*

2. I served copies of the Notice of Case Management Conference and Orders Re: Complex Case Management Procedures

3.    *a.*    *Party served:*    Wilbur-Ellis Company, LLC
      *b.*    *Person served:*    Jackson Yang document specialist for Registered Agent Solutions, Registered Agent

4. *Address where the party was served:*    720 14th Street, Sacramento, CA 95814

5. *I served the party:*
   a. **by personal service.** I personally delivered the documents listed in item 2 to the party or person authorized to receive process for the party (1) on: Mon, Jul 14 2025 (2) at: 02:37 PM

                   Recoverable cost Per CCP 1033.5(a)(4)(B)

6. *Person Who Served Papers:*
      a. Michael Morris (2012-33, Sacramento)
      **b. FIRST LEGAL**
        1000 G Street, Suite 120
        SACRAMENTO, CA 95814
      c. (916) 444-5111

      **d.** *The Fee for Service was:*
      **e.** I am: A Registered California Process Server

7. *I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.*

<br>

| 07/15/2025 | *(Signature)* |
|---|---|
| *(Date)* | |



Judicial Council Form
Rule 2.150.(a)&(b) Rev January 1, 2007

**PROOF OF SERVICE**

13718670
*(409365)*

| | |
|---|---|
| *Attorney or Party without Attorney:*<br>David J Wool, Esq.<br>Wool Trial Law, PC<br>1001 Bannock St Suite 410<br>Denver, CO 80204<br>  *Telephone No:*  720-868-9021<br><br>  *Attorney For:*  Plaintiff | *For Court Use Only*<br><br>**ELECTRONICALLY FILED**<br>Superior Court of California<br>County of Sacramento<br>07/16/2025<br>By: _____ A. Gray _____ Deputy |
| *Ref. No. or File No.:*<br>Surette v Monsanto | |

*Insert name of Court, and Judicial District and Branch Court:*
IN THE SUPERIOR COURT OF THE STATE OF CALIFORNIA IN AND FOR THE COUNTY OF SACRAMENTO

*Plaintiff:*  DENISE SURETTE
*Defendant:*  MONSANTO COMPANY; et al.

| **PROOF OF SERVICE** | *Hearing Date:*<br>8/22/25 | *Time:*<br>10:30am | *Dept/Div:* | *Case Number:*<br>25CV014052 |
|---|---|---|---|---|

1.  *At the time of service I was at least 18 years of age and not a party to this action.*

2.  I served copies of the Notice of Case Management Conference and Orders Re: Complex Case Management Procedures

3.  *a.*  Party served:     Bayer CropScience LP
    *b.*  Person served:   Aaron Canales authorized employee associate for CSC, Registered Agent

4.  *Address where the party was served:*   2710 Gateway Oaks Drive Suite 150N, Sacramento, CA 95833

5.  *I served the party:*
    a. **by personal service.** I personally delivered the documents listed in item 2 to the party or person authorized to receive process for the party (1) on: Mon, Jul 14 2025 (2) at: 01:49 PM

                                                     Recoverable cost Per CCP 1033.5(a)(4)(B)

6. *Person Who Served Papers:*
   a. Michael Morris (2012-33, Sacramento)
   **b. FIRST LEGAL**
     1000 G Street, Suite 120
     SACRAMENTO, CA 95814
   c. (916) 444-5111

   **d.** *The Fee* for Service was:
   **e.** I am: A Registered California Process Server

7.  *I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.*


_____07/15/2025_____       _____
              *(Date)*                                          *(Signature)*



Judicial Council Form
Rule 2.150.(a)&(b) Rev January 1, 2007

**PROOF OF
SERVICE**

13718661
*(409366)*

David J. Wool (SBN 324124)
**Wool Trial Law, LLC**
1001 N. Bannock St., Suite 410
Denver, CO 80204
Tel: (720)-509-9101
david@wooltriallaw.com

*Attorneys for Plaintiff*

ELECTRONICALLY FILED
Superior Court of California
County of Sacramento
12/04/2025
By: ___ E. Leon Barrientos ___ Deputy

## SUPERIOR COURT OF THE STATE OF CALIFORNIA

## COUNTY OF SACRAMENTO

| | |
|---|---|
| DENISE SURETTE, | Case No.: 25CV014052 |
| Plaintiff, | **PLAINTIFF'S NOTICE OF POSTING OF JURY FEES** |
| v. | |
| MONSANTO COMPANY, BAYER CROPSCIENCE LP, WILBUR-ELLIS COMPANY, LLC; and DOES 1-10 | Complaint Filed: June 13, 2025 |
| Defendants. | |

**TO ALL PARTIES AND TO THEIR RESPECTIVE ATTORNEYS OF RECORD:**

PLEASE TAKE NOTICE that Plaintiff DENISE SURETTE  hereby posts jury fees in the amount of $150.00 in the above-captioned matter.

Dated: December 4, 2025

By: */s/ David Wool*
David J. Wool (SBN 324124)
**Wool Trial Law, LLC**
1001 N. Bannock St., Suite 410
Denver, CO 80204
Tel: (720) 509-9101
david@wooltriallaw.com

*Attorney for Plaintiff*

**PROOF OF SERVICE**
**Code Civ. Proc. § 1013a(3)**

I am employed in the County of Denver, State of Colorado. I am over the age of 18 and not a party to the within action. My business address is 1001 Bannock St. Suite 410, Denver CO.

On December 4, 2025, I served the foregoing document titled **PLAINTIFF'S NOTICE OF POSTING OF JURY FEES** on the interested parties, as follows:

( )    BY MAIL: I am "readily familiar" with the firm's practice of collection and processing mail. Under that practice, it would be deposited with the U.S. Postal Service on that same day with postage thereon fully prepaid at Tustin, California in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

( )    BY FACSIMILE: I transmitted a true copy from facsimile number (714) 953-1777 to the facsimile numbers listed on the attached service list. Upon completion of transmission there were no errors reported.

(X)    BY **ELECTRONIC TRANSMISSION**: I transmitted a true copy via electronic mail to the following counsel of record for Defendants:

Alicia J. Donahue
Kara M. Flageollet
SHOOK HARDY & BACON LLP
555 Mission Street, Suite 2300
San Francisco, CA 94105
Tel: 415-544-1900
adonahue@shb.com
kflageollet@shb.com

Mayela C. Montenegro-Urch
SHOOK HARDY & BACON LLP
Jamboree Center
5 Park Plaza, Suite 1600
Irvine, CA 92614
mmontenegro@shb.com

*Attorneys for Defendants Monsanto Company, Bayer CropScience LP, and Wilbur-Ellis Company, LLC*

( )    BY NEXT-DAY DELIVERY: Causing overnight delivery of the document(s) listed herein via ONTRAC OVERNIGHT, to the address (es) set forth on the attached service list.

Executed on December 4, 2025, at Denver, Colorado. I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

*/s/ Alana Johnson*
Alana Johnson

---

- 1 -

PROOF OF SERVICE

RA-010

| | |
|---|---|
| **ATTORNEY OR PARTY WITHOUT ATTORNEY:** STATE BAR NUMBER: 324124<br>NAME: David Wool<br>FIRM NAME: Wool Trial Law LLC<br>STREET ADDRESS: 1001 Bannock St. Suite 410<br>CITY: Denver  STATE: CO  ZIP CODE: 80204<br>TELEPHONE NO.: 720-509-9101  FAX NO.:<br>EMAIL ADDRESS: david@wooltriallaw.com<br>ATTORNEY FOR (name): Denise Surette | **ELECTRONICALLY FILED**<br>Superior Court of California<br>County of Sacramento<br>09/03/2025<br>By: _____ A. Gray _____ Deputy |

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF**
STREET ADDRESS:
MAILING ADDRESS:
CITY AND ZIP CODE:
BRANCH NAME:

PLAINTIFF/PETITIONER: Denise Surette
DEFENDANT/RESPONDENT: Monsanto Company, et al.
OTHER CASE NAME:

| **NOTICE OF REMOTE APPEARANCE** | CASE NUMBER:<br>25CV014052 |
|---|---|

> You must use this form to tell the court you intend to appear remotely in a civil case, unless the court's website describes an online process for giving notice. You may also use it to give the required notice to all other parties in the case. (Do not use this form in a juvenile dependency proceeding.)
>
> Check the court's website for information about how to appear remotely, including the departments and types of cases or proceedings that allow remote appearances and ways to appear remotely in their departments for such appearances.
>
> See page 3 of this form for more information, including deadlines for giving notice and for opposing a remote appearance if this notice is for an evidentiary hearing or trial.
>
> **A person appearing remotely should conduct themselves as though appearing in court in person.**

1. The person who intends to appear remotely is *(check and complete all that apply):*
   - [ ] Plaintiff/Petitioner *(name):*
   - [x] Attorney for Plaintiff/Petitioner *(name):* Denise Surrette
   - [ ] Defendant/Respondent *(name):*
   - [ ] Attorney for Defendant/Respondent *(name):*
   - [ ] Other *(name and role in case):*

2. The person or persons in 1 intends to appear remotely *(check one):*
   a. [x] Throughout the case.
   b. [ ] At the proceeding described below, including on any later dates if the proceeding is continued *(describe):*
      Type of proceeding:
      Set on *(date):* September 5  at *(time):* 10:30am  in *(department):* 22
      Before *(name of judicial officer, if known):* Honorable Laurie A. Damrell

3. The person intends to appear by *(check court's website for method that may be used):*
   - [x] Videoconference  [ ] Audio only (including telephone)

4. [ ] For evidentiary hearing or trial only (where testimony may be given): the party requests the following additional aspects of the proceeding be conducted remotely *(describe what the party wants to be done remotely and why; attach form MC-25 if more space is needed):*

| | | |
|---|---|---|
| Form Adopted for Mandatory Use<br>Judicial Council of California<br>RA-010 [New January 1, 2022] | **NOTICE OF REMOTE APPEARANCE** | Code of Civil Procedure, § 367.75;<br>Cal. Rules of Court, rule 3.672<br>*www.courts.ca.gov* |

RA-010

| PLAINTIFF: | Denise Surette | CASE NUMBER: |
|---|---|---|
| DEFENDANT: | Monsanto Company et al | 25CV014052 |

5. ☒ I agree to keep the proceeding confidential to the same extent as would be required if I were appearing in person.

Date: 9/3/2025

David J. Wool
_____
(TYPE OR PRINT NAME)                                    (SIGNATURE)

## Notice to Other Parties

Anyone intending to appear remotely must provide notice to all other parties by the deadlines stated in Cal. Rules of Court, rule 3.672, and described on the next page. Notice may be provided orally, electronically, or by giving the other parties this form in a way to ensure it is received by the applicable deadline. The party must tell the court this was done either by filing a proof of service (this may be done on forms POS-040 or POS-050 for electronic service) or by completing and signing the declaration below.

## Declaration of Notice

I gave notice that I intend to appear remotely to the other parties or persons entitled to receive notice in this case as stated below.
*Complete one item below for each person notice was given to, and enter one of the following options for "Method of notice" in c.*

- **Mail**: By mailing them a copy of this form (write the mailing address in d.)
- **Overnight delivery**: By having a copy of this form delivered overnight (write the delivery address in d.)
- **Electronic notice**: By e-mail or text message (write the e-mail or phone number in d.)
- **Phone**: By telling them over the telephone or leaving them voice mail (write the phone number in d.), or
- **In person**: By giving them a copy of this form in person, or by telling them orally in person (write the address in d.)

1. ☐ Plaintiff/Petitioner
   a. Name:
   b. Date of notice:
   c. Method of notice:
   d. Address (mailing, in-person, or email) or phone number:

2. ☒ Attorney for: Defendants
   a. Name: Alicia Donahue
   b. Date of notice: August 20, 2025
   c. Method of notice: Email
   d. Address (mailing, in-person, or email) or phone number: ADONAHUE@shb.com

3. ☐ Defendant/Respondent
   a. Name:
   b. Date of notice:
   c. Method of notice:
   d. Address (mailing, in-person, or email) or phone number:

4. ☒ Attorney for: Defendants
   a. Name: Kara Flageollet
   b. Date of notice: August 20, 2025
   c. Method of notice: email
   d. Address (mailing, in-person, or email) phone number: kflageollet@shb.com

5. ☐ Other *(specify):*
   a. Name:
   b. Date of notice:
   c. Method of notice:
   d. Address (mailing, in-person, or email) or phone number:

6. ☒ Attorney for: Defendants
   a. Name: Mayela Montenegro-Urch
   b. Date of notice: August 20, 2025
   c. Method of notice: email
   d. Address (mailing, in-person, or email) phone number: MMONTENEGRO@shb.com

7. ☐ Other *(specify):*
   a. Name:
   b. Date of notice:
   c. Method of notice:
   d. Address (mailing, in-person, or email) or phone number:

7. ☐ Other *(specify):*
   a. Name:
   b. Date of notice:
   c. Method of notice:
   d. Address (mailing, in-person, or email) or phone number:

☐ If more people were given notice, check here, attach form MC-025, titled as Attachment Notice, and add the information about how and when notice was given to each person.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Date:

David Wool
_____
(TYPE OR PRINT NAME)                                    (SIGNATURE)

RA-010

## Instructions for Giving Notice of Remote Appearance
(This page does not need to be filed.)

**1. Court online procedures**. Before using this form, check the court's website to see if that court has an online procedure for providing notice to the court of your intent to appear remotely instead. You can find a link to the website for each court at: *https://www.courts.ca.gov/find-my-court.htm.*

**2. How to use this form**. This form is intended for use in civil cases only (any cases not criminal or petitions for habeas corpus, other than petitions under Welf. & Inst. Code, § 5000 et seq.), to provide written notice of intent to appear remotely, to a court and the parties, as described in Code of Civil Procedure section 367.75. It is not needed in juvenile dependency hearings.

**Check the court's website to determine how remote appearances work in that court before completing this form.** If the court does not have an online procedure for giving notice to the court of intent to appear remotely, complete and file this form to give the court notice. If you intend to appear remotely throughout the case, you only need to file it once (check item 2a).

**3. Notice to others**. You may also use this form to show that you gave notice to other parties. You must give notice of your intent to appear remotely to all parties and other persons who are entitled to notice of the proceeding. (If you checked item 2a, you only need to give notice once. Otherwise, give notice to the court and others before each proceeding you intend to appear at remotely.) You can describe how and when you gave notice in the Declaration of Notice on page 2, or by filing a proof of service with the court.

**4. When to file and give notice to others.**
California Rules of Court, rule 3.672(g) and (h) state the deadlines by which you have to give notice of intent to appear remotely to the other parties and the court. (You can give notice earlier.) There are different deadlines :

*For motions and proceedings in which people cannot testify*

If a party gives or receives *at least 3 court days' notice* of the proceeding (including all regularly noticed motions):
- At least 2 court days before the proceeding.

If a party gives or receives *less than 3 court days' notice* of the proceeding (including ex parte applications):
- With the moving papers, if the notice to appear remotely is by the party that is asking for the hearing; or
- By 2 p.m. the court day before the hearing if the notice to appear remotely is by any other party.

*Note:* If a party misses these deadlines, they may still ask the court for permission to appear remotely.

*For trials, including small claims trials, and hearings in which people may testify (evidentiary hearings)*

If a party gives or receives *at least 15 court days' notice* of a trial or hearing date, and for all small claims trials:
- At least 10 court days before the trial or hearing date.

If a party gives or receives *less than 15 days' notice* of the trial or hearing (including hearings on protective orders):
- With the moving papers or at least 5 court days before the hearing, if the notice to appear remotely is by the party that is asking for the hearing; or
- By 2 p.m. the court day before the hearing if the notice to appear remotely is by any other party.

*Note:* If a party misses these deadlines, they may still ask thecourt for permission to appear remotely.

**5. Opposition to remote appearances at trial or evidentiary hearing.** If a party or witness has given notice of intent to appear remotely at a trial or evidentiary hearing (hearing at which people may testify), other parties in the action may oppose the remote appearance by filing *Opposition to Remote Proceeding at Evidentiary Hearing or Trial* (form RA-015). The opposition must be served on parties and other persons entitled to receive notice of the proceedings, by the deadlines summarized on that form. (Cal. Rules of Court, rule 3.672(h)(3).)

**6. In-person appearance.** A court may require any person to appear in person instead of remotely. (Code Civ. Proc., § 367.75(b).)

**7. Recordings.** No person may record a proceeding without first getting approval from the judge. (Cal. Rules of Court, rule 1.150(c).)

**8. Accommodations for disability**. If a party needs an accommodation for a disability, use form MC-410, *Disability Accommodations Request,* to tell the court about their needs. See form MC-410-INFO for more information.

**9. Request for interpreter**. If a party does do not speak English well, ask the court clerk as soon as possible for a court-provided interpreter. Form INT-300, *Request for an Interpreter,* or a local court form may be used to request an interpreter. If no court interpreter is available, it may be necessary to reschedule the hearing or trial.

**NOTICE OF REMOTE APPEARANCE**

privacy, please press the Clear This Form button after ye

| Print this form | Save this form | Clear this form |

RA-010

| | |
|---|---|
| ATTORNEY OR PARTY WITHOUT ATTORNEY:            STATE BAR NUMBER:<br>NAME:  Alicia J. Donahue (SBN: 117412); Kara M. Flageollet (SBN: 347646)<br>FIRM NAME:  Shook Hardy & Bacon L.L.P.<br>STREET ADDRESS:  555 Mission Street, Suite 2300<br>CITY:  San Francisco                    STATE:  CA      ZIP CODE:  94105<br>TELEPHONE NO.: (415) 544-1900          FAX NO.: (415) 391-0281<br>EMAIL ADDRESS:  adonahue@shb.com; kflageollet@shb.com<br>ATTORNEY FOR (name):  Defendants Monsanto Company, et al. | **ELECTRONICALLY FILED**<br>Superior Court of California<br>County of Sacramento<br>11/14/2025<br>By: ___E. Leon Barrientos___ Deputy |

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF  SANTA CRUZ**
STREET ADDRESS:  720  9th Street
MAILING ADDRESS:  720 9th Street
CITY AND ZIP CODE:  Sacramento, CA 95814
BRANCH NAME:  Gordon D. Schaber Superior Court

PLAINTIFF/PETITIONER: Denise Surette
DEFENDANT/RESPONDENT: Monsanto Company, et al.
OTHER CASE NAME:

| | |
|---|---|
| **NOTICE OF REMOTE APPEARANCE** | CASE NUMBER:<br>25CV014052 |

> You must use this form to tell the court you intend to appear remotely in a civil case, unless the court's website describes an online process for giving notice. You may also use it to give the required notice to all other parties in the case. (Do not use this form in a juvenile dependency proceeding.)
>
> Check the court's website for information about how to appear remotely, including the departments and types of cases or proceedings that allow remote appearances and ways to appear remotely in their departments for such appearances.
>
> See page 3 of this form for more information, including deadlines for giving notice and for opposing a remote appearance if this notice is for an evidentiary hearing or trial.
>
> **A person appearing remotely should conduct themselves as though appearing in court in person.**

1. The person who intends to appear remotely is *(check and complete all that apply):*

   ☐  Plaintiff/Petitioner *(name):*

   ☐  Attorney for Plaintiff/Petitioner *(name):*

   ☐  Defendant/Respondent *(name):*

   ☒  Attorney for Defendant/Respondent *(name):*  Alicia J. Donahue for Defs. Monsanto Company, Bayer Cropscience LP and

   ☒  Other *(name and role in case):* Wilbur-Ellis Company, LLC

2. The person or persons in 1 intends to appear remotely *(check one):*

   a.  ☐  Throughout the case.

   b.  ☒  At the proceeding described below, including on any later dates if the proceeding is continued *(describe):*

   Type of proceeding: Case Management Conference

   Set on *(date):* November 14, 2025      at *(time):* 10:30 a.m.          in *(department):* 22

   Before *(name of judicial officer, if known):* Hon. Lauri A. Damrell

3. The person intends to appear by *(check court's website for method that may be used):*

   ☒  Videoconference      ☐  Audio only (including telephone)

4. ☐  For evidentiary hearing or trial only (where testimony may be given): the party requests the following additional aspects of the proceeding be conducted remotely*(describe what the party wants to be done remotely and why; attach form MC-25 if more space is needed):*

RA-010

| | |
|---|---|
| PLAINTIFF:  Denise Surette | CASE NUMBER: |
| DEFENDANT:  Monsanto Company, et al. | 25CV014052 |

5. ☒ I agree to keep the proceeding confidential to the same extent as would be required if I were appearing in person.

Date:  November 14, 2025

Alicia J. Donahue
_____
(TYPE OR PRINT NAME)

► _____
(SIGNATURE)

## Notice to Other Parties

Anyone intending to appear remotely must provide notice to all other parties by the deadlines stated in Cal. Rules of Court, rule 3.672, and described on the next page. Notice may be provided orally, electronically, or by giving the other parties this form in a way to ensure it is received by the applicable deadline. The party must tell the court this was done either by filing a proof of service (this may be done on forms POS-040 or POS-050 for electronic service) or by completing and signing the declaration below.

## Declaration of Notice

I gave notice that I intend to appear remotely to the other parties or persons entitled to receive notice in this case as stated below.
*Complete one item below for each person notice was given to, and enter one of the following options for* "Method of notice" *in c.*
- **Mail**: By mailing them a copy of this form (write the mailing address in d.)
- **Overnight delivery**: By having a copy of this form delivered overnight (write the delivery address in d.)
- **Electronic notice**: By e-mail or text message (write the e-mail or phone number in d.)
- **Phone**: By telling them over the telephone or leaving them voice mail (write the phone number in d.), or
- **In person**: By giving them a copy of this form in person, or by telling them orally in person (write the address in d.)

1. ☐ Plaintiff/Petitioner
   a. Name:
   b. Date of notice:
   c. Method of notice:
   d. Address (mailing, in-person, or email) or phone number:

2. ☒ Attorney for: Plaintiffs
   a. Name: David J. Wool, Esq. / Wool Trial Law LLC
   b. Date of notice: Nov 14, 2025
   c. Method of notice: electronic mail
   d. Address (mailing, in-person, or email) or phone number: David@WoolTrialLaw.com

3. ☐ Defendant/Respondent
   a. Name:
   b. Date of notice:
   c. Method of notice:
   d. Address (mailing, in-person, or email) or phone number:

4. ☒ Attorney for: Plaintiffs
   a. Name: Devin van der Hahn / Vanderhahn LLP
   b. Date of notice: Nov 14, 2025
   c. Method of notice: electronic mail
   d. Address (mailing, in-person, or email) phone number: devin@vanderhahn.com

5. ☐ Other *(specify)*:
   a. Name:
   b. Date of notice:
   c. Method of notice:
   d. Address (mailing, in-person, or email) or phone number:

6. ☒ Attorney for: Plaintiffs
   a. Name: Sean Duddy / Duddy & Czarneckii PLLC
   b. Date of notice: Nov 14, 2025
   c. Method of notice: electronic mail
   d. Address (mailing, in-person, or email) phone number: skd@duddyczarnecki.com

7. ☐ Other *(specify)*:
   a. Name:
   b. Date of notice:
   c. Method of notice:
   d. Address (mailing, in-person, or email) or phone number:

7. ☐ Other *(specify)*:
   a. Name:
   b. Date of notice:
   c. Method of notice:
   d. Address (mailing, in-person, or email) or phone number:

☐ If more people were given notice, check here, attach form MC-025, titled as Attachment Notice, and add the information about how and when notice was given to each person.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Date:  November 14, 2025

Rose Featherstone
_____
(TYPE OR PRINT NAME)

► _____
(SIGNATURE)

**NOTICE OF REMOTE APPEARANCE**

RA-010

| ATTORNEY OR PARTY WITHOUT ATTORNEY: | STATE BAR NUMBER: 324124 |
|---|---|

NAME: David Wool

FIRM NAME: Wool Trial Law LLC

STREET ADDRESS: 1001 Bannock St. Suite 410

CITY: Denver     STATE: CO     ZIP CODE: 80204

TELEPHONE NO.: 720-509-9101     FAX NO.:

EMAIL ADDRESS: david@wooltriallaw.com

ATTORNEY FOR (name): Denise Surette

**ELECTRONICALLY FILED**
Superior Court of California
County of Sacramento

08/20/2025

By: _____ A. Gray    Deputy

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF**

STREET ADDRESS:

MAILING ADDRESS:

CITY AND ZIP CODE:

BRANCH NAME:

PLAINTIFF/PETITIONER: Denise Surette

DEFENDANT/RESPONDENT: Monsanto Company, et al.

OTHER CASE NAME:

| **NOTICE OF REMOTE APPEARANCE** | CASE NUMBER:<br>25CV014052 |
|---|---|

You must use this form to tell the court you intend to appear remotely in a civil case, unless the court's website describes an online process for giving notice. You may also use it to give the required notice to all other parties in the case. (Do not use this form in a juvenile dependency proceeding.)

Check the court's website for information about how to appear remotely, including the departments and types of cases or proceedings that allow remote appearances and ways to appear remotely in their departments for such appearances.

See page 3 of this form for more information, including deadlines for giving notice and for opposing a remote appearance if this notice is for an evidentiary hearing or trial.

**A person appearing remotely should conduct themselves as though appearing in court in person.**

1. The person who intends to appear remotely is (check and complete all that apply):

   ☐ Plaintiff/Petitioner (name):

   ☒ Attorney for Plaintiff/Petitioner (name): Denise Surrette

   ☐ Defendant/Respondent (name):

   ☐ Attorney for Defendant/Respondent (name):

   ☐ Other (name and role in case):

2. The person or persons in 1 intends to appear remotely (check one):

   a. ☒ Throughout the case.

   b. ☐ At the proceeding described below, including on any later dates if the proceeding is continued (describe):

   Type of proceeding:

   Set on (date): August 22     at (time): 10:30am     in (department): 22

   Before (name of judicial officer, if known): Honorable Laurie A. Damrell

3. The person intends to appear by (check court's website for method that may be used):

   ☒ Videoconference     ☐ Audio only (including telephone)

4. ☐ For evidentiary hearing or trial only (where testimony may be given): the party requests the following additional aspects of the proceeding be conducted remotely (describe what the party wants to be done remotely and why; attach form MC-25 if more space is needed):

Form Adopted for Mandatory Use
Judicial Council of California
RA-010 [New January 1, 2022]

**NOTICE OF REMOTE APPEARANCE**

Code of Civil Procedure, § 367.75;
Cal. Rules of Court, rule 3.672
www.courts.ca.gov

RA-010

| PLAINTIFF: | CASE NUMBER: |
|---|---|
| DEFENDANT: | |

5. [×] I agree to keep the proceeding confidential to the same extent as would be required if I were appearing in person.

Date:

David J. Wool

> _____

(TYPE OR PRINT NAME)                                                 (SIGNATURE)

## Notice to Other Parties

Anyone intending to appear remotely must provide notice to all other parties by the deadlines stated in Cal. Rules of Court, rule 3.672, and described on the next page. Notice may be provided orally, electronically, or by giving the other parties this form in a way to ensure it is received by the applicable deadline. The party must tell the court this was done either by filing a proof of service (this may be done on forms POS-040 or POS-050 for electronic service) or by completing and signing the declaration below.

## Declaration of Notice

I gave notice that I intend to appear remotely to the other parties or persons entitled to receive notice in this case as stated below.

*Complete one item below for each person notice was given to, and enter one of the following options for "Method of notice" in c.*

- **Mail**: By mailing them a copy of this form (write the mailing address in d.)
- **Overnight delivery**: By having a copy of this form delivered overnight (write the delivery address in d.)
- **Electronic notice**: By e-mail or text message (write the e-mail or phone number in d.)
- **Phone**: By telling them over the telephone or leaving them voice mail (write the phone number in d.), or
- **In person**: By giving them a copy of this form in person, or by telling them orally in person (write the address in d.)

1. [ ] Plaintiff/Petitioner
   a. Name:
   b. Date of notice:
   c. Method of notice:
   d. Address (mailing, in-person, or email) or phone number:

2. [×] Attorney for: Defendants
   a. Name: Alicia Donahue
   b. Date of notice: August 20, 2025
   c. Method of notice: Email
   d. Address (mailing, in-person, or email) or phone number: ADONAHUE@shb.com

3. [ ] Defendant/Respondent
   a. Name:
   b. Date of notice:
   c. Method of notice:
   d. Address (mailing, in-person, or email) or phone number:

4. [×] Attorney for: Defendants
   a. Name: Kara Flageollet
   b. Date of notice: August 20, 2025
   c. Method of notice: email
   d. Address (mailing, in-person, or email) phone number: kflageollet@shb.com

5. [ ] Other *(specify)*:
   a. Name:
   b. Date of notice:
   c. Method of notice:
   d. Address (mailing, in-person, or email) or phone number:

6. [×] Attorney for: Defendants
   a. Name: Mayela Montenegro-Urch
   b. Date of notice: August 20, 2025
   c. Method of notice: email
   d. Address (mailing, in-person, or email) phone number: MMONTENEGRO@shb.com

7. [ ] Other *(specify)*:
   a. Name:
   b. Date of notice:
   c. Method of notice:
   d. Address (mailing, in-person, or email) or phone number:

7. [ ] Other *(specify)*:
   a. Name:
   b. Date of notice:
   c. Method of notice:
   d. Address (mailing, in-person, or email) or phone number:

[ ] If more people were given notice, check here, attach form MC-025, titled as Attachment Notice, and add the information about how and when notice was given to each person.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Date:

David Wool

> _____

(TYPE OR PRINT NAME)                                                 (SIGNATURE)

RA-010

## Instructions for Giving Notice of Remote Appearance
(This page does not need to be filed.)

**1. Court online procedures**. Before using this form, check the court's website to see if that court has an online procedure for providing notice to the court of your intent to appear remotely instead. You can find a link to the website for each court at: *https://www.courts.ca.gov/find-my-court.htm*

**2. How to use this form**. This form is intended for use in civil cases only (any cases not criminal or petitions for habeas corpus, other than petitions under Welf. & Inst. Code, § 5000 et seq.), to provide written notice of intent to appear remotely, to a court and the parties, as described in Code of Civil Procedure section 367.75. It is not needed in juvenile dependency hearings.

**Check the court's website to determine how remote appearances work in that court before completing this form.** If the court does not have an online procedure for giving notice to the court of intent to appear remotely, complete and file this form to give the court notice. If you intend to appear remotely throughout the case, you only need to file it once (check item 2a).

**3. Notice to others**. You may also use this form to show that you gave notice to other parties. You must give notice of your intent to appear remotely to all parties and other persons who are entitled to notice of the proceeding. (If you checked item 2a, you only need to give notice once. Otherwise, give notice to the court and others before each proceeding you intend to appear at remotely.) You can describe how and when you gave notice in the Declaration of Notice on page 2, or by filing a proof of service with the court.

**4. When to file and give notice to others.**

California Rules of Court, rule 3.672(g) and (h) state the deadlines by which you have to give notice of intent to appear remotely to the other parties and the court. (You can give notice earlier.) There are different deadlines :

### For motions and proceedings in which people cannot testify

If a party gives or receives *at least 3 court days' notice* of the proceeding (including all regularly noticed motions):
- At least 2 court days before the proceeding.

If a party gives or receives *less than 3 court days' notice* of the proceeding (including ex parte applications):
- With the moving papers, if the notice to appear remotely is by the party that is asking for the hearing; or
- By 2 p.m. the court day before the hearing if the notice to appear remotely is by any other party.

*Note:* If a party misses these deadlines, they may still ask the court for permission to appear remotely.

### For trials, including small claims trials, and hearings in which people may testify (evidentiary hearings)

If a party gives or receives *at least 15 court days' notice* of a trial or hearing date, and for all small claims trials:
- At least 10 court days before the trial or hearing date.

If a party gives or receives *less than 15 days' notice* of the trial or hearing (including hearings on protective orders):
- With the moving papers or at least 5 court days before the hearing, if the notice to appear remotely is by the party that is asking for the hearing; or
- By 2 p.m. the court day before the hearing if the notice to appear remotely is by any other party.

*Note:* If a party misses these deadlines, they may still ask thecourt for permission to appear remotely.

**5. Opposition to remote appearances at trial or evidentiary hearing**. If a party or witness has given notice of intent to appear remotely at a trial or evidentiary hearing (hearing at which people may testify), other parties in the action may oppose the remote appearance by filing *Opposition to Remote Proceeding at Evidentiary Hearing or Trial* (form RA-015). The opposition must be served on parties and other persons entitled to receive notice of the proceedings, by the deadlines summarized on that form. (Cal. Rules of Court, rule 3.672(h)(3).)

**6. In-person appearance.** A court may require any person to appear in person instead of remotely. (Code Civ. Proc., § 367.75(b).)

**7. Recordings.** No person may record a proceeding without first getting approval from the judge. (Cal. Rules of Court, rule 1.150(c).)

**8. Accommodations for disability**. If a party needs an accommodation for a disability, use form MC-410, *Disability Accommodations Request,* to tell the court about their needs. See form MC-410-INFO for more information.

**9. Request for interpreter.** If a party do does not speak English well, ask the court clerk as soon as possible for a court-provided interpreter. Form INT-300, *Request for an Interpreter,* or a local court form may be used to request an interpreter. If no court interpreter is available, it may be necessary to reschedule the hearing or trial.

**NOTICE OF REMOTE APPEARANCE**

For your protection and privacy, please press the Clear This Form button after you have printed the form.        | Print this form |   | Save this form |        | Clear this form |

CM-015

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address):* | FOR COURT USE ONLY |
|---|---|

ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address):*
David J. Wool (SBN 324123)
Wool Trial Law, LLC
1001 N. Bannock St., Ste. 410
Denver, CO 80204

TELEPHONE NO.: 720-509-9101    FAX NO. *(Optional):*
EMAIL ADDRESS *(Optional):* david@wooltriallaw.com
ATTORNEY FOR *(Name):* Plaintiff Denise Surette

**FOR COURT USE ONLY**

**ELECTRONICALLY FILED**
Superior Court of California
County of Sacramento
10/14/2025
By: _____ E. Leon Barrientos _____ Deputy

SUPERIOR COURT OF CALIFORNIA, COUNTY OF SACRAMENTO
STREET ADDRESS: 720 9th Street
MAILING ADDRESS: 720 9th Street
CITY AND ZIP CODE: Sacramento 95814
BRANCH NAME: Gordon D. Schaber Sacramento County Courthouse

PLAINTIFF/PETITIONER: Denise Surette

DEFENDANT/RESPONDENT: Monsanto Company, et al.

**NOTICE OF RELATED CASE**

| CASE NUMBER: 25CV014052 |
|---|
| JUDICIAL OFFICER: Hon. Lauri A. Damrell |
| DEPT.: 22 |

*Identify, in chronological order according to date of filing, all cases related to the case referenced above.*

1. a. Title: Leslie Carroll-Tipton v. Monsanto Company, et al.
   b. Case number: 25CV019420
   c. Court: [x] same as above
      [ ] other state or federal court *(name and address):*
   d. Department: 25
   e. Case type: [ ] limited civil [x] unlimited civil [ ] probate [ ] family law [ ] other *(specify):*
   f. Filing date: 8/14/2025
   g. Has this case been designated or determined as "complex?" [ ] Yes [x] No
   h. Relationship of this case to the case referenced above *(check all that apply):*
      [x] involves the same parties and is based on the same or similar claims.
      [ ] arises from the same or substantially identical transactions, incidents, or events requiring the determination of the same or substantially identical questions of law or fact.
      [ ] involves claims against, title to, possession of, or damages to the same property.
      [x] is likely for other reasons to require substantial duplication of judicial resources if heard by different judges.
         [ ] Additional explanation is attached in attachment 1h
   i. Status of case:
      [x] pending
      [ ] dismissed [ ] with [ ] without prejudice
      [ ] disposed of by judgment

2. a. Title:
   b. Case number:
   c. Court: [ ] same as above
      [ ] other state or federal court *(name and address):*
   d. Department:

Page 1 of 3

Form Approved for Optional Use
Judicial Council of California
CM-015 [Rev. July 1, 2007]

**NOTICE OF RELATED CASE**

Cal. Rules of Court, rule 3.300
*www.courts.ca.gov*

CM-015

| PLAINTIFF/PETITIONER: Denise Surette | CASE NUMBER: |
|---|---|
| DEFENDANT/RESPONDENT: Monsanto Company, et al. | 25CV014052 |

2. *(continued)*

  e. Case type: ☐ limited civil ☐ unlimited civil ☐ probate ☐ family law ☐ other *(specify):*

  f. Filing date:

  g. Has this case been designated or determined as "complex?" ☐ Yes ☐ No

  h. Relationship of this case to the case referenced above *(check all that apply):*

    ☐ involves the same parties and is based on the same or similar claims.

    ☐ arises from the same or substantially identical transactions, incidents, or events requiring the determination of the same or substantially identical questions of law or fact.

    ☐ involves claims against, title to, possession of, or damages to the same property.

    ☐ is likely for other reasons to require substantial duplication of judicial resources if heard by different judges.

      ☐ Additional explanation is attached in attachment 2h

  i. Status of case:

    ☐ pending

    ☐ dismissed ☐ with ☐ without prejudice

    ☐ disposed of by judgment

3. a. Title:

  b. Case number:

  c. Court: ☐ same as above

    ☐ other state or federal court *(name and address):*

  d. Department:

  e. Case type: ☐ limited civil ☐ unlimited civil ☐ probate ☐ family law ☐ other *(specify):*

  f. Filing date:

  g. Has this case been designated or determined as "complex?" ☐ Yes ☐ No

  h. Relationship of this case to the case referenced above *(check all that apply):*

    ☐ involves the same parties and is based on the same or similar claims.

    ☐ arises from the same or substantially identical transactions, incidents, or events requiring the determination of the same or substantially identical questions of law or fact.

    ☐ involves claims against, title to, possession of, or damages to the same property.

    ☐ is likely for other reasons to require substantial duplication of judicial resources if heard by different judges.

      ☐ Additional explanation is attached in attachment 3h

  i. Status of case:

    ☐ pending

    ☐ dismissed ☐ with ☐ without prejudice

    ☐ disposed of by judgment

4. ☐ Additional related cases are described in Attachment 4. Number of pages attached: _____

Date: October 14, 2025

David J. Wool

    (TYPE OR PRINT NAME OF PARTY OR ATTORNEY)       ▶       (SIGNATURE OF PARTY OR ATTORNEY)

CM-015

| PLAINTIFF/PETITIONER: Denise Surette | CASE NUMBER: |
|---|---|
| DEFENDANT/RESPONDENT: Monsanto Company, et al. | 25CV014052 |

### PROOF OF SERVICE BY FIRST-CLASS MAIL
### NOTICE OF RELATED CASE

*(NOTE: You cannot serve the Notice of Related Case if you are a party in the action. The person who served the notice must complete this proof of service. The notice must be served on all known parties in each related action or proceeding.)*

1. I am at least 18 years old and **not a party to this action.** I am a resident of or employed in the county where the mailing took place, and my residence or business address is *(specify):*

2. I served a copy of the *Notice of Related Case* by enclosing it in a sealed envelope with first-class postage fully prepaid and *(check one):*  SEE ATTACHED PROOF OF SERVICE

   a. ☐ deposited the sealed envelope with the United States Postal Service.

   b. ☐ placed the sealed envelope for collection and processing for mailing, following this business's usual practices, with which I am readily familiar. On the same day correspondence is placed for collection and mailing, it is deposited in the ordinary course of business with the United States Postal Service.

3. The *Notice of Related Case* was mailed:

   a. on *(date):*

   b. from *(city and state):*

4. The envelope was addressed and mailed as follows:

   a. Name of person served:          SEE ATTACHED SERVICE LIST      c. Name of person served:
      Street address:                                                  Street address:
      City:                                                            City:
      State and zip code:                                              State and zip code:

   b. Name of person served:                                         d. Name of person served:
      Street address:                                                  Street address:
      City:                                                            City:
      State and zip code:                                              State and zip code:

   ☐ Names and addresses of additional persons served are attached. *(You may use form POS-030(P).)*

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Date: October 14, 2025

David J. Wool
_____(TYPE OR PRINT NAME OF DECLARANT)_____        _____(SIGNATURE OF DECLARANT)_____

CM-015 [Rev. July 1, 2007]        **NOTICE OF RELATED CASE**        Page 3 of 3

**PROOF OF SERVICE**
Code Civ. Proc. § 1013a(3)

I am employed in the County of Denver, State of Colorado. I am over the age of 18 and not a party to the within action. My business address is 1001 Bannock St. Suite 410, Denver CO.

On October 14, 2025, I served the foregoing document described as **NOTICE OF RELATED CASE,** on the interested parties, as follows:

( )    BY MAIL:  I am "readily familiar" with the firm's practice of collection and processing mail.  Under that practice, it would be deposited with the U.S. Postal Service on that same day with postage thereon fully prepaid at Tustin, California in the ordinary course of business.  I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

( )    BY FACSIMILE:  I transmitted a true copy from facsimile number (714) 953-1777 to the facsimile numbers listed on the attached service list. Upon completion of transmission there were no errors reported.

(X)    BY **ELECTRONIC TRANSMISSION**:  I transmitted a true copy via electronic mail to the following counsel of record for Defendants:

Alicia J. Donahue
Kara M. Flageollet
SHOOK HARDY & BACON LLP
555 Mission Street, Suite 2300
San Francisco, CA 94105
Tel: 415-544-1900
adonahue@shb.com
kflageollet@shb.com

Mayela C. Montenegro-Urch
SHOOK HARDY & BACON LLP
Jamboree Center
5 Park Plaza, Suite 1600
Irvine, CA 92614
mmontenegro@shb.com

*Attorneys for Defendants Monsanto Company, Bayer CropScience LP, and Wilbur-Ellis Company, LLC*

( )    BY NEXT-DAY DELIVERY:  Causing overnight delivery of the document(s) listed herein via ONTRAC OVERNIGHT, to the address (es) set forth on the attached service list.

Executed on October 14, 2025, at Denver, Colorado.  I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

*/s/ Alana Johnson*
Alana Johnson

| | |
|---|---|
| **SUPERIOR COURT OF CALIFORNIA**<br>**COUNTY OF SACRAMENTO** | Court Use Only |
| COURTHOUSE ADDRESS:<br>Gordon D. Schaber Superior Court<br>720 Ninth Street, Sacramento, CA 95814 | **FILED**<br>Superior Court of California<br>County of Sacramento<br>06/24/2025<br>V. Aleman, Deputy |
| PLAINTIFF/PETITIONER:<br>DENISE SURETTE | |
| DEFENDANT/RESPONDENT:<br>MONSANTO COMPANY et al | |
| **NOTICE OF CASE MANAGEMENT CONFERENCE AND ORDERS**<br>**RE: COMPLEX CASE MANAGEMENT PROCEDURES**<br><br>Complex Civil Dept.: **22**<br>Judge: **Lauri A. Damrell** | CASE NUMBER:<br>25CV014052 |

**THIS NOTICE SHALL BE SERVED BY PLAINTIFF'S COUNSEL ON ALL OTHER PARTIES. ANY PARTY WHO HEREAFTER SERVES SUMMONS IN THIS ACTION UPON A NEW PARTY SHALL SERVE A COPY OF THIS NOTICE AND THE COURT'S CURRENT STANDING ORDERS ON THE NEW PARTY ALONG WITH THE SUMMONS AND COMPLAINT OR CROSS-COMPLAINT.**

      1.      Pursuant to the Presiding Judge's Notice and Order of Complex Case Determination, the above-referenced case has been designated as complex as defined by California Rule of Court 3.400, assigned to this department for complex case management, and pre-assigned to this department for trial.  This is an *all-purpose* assignment under California Rule of Court 3.734, such that law and motion matters, motions for consolidation, severance, bifurcation, intervention and to continue trial shall be heard in this department unless otherwise directed by this Court.  Other motions referenced in Local Rule 1.05 shall also be heard in this department.

      2.  The Court orders all parties to appear for a **Case Management Conference** on **08/22/2025**, at **10:30 AM** in **Dept 22**.

      **Please check the Tentative Ruling in the case on the public portal prior to the above hearing date to confirm appearances and/or any updates (including updates to the hearing date/time).**

| SHORT TITLE: SURETTE vs MONSANTO COMPANY, et al. | CASE NUMBER: 25CV014052 |
|---|---|

Effective January 3, 2022, civil hearings are open for in-person appearances.

**However, the Court will continue to allow and strongly encourages all parties to appear remotely whenever possible, subject to Code of Civil Procedure § 367.75. Additional information can be found at:**

https://www.saccourt.ca.gov/civil/docs/pn-civil-remote-and-in-person-proceedings-effective-monday-january-3-2022.pdf

To join by Zoom link - https://saccourt-ca-gov.zoomgov.com/my/sscdept22

To join by phone dial (833) 568-8864 / ID: 16184738886

3.      **The Complex Civil Case Department provides information to assist you in managing your complex case on the Court website at https://www.saccourt.ca.gov/civil/complex-civil-cases.aspx. This includes the Department's most current standing orders. The parties shall review this website regularly to stay abreast of the most recent complex civil case procedures and standing orders. Please refer to the website before directly contacting the Court Clerk for information.**

**IT IS SO ORDERED.**

Dated: 06/24/2025

By: _Lauri A. Damrell, Judge_

JUDGE OF THE SUPERIOR COURT

| SUPERIOR COURT OF CALIFORNIA COUNTY OF SACRAMENTO | Reserved for Clerk's File Stamp |
|---|---|
| COURTHOUSE ADDRESS: Gordon D. Schaber Superior Court 720 Ninth Street, Sacramento, CA 95814 | |
| PLAINTIFF/PETITIONER: DENISE SURETTE | |
| DEFENDANT/RESPONDENT: MONSANTO COMPANY et al | |
| CERTIFICATE OF MAILING | CASE NUMBER: 25CV014052 |

**I, the below-named Executive Officer/Clerk of the above-entitled court, do hereby certify that I am not a party to the cause herein, and that on this date I served the Notice of CMC and Orders Re Complex Case Management Procedures D.22 upon each party or counsel named below by placing the document for collection and mailing so as to cause it to be deposited in the United States mail at the courthouse in Sacramento, California, one copy of the original filed/entered herein in a separate sealed envelope to each address as shown below with the postage thereon fully prepaid, in accordance with standard court practices.**

David J. Wool
1001 N. Bannock St Suite 410
Denver, CO 80204

Dated: 06/24/2025          By:        /s/ V. Aleman

V. Aleman, Deputy Clerk

**CERTIFICATE OF MAILING**

# SUPERIOR COURT OF CALIFORNIA, COUNTY OF SACRAMENTO
### Gordon D. Schaber Superior Court, Department 31

## JUDICIAL OFFICER: HONORABLE STEVEN M. GEVERCER

Courtroom Clerk: L.Chen-Knapp                                        CSR: None

---

**25CV014052**                                                      June 23, 2025
                                                                    12:22 PM

**SURETTE**
  **vs**
**MONSANTO COMPANY, et al.**

---

## MINUTES

**APPEARANCES:**

No Appearances

**NATURE OF PROCEEDINGS: Complex Determination**

COMPLEX DETERMINATION

Having reviewed and considered the pleadings on file, the Court designates this case as complex pursuant to Rule 3.400 et seq. of the California Rules of Court. Counsel are advised to be familiar with the Sacramento County Local Rules concerning complex litigation.

COMPLEX CASE FEES

Pursuant to Government Code section 70616, any non-exempt party who has appeared in the action but has not paid the complex case fee is required to pay the fee within ten (10) calendar days of the filing of this order. The complex case fee is $1,000 for each plaintiff or group of plaintiffs appearing together and $1,000 PER PARTY for each defendant, intervenor, respondent or other adverse party, whether filing separately or jointly, up to a maximum of $18,000 for all adverse parties. All payments must identify on whose behalf the fee is submitted. Payment may be submitted by mail or placed in one of the Civil Drop Boxes located in Room 102 of the Gordon D. Schaber Courthouse at 720 9th Street, Sacramento, CA 95814. Please make checks payable to the Clerk of the Superior Court.

Failure to pay the required fees shall have the same effect as the failure to pay a filing fee, and shall be subject to the same enforcement and penalties (Cal. Gov. Code § 70616(g)).

SERVICE OF THIS ORDER

The plaintiff is directed to serve all other parties with a copy of this order.

**This action involves or is likely to involve**: Insurance coverage claims arising out of any of the claims listed above.

# SUPERIOR COURT OF CALIFORNIA, COUNTY OF SACRAMENTO

Numerous pretrial motions raising difficult or novel legal issues that will be time-consuming to resolve.

Management of a large number of witnesses or a substantial amount of documentary evidence.

Coordination with related actions pending in one or more courts in other counties, states, or countries, or in a federal court.

The case is ordered reassigned to Judge Lauri A. Damrell in Department 22 at the Gordon D. Schaber Superior Court for all further proceedings and for all purposes.

Any previously calendared hearings in departments other than the newly assigned courtroom are advanced to this date and vacated.

Certificate of Mailing is attached.

By:                        */s/ L. Chen-Knapp*
L. Chen-Knapp, Deputy Clerk

Minutes of: 06/23/2025
Entered on: 06/23/2025

---

| **SUPERIOR COURT OF CALIFORNIA**<br>**COUNTY OF SACRAMENTO** | Reserved for Clerk's File Stamp |
|---|---|
| COURTHOUSE ADDRESS:<br>Gordon D. Schaber Superior Court<br>720 Ninth Street, Sacramento, CA 95814 | |
| PLAINTIFF/PETITIONER:<br>DENISE SURETTE | |
| DEFENDANT/RESPONDENT:<br>MONSANTO COMPANY et al | |
| **CERTIFICATE OF MAILING** | CASE NUMBER:<br>25CV014052 |

**I, the below-named Executive Officer/Clerk of the above-entitled court, do hereby certify that I am not a party to the cause herein, and that on this date I served the Minute Order (Complex Determination) upon each party or counsel named below by placing the document for collection and mailing so as to cause it to be deposited in the United States mail at the courthouse in Sacramento, California, one copy of the original filed/entered herein in a separate sealed envelope to each address as shown below with the postage thereon fully prepaid, in accordance with standard court practices.**

David J. Wool
1001 N. Bannock St Suite 410
Denver, CO 80204

Dated: 06/23/2025                    By:            */s/ L. Chen-Knapp*
                                              L. Chen-Knapp, Deputy Clerk

**CERTIFICATE OF MAILING**

# SUPERIOR COURT OF CALIFORNIA, COUNTY OF SACRAMENTO
Gordon D. Schaber Superior Court, Department 22

## JUDICIAL OFFICER: HONORABLE LAURI A. DAMRELL

Courtroom Clerk: V. Aleman                                    CSR: None
Court Attendant: R. Udell & D. Eby

---

**25CV014052**                                          August 22, 2025
                                                          10:30 AM

**SURETTE**
 **vs**
**MONSANTO COMPANY, et al.**

---

### MINUTES

**APPEARANCES:**

No Appearances

**NATURE OF PROCEEDINGS: Case Management Conference**

**COURT RULING:**
There being no request for oral argument the Court affirmed the tentative ruling.


**TENTATIVE RULING:**

The parties failed to file a Joint Case Management Statement as ordered. The Court will continue the CMC to allow the parties to do so. The Joint Statement shall be filed at least 7 days before the CMC. Please be advised that future failures to comply with Court orders could result in the imposition of sanctions under CCP 177.5.

FURTHER CONFERENCE
A Case Management Conference is scheduled for 09/05/2025 at 10:30 AM in Department 22.


                                            /s/ V. Aleman

                                            V. Aleman, Deputy Clerk
                        By:
                                            Minutes of: 08/22/2025
                                            Entered on: 08/22/2025

| SUPERIOR COURT OF CALIFORNIA<br>COUNTY OF SACRAMENTO | Court Use Only |
|---|---|
| COURTHOUSE ADDRESS:<br>Gordon D. Schaber Superior Court<br>720 9th Street, Sacramento, CA 95814 | |
| PLAINTIFF/PETITIONER:<br>DENISE SURETTE | |
| DEFENDANT/RESPONDENT:<br>MONSANTO COMPANY et al | |
| **NOTICE OF CASE ASSIGNMENT**<br>**AND CASE MANAGEMENT CONFERENCE**<br>**(UNLIMITED CIVIL CASE)** | CASE NUMBER:<br>25CV014052 |

**THIS NOTICE SHALL BE SERVED BY PLAINTIFF'S COUNSEL ON ALL OTHER PARTIES. ANY PARTY WHO HEREAFTER SERVES SUMMONS IN THIS ACTION UPON A NEW PARTY SHALL SERVE A COPY OF THIS NOTICE ON THE NEW PARTY ALONG WITH THE SUMMONS AND COMPLAINT OR CROSS-COMPLAINT.**

<u>**NOTICE OF CASE ASSIGNMENT**</u>

Pursuant to rule 3.734 of the California Rules of Court, this action is hereby assigned for limited purposes to the departments indicated below:

| PURPOSE | DEPARTMENT | COURT LOCATION |
|---|---|---|
| **LAW & MOTION** | 53 | Hall of Justice |
| **CASE MANAGEMENT PROGRAM** | 25 | Gordon D. Schaber Superior Court |

Please refer to Chapter Two – Parts 3 and 4 of the Sacramento Superior Court Local Rules and the Court's website for additional filing instructions and information about hearing reservations, tentative rulings, and requesting oral argument.

<u>**NOTICE OF CASE MANAGEMENT CONFERENCE**</u>

**Hearing Date**

The above entitled action has been set for a case management conference at **8:30 AM** on **June 26, 2026** in **Department 25** in accordance with California Rules of Court 3.722. You must be familiar with the case and fully prepared to participate effectively in the case management conference.

**Case Management Statement**

All parties must file and serve a case management statement at least 15 calendar days before the case management conference. Parties are encouraged to file a single joint case management statement.

**Tentative Ruling / Confirming Appearance at the Hearing**

The Court will issue a tentative ruling not later than 2:00 p.m. of the court day before the hearing date which may be viewed by logging into the court's online public portal and accessing your case.

<u>Unless an appearance is ordered in the court's tentative ruling, parties do not need to appear at the hearing.</u> A party requesting appearance to contest a tentative ruling must advise the department clerk and the opposing party no later than 4:00 p.m. on the court day before the hearing.

**NOTICE OF CASE ASSIGNMENT**
**AND CASE MANAGEMENT CONFERENCE**
**(UNLIMITED CIVIL CASE)**

| SHORT TITLE: SURETTE vs MONSANTO COMPANY, et al. | CASE NUMBER: 25CV014052 |
|---|---|

| **Remote Appearances** | Unless ordered to appear in person by the court, parties may appear remotely either telephonically or by video conference via the Zoom video/audio conference platform with notice to the court and all other parties in accordance with Code of Civil Procedure 367.75. If appearing remotely, parties are required to participate in their hearing using a device that has video and/or audio capability (i.e. computer, smartphone, or tablet). Although remote participation is not required, the court will presume all parties are appearing remotely for non-evidentiary civil hearings. |
|---|---|
| **Minimum Requirements** | Prior to the filing of the case management statement, the parties should have done the following:<br><br>• Served all parties named in the complaint within 60 days after the summons has been issued<br>• Ensured that all defendants and cross-defendants have answered, been dismissed, or had their defaults entered |
| **Certification Filed in Lieu of Case Management Statement** | If parties in the action file a certification on a form provided by the court at least 15 calendar days prior to the date of the case management conference that the case is short cause (five hours or less of trial time), that the pleading stage is complete and that the case will be ready for trial within 60 days, the case will be exempted from any further case management requirements and will be set for trial within 60-120 days. The certification shall be filed in lieu of a case management statement. |
| **Case Management Orders** | At the case management conference, the court will consider whether the case should be ordered to judicial arbitration or referred to other forms of Alternative Dispute Resolution. Whether or not a case management conference is held, the court will issue a case management order shortly after the scheduled conference date. |
| **Compliance** | Failure to comply with this notice or to appear at the case management conference may result in the imposition of sanctions (including dismissal of the case, striking of the answer, or payment of money). |
| **Continuances** | Case management conference(s) will not be continued except on a showing of good cause. If your case management conference is continued on motion or by the court on its own motion all parties shall file and serve a new case management statement at least 15 calendar days before the continued case management conference. |

Dated: 06/13/2025                    By:

/s/ T. Dyer
T. Dyer, Deputy Clerk

**NOTICE OF CASE ASSIGNMENT
AND CASE MANAGEMENT CONFERENCE
(UNLIMITED CIVIL CASE)**

# SUPERIOR COURT OF CALIFORNIA, COUNTY OF SACRAMENTO
## Gordon D. Schaber Superior Court, Department 22

## JUDICIAL OFFICER: HONORABLE LAURI A. DAMRELL

Courtroom Clerk: V. Aleman                              CSR: NONE
Court Attendant: J. Flores

---

**25CV014052**                                    September 5, 2025
                                                         10:30 AM

**SURETTE**
  **vs**
**MONSANTO COMPANY, et al.**

---

## MINUTES

**APPEARANCES:**

Plaintiff DENISE SURETTE represented by David J. Wool via virtual conference.
Defendant MONSANTO COMPANY represented by Alicia Jane Donahue Special Appearing
Mayela Montenegro-Urch via virtual conference.
Defendant BAYER CROPSCIENCE LP represented by Alicia Jane Donahue Special Appearing
Mayela Montenegro-Urch via virtual conference.
Defendant WILBUR-ELLIS COMPANY, LLC represented by Alicia Jane Donahue Special
Appearing Mayela Montenegro-Urch via virtual conference.

**NATURE OF PROCEEDINGS: Case Management Conference**

**COURT RULING:**
The above-referenced counsel appeared on behalf of the parties. Counsel reported that discovery
is ongoing.

A jury trial (15-20 court days) is scheduled for **April 12, 2027 at 9:00 a.m.**

The Court sets a further Case Management Conference for **November 14, 2025 at 10:30 a.m.** in
this department. The parties shall file a Joint Case Management Statement and Proposed Case
Management Order at least 15 days before the CMC.

For the CMO, the Court strongly encourages the parties to include at least the following:
- Mediation deadline
  - Note that Court is not setting Mandatory Settlement Conferences in the Roundup cases at
    this time given the nature and history of these cases. However, if the parties believe that
    an MSC would be useful, either in the Court's settlement conference department or in this
    department (with the parties' stipulation), they may ask that the Court schedule an MSC.
- Deadline for close of fact discovery
- Expert disclosure deadlines
- A proposed MSJ/MSA hearing date (Friday at 9:00 a.m.) and deadlines for filing motion,
  opposition and reply

# SUPERIOR COURT OF CALIFORNIA, COUNTY OF SACRAMENTO

- A hearing date about one month before trial, to occur on a Friday at 1:30 p.m., to address the parties' motions in limine, Sargon motions, and any other trial-related motions. If the parties anticipate needing more than 3 hours for these motions, the parties may propose a hearing to be scheduled Monday through Thursday at 9:00 a.m.
- Deadlines for filing trial briefs and the above-referenced motions, oppositions, and reply briefs (no replies for motions in limine)
- A Pre-Trial Conference about 10 days before trial, also to occur on a Friday at 1:30 p.m.
  - At least two days before the Pre-Trial Conference, the following documents shall be emailed to Dept22@saccourt.ca.gov.
    - Joint jury instructions and verdict form(s) in **Word** format. If there is any disputed language, the parties shall provide one redlined version that reflects the differences between the parties' proposals. ***Do not provide two separate documents.***
    - Joint exhibit list in **Word** format. Please describe each exhibit objectively and place the date of the exhibit (if applicable) within the description as well as the number of pages. Please do not reserve numbers as "blank," as it makes it confusing when exhibits are marked during trial. Each original exhibit must be labeled with a sticker that includes both the exhibit number and case number.
    - Joint statement of the case, if the parties are requesting that one be read to the jury. The parties may alternatively (or in addition) request to give mini-opening statements (2 minutes max) before voir dire.
    - Joint witness list with time estimates for direct and cross examination. This is to ensure the trial schedule is as accurate as possible. The Court will hold the parties to their estimates absent exceptional circumstances.
    - Any stipulations regarding facts or admissibility reached between the parties.
    - Joint proposed juror questionnaire, if requested (note that the Court may exercise its discretion to deny the use of a juror questionnaire).
  - At the Pre-Trial Conference, the parties shall be prepared to address the issues above, as well as the following:
    - Any anticipated scheduling issues or conflicts. (Please note that this department is dark for trial on Fridays for the Court's law and motion and case management conference calendars.)
    - Any other legal or evidentiary issues not otherwise addressed in motions that should be resolved before trial
    - Any special technical requirements the parties may require
    - Whether any interpreters will be needed
    - Whether jury fees will be split between the parties, and if not, which party will be paying

On the Court's own motion, the Case Management Conference scheduled for 09/05/2025 is continued to 11/14/2025 at 10:30 AM in Department 22 at Gordon D. Schaber Superior Court.

Jury Trial (DAY 01) is scheduled for 04/12/2027 at 09:00 AM in Department 22 at Gordon D. Schaber Superior Court.

# SUPERIOR COURT OF CALIFORNIA, COUNTY OF SACRAMENTO

**TENTATIVE RULING:**

The Court has read and considered the Joint Case Management Statement filed by the parties and now issues the following tentative ruling:

**APPEARANCE REQUIRED. The parties shall be prepared to address the issues raised in the Joint Statement.**

*Parties requesting services of a court reporter will need to arrange for private court reporter services at their own expense, pursuant to Government code §68086 and California Rules of Court, Rule 2.956.*

*Requirements for requesting a court reporter are listed in the **Policy for Official Reporter Pro Tempore** available on the Sacramento Superior Court website at https://www.saccourt.ca.gov/court-reporters/docs/crtrp-6a.pdf. Parties may contact Court-Approved Official Reporters Pro Tempore by utilizing the list of Court Approved Official Reporters Pro Tempore available at https://www.saccourt.ca.gov/court-reporters/docs/crtrp-13.Pdf*

*A **Stipulation and Appointment of Official Reporter Pro Tempore** (CV/E-206) is required to be signed by each party, the private court reporter, and the Judge prior to the hearing, if not using a reporter from the Court's Approved Official Reporter Pro Tempore list, Once the form is signed it must be filed with the clerk.*

*If a litigant has been granted a fee waiver and requests a court reporter, the party must submit a **Request for Court Reporter by a Party with a Fee Waiver** (CV/E-211) and it must be filed with the clerk at least 10 days prior to the hearing or at the time the proceeding is scheduled if less than 10 days away. Once approved, the clerk will be forward the form to the Court Reporter's Office and an official reporter will be provided.*

***The parties are encouraged to attend via Zoom with the links below:***
*To join by Zoom link - https://saccourt-ca-gov.zoomgov.com/my/sscdept22*
*To join by phone dial (833) 568-8864 ID 16184738886*

***Please note that the Complex Civil Case Department now provides information to assist you in managing your complex case on the Court website at https://www.saccourt.ca.gov/civil/complex-civil-cases.aspx. The Court strongly encourages parties to review this website regularly to stay abreast of the most recent complex civil case procedures. Please refer to the website before directly contacting the Court Clerk for information.***

/s/ V. Aleman

V. Aleman, Deputy Clerk

By:

Minutes of: 09/05/2025

---

## SUPERIOR COURT OF CALIFORNIA, COUNTY OF SACRAMENTO

Entered on: 09/09/2025

# SUPERIOR COURT OF CALIFORNIA, COUNTY OF SACRAMENTO
Gordon D. Schaber Superior Court, Department 22

## JUDICIAL OFFICER: HONORABLE LAURI A. DAMRELL

Courtroom Clerk: V. Aleman                                    CSR: NONE
Court Attendant: D. Eby

---

**25CV014052**                                         November 14, 2025
                                                            10:30 AM
**SURETTE**
  **vs**
**MONSANTO COMPANY, et al.**

---

## MINUTES

**APPEARANCES:**

No Appearances

**NATURE OF PROCEEDINGS: Case Management Conference**

**COURT RULING:**
There being no request for oral argument the Court affirmed the tentative ruling.

**TENTATIVE RULING:**

**NO APPEARANCE REQUIRED.  The Court has adopted the parties' proposed case management order and sets a further CMC as set forth below.**

The parties shall file and email a Joint Case Management Statement to the department no later than 15 calendar days before the next CMC.

*Please check your tentative ruling before the next Court date at www.saccourt.ca.gov.*

*Please note that the Complex Civil Case Department now provides information to assist you in managing your complex case on the Court website at https://www.saccourt.ca.gov/civil/complex-civil-cases.aspx. The Court strongly encourages parties to review this website regularly to stay abreast of the most recent complex civil case procedures. Please refer to the website before directly contacting the Court Clerk for information.*

FURTHER CONFERENCE
A Case Management Conference is scheduled for 02/27/2026 at 10:30 AM in Department 22.

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF SACRAMENTO**

*/s/ V. Aleman*

V. Aleman, Deputy Clerk

By:

Minutes of: 11/14/2025
Entered on: 11/14/2025

1  Alicia J. Donahue (SBN: 117412)
   Kara M. Flageollet (SBN: 347646)
2  **SHOOK HARDY & BACON L.L.P.**
   555 Mission Street, Suite 2300
3  San Francisco, CA 94105
   Tel: (415) 544-1900 | Fax: (415) 391-0281
4  adonahue@shb.com
   kflageollet@shb.com
5
   *Attorneys for Defendants*
6
7  David J. Wool (SBN 324124)
   **Wool Trial Law, LLC**
8  1001 N. Bannock St., Suite 410
   Denver, CO 80204
9  Tel: (303) 376-6360
   david@wooltriallaw.com
10
   *Attorneys for Plaintiff*
11

ELECTRONICALLY FILED
Superior Court of California
County of Sacramento
08/28/2025
By: _____ Deputy
        A. Gray

12              **SUPERIOR COURT OF THE STATE OF CALIFORNIA**

13                      **COUNTY OF SACRAMENTO**

14

15  DENISE SURETTE, an individual;            Case No.: 25CV014052

16              Plaintiff,                    **JOINT CASE MANAGEMENT
                                              STATEMENT**
17          v.
                                             Date: September 5, 2025
18  MONSANTO COMPANY, a corporation;         Time: 10:30 a.m.
    BAYER CROPSCIENCE LP, INC.,              Dept: 22
19  WILBUR-ELLIS COMPANY, LLC; and           Judge: Hon. Lauri Damrell
    DOES 1 through 100,
20                                           Complaint Filed: June 17, 2025
                Defendants.
21

22          Plaintiff Denise Surette ("Plaintiff") and Defendants Monsanto Company, Bayer CropScience LP,

23  and Wilbur-Ellis Company, LLC ("Defendants") (collectively, the "Parties") hereby submit the

24  following Joint Statement in advance of the September 5, 2025 Case Management Conference.

25  **I.    CASE SUMMARY**

26          This is a complex product liability case brought on behalf of Plaintiff, who alleges that she was

27  exposed to Roundup®-branded herbicides. Plaintiff alleges that in connection with her exposure to

28  Roundup®, she contracted Non-Hodgkin's Lymphoma ("NHL") and sustained other physical, economic,

                                                1

and emotional injuries.

Plaintiff asserts various causes of action against Monsanto, including: (1) strict liability (design defect); (2) strict liability (failure to warn); and (3) negligence. Plaintiff further seeks general, compensatory and punitive damages. Defendants deny Plaintiff's allegations and denies any liability.

## I.    CURRENT STATUS OF THE CASE

This action is one of thousands of cases filed throughout California and the nation. In California, cases involving claims similar to the ones alleged herein regarding NHL caused by Plaintiff's use of Roundup were initially coordinated in a Judicial Council Coordinated Proceeding in Alameda County ("JCCP"). That proceeding is in the process of being disbanded and cases that were part of that proceeding are in the process of being remanded to their respective venues for further proceedings and trial. The instant action, however, was brought after the JCCP was no longer accepting new cases and was never part of the JCCP.

All parties in this action have been served and have answered, and the Parties do not anticipate the need to add any additional parties or amend the pleadings in the short term. The Parties reserve their rights to amend the pleadings in the future should the evidence adduced during the litigation make desirable or necessary.

The Parties have not set any settlement conferences or selected any alternative dispute resolution procedures at this time. The Parties have conducted limited written discovery but have not conducted depositions in this matter.

### A.    **<u>Discovery Plan</u>**

Monsanto needs time to collect medical records and other documents pursuant to the authorizations produced. Once Monsanto has collected those records, the Parties anticipate formulating a schedule for taking plaintiff's deposition, as well as other witnesses, including Plaintiff's oncologist(s), primary care physician(s), and other fact witnesses that will be disclosed through discovery. Simultaneously with that discovery, Plaintiff intends to take any additional written and/or deposition discovery of Monsanto, to the extent Plaintiff believes that is needed. Monsanto contends that no additional discovery to Monsanto is warranted. Subsequent to the completion of this fact discovery, the Parties anticipate an exchange of expert disclosures and the taking the depositions of their respective designated expert witnesses.

Plaintiff has agreed to produce a Plaintiff Fact Sheet, signed authorizations, and the medical records in her possession within sixty (60) days of filing of this case management conference statement.

**B.    <u>Discovery of Electronically Stored Information ("ESI")</u>**

The parties have discussed preservation and disclosure of electronically stored discovery information. The Parties propose using three procedural orders that closely track similar orders issued in other Roundup® lawsuits, including the Roundup JCCP 4953: (1) Protective and Confidentiality Order; (2) Order Governing Privilege Logs; and (3) Stipulation and Order Governing Protocol for Discovery of Electronically Stored Information. The Parties are in the process of conferring about those orders with the goal of submitting them to the Court as agreed proposed orders.

**C.    <u>Dispositive and Other Motions</u>**

Plaintiff brings these claims individually, and not as part of a putative class action. Thus, Plaintiff does not anticipate bringing a class certification motion.

The Parties anticipate that there will be *Sargon* motions as well as motions for summary judgment or summary adjudication on various topics brought after the close of expert discovery.

**D.    <u>Trial</u>**

The Parties anticipate trial lasting 15-20 court days. Given the complexity of this matter, Defendants will likely file over 15 motions in *limine* and *Sargon* motions.

Dated: August 28, 2025

By: */s/ David Wool*
David J. Wool (SBN 324124)
**Wool Trial Law, LLC**
1001 N. Bannock St., Suite 410
Denver, CO 80204
Tel: (303) 376-6360
david@wooltriallaw.com

*Attorneys for Plaintiff*
DENISE SURETTE

Dated: August 28, 2025

By: */Kara Flageollet*

Alicia J. Donahue
Kara Flageollet
SHOOK HARDY & BACON L.L.P.
*Attorneys for Defendant*
MONSANTO COMPANY

**PROOF OF SERVICE**

I am over the age of 18 years and not a party to the within action. I am employed in the county where this service occurs. My business address is 555 Mission Street, Suite 2300, San Francisco, CA 94105, my telephone number is (415) 544-1900. On the date shown below, I served the following document(s):

- **JOINT STATEMENT RE: FURTHER CASE MANAGEMENT CONFERENCE**

on the interested parties named herein and in the manner indicated below:

| Plaintiff Denise Surette | David J. Wool (SBN 324124) Alana Johnson **Wool Trial Law, LLC** 1001 N. Bannock St., Suite 410 Denver, CO 80204 Tel: (303) 376-6360 david@wooltriallaw.com alana@wooltriallaw.com |
|---|---|

☒    **VIA E-MAIL OR ELECTRONIC TRANSMISSION**: By causing the above document(s) to be sent at the e-mail addresses listed above. I did not receive, within a reasonable time after the transmission, any electronic message or other indication that the transmission was unsuccessful.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed on August 28, 2025, at San Francisco, California.



Elizabeth Erlich

4

CM-010

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address):* | FOR COURT USE ONLY |
|---|---|
| David J. Wool (SBN 324124)<br>Wool Trial Law, LLC, 1001 N. Bannock Street, Ste. 410, Denver, CO 80204<br><br>TELEPHONE NO.: 720-509-9101　　FAX NO. :<br>EMAIL ADDRESS:　david@wooltriallaw.com<br>ATTORNEY FOR *(Name):*　Plaintiff Denise Surette | **ELECTRONICALLY FILED**<br>Superior Court of California<br>County of Sacramento<br>06/13/2025<br>By: _____ T. Dyer _____ Deputy |

SUPERIOR COURT OF CALIFORNIA, COUNTY OF  SACRAMENTO
STREET ADDRESS: 720 9th Street
MAILING ADDRESS: 720 9th Street
CITY AND ZIP CODE: Sacramento, CA 95814
BRANCH NAME: Gordon D. Schaber Sacramento County Courthouse

CASE NAME:
Denise Surette v. Monsanto Company, et al.

| CIVIL CASE COVER SHEET | Complex Case Designation | CASE NUMBER: |
|---|---|---|
| [x] Unlimited (Amount demanded exceeds $35,000)　[ ] Limited (Amount demanded is $35,000 or less) | [ ] Counter　[ ] Joinder<br>Filed with first appearance by defendant<br>(Cal. Rules of Court, rule 3.402) | **25CV014052**<br>JUDGE:<br>DEPT.: |

*Items 1–6 below must be completed (see instructions on page 2).*

1. Check **one** box below for the case type that best describes this case:

**Auto Tort**
[ ] Auto (22)
[ ] Uninsured motorist (46)
**Other PI/PD/WD (Personal Injury/Property Damage/Wrongful Death) Tort**
[ ] Asbestos (04)
[x] Product liability (24)
[ ] Medical malpractice (45)
[ ] Other PI/PD/WD (23)
**Non-PI/PD/WD (Other) Tort**
[ ] Business tort/unfair business practice (07)
[ ] Civil rights (08)
[ ] Defamation (13)
[ ] Fraud (16)
[ ] Intellectual property (19)
[ ] Professional negligence (25)
[ ] Other non-PI/PD/WD tort (35)
**Employment**
[ ] Wrongful termination (36)
[ ] Other employment (15)

**Contract**
[ ] Breach of contract/warranty (06)
[ ] Rule 3.740 collections (09)
[ ] Other collections (09)
[ ] Insurance coverage (18)
[ ] Other contract (37)
**Real Property**
[ ] Eminent domain/Inverse condemnation (14)
[ ] Wrongful eviction (33)
[ ] Other real property (26)
**Unlawful Detainer**
[ ] Commercial (31)
[ ] Residential (32)
[ ] Drugs (38)
**Judicial Review**
[ ] Asset forfeiture (05)
[ ] Petition re: arbitration award (11)
[ ] Writ of mandate (02)
[ ] Other judicial review (39)

**Provisionally Complex Civil Litigation (Cal. Rules of Court, rules 3.400–3.403)**
[ ] Antitrust/Trade regulation (03)
[ ] Construction defect (10)
[ ] Mass tort (40)
[ ] Securities litigation (28)
[ ] Environmental/Toxic tort (30)
[ ] Insurance coverage claims arising from the above listed provisionally complex case types (41)
**Enforcement of Judgment**
[ ] Enforcement of judgment (20)
**Miscellaneous Civil Complaint**
[ ] RICO (27)
[ ] Other complaint *(not specified above)* (42)
**Miscellaneous Civil Petition**
[ ] Partnership and corporate governance (21)
[ ] Other petition *(not specified above)* (43)

2. This case [x] is　[ ] is not　complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:
   a. [x] Large number of separately represented parties
   b. [x] Extensive motion practice raising difficult or novel issues that will be time-consuming to resolve
   c. [x] Substantial amount of documentary evidence
   d. [x] Large number of witnesses
   e. [x] Coordination with related actions pending in one or more courts in other counties, states, or countries, or in a federal court
   f. [ ] Substantial postjudgment judicial supervision

3. Remedies sought *(check all that apply):* a. [x] monetary  b. [x] nonmonetary; declaratory or injunctive relief  c. [x] punitive
4. Number of causes of action *(specify):* 1) Design Defect; 2) Failure to Warn; 3) Negligence; 4) Punitive Damages
5. This case [ ] is　[x] is not　a class action suit.
6. If there are any known related cases, file and serve a notice of related case. *(You may use form CM-015.)*

Date: June 13, 2025
David J. Wool
_____　▶　_____
(TYPE OR PRINT NAME)　　　　　　　　　　　　　　(SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

**NOTICE**
- Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.
- File this cover sheet in addition to any cover sheet required by local court rule.
- If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on all other parties to the action or proceeding.
- Unless this is a collections case under rule 3.740 or a complex case, this cover sheet will be used for statistical purposes only.

Page 1 of 2

| Form Adopted for Mandatory Use<br>Judicial Council of California<br>CM-010 [Rev. January 1, 2024] | **CIVIL CASE COVER SHEET** | Cal. Rules of Court, rules 2.30, 3.220, 3.400–3.403, 3.740;<br>Cal. Standards of Judicial Administration, std. 3.10<br>*www.courts.ca.gov* |

## INSTRUCTIONS ON HOW TO COMPLETE THE COVER SHEET

CM-010

**To Plaintiffs and Others Filing First Papers.** If you are filing a first paper (for example, a complaint) in a civil case, you **must** complete and file, along with your first paper, the Civil Case Cover Sheet contained on page 1. This information will be used to compile statistics about the types and numbers of cases filed. You must complete items 1 through 6 on the sheet. In item 1, you must check **one** box for the case type that best describes the case. If the case fits both a general and a more specific type of case listed in item 1, check the more specific one. If the case has multiple causes of action, check the box that best indicates the **primary** cause of action. To assist you in completing the sheet, examples of the cases that belong under each case type in item 1 are provided below. A cover sheet must be filed only with your initial paper. Failure to file a cover sheet with the first paper filed in a civil case may subject a party, its counsel, or both to sanctions under rules 2.30 and 3.220 of the California Rules of Court.

**To Parties in Rule 3.740 Collections Cases.** A "collections case" under rule 3.740 is defined as an action for recovery of money owed in a sum stated to be certain that is not more than $25,000, exclusive of interest and attorney's fees, arising from a transaction in which property, services, or money was acquired on credit. A collections case does not include an action seeking the following: (1) tort damages, (2) punitive damages, (3) recovery of real property, (4) recovery of personal property, or (5) a prejudgment writ of attachment. The identification of a case as a rule 3.740 collections case on this form means that it will be exempt from the general time-for-service requirements and case management rules, unless a defendant files a responsive pleading. A rule 3.740 collections case will be subject to the requirements for service and obtaining a judgment in rule 3.740.

**To Parties in Complex Cases.** In complex cases only, parties must also use the Civil Case Cover Sheet to designate whether the case is complex. If a plaintiff believes the case is complex under rule 3.400 of the California Rules of Court, this must be indicated by completing the appropriate boxes in items 1 and 2. If a plaintiff designates a case as complex, the cover sheet must be served with the complaint on all parties to the action. A defendant may file and serve no later than the time of its first appearance a joinder in the plaintiff's designation, a counter-designation that the case is not complex, or, if the plaintiff has made no designation, a designation that the case is complex.

### CASE TYPES AND EXAMPLES

**Auto Tort**
Auto (22)–Personal Injury/Property Damage/Wrongful Death
Uninsured Motorist (46) *(if the case involves an uninsured motorist claim subject to arbitration, check this item instead of Auto)*

**Other PI/PD/WD (Personal Injury/ Property Damage/Wrongful Death) Tort**
Asbestos (04)
    Asbestos Property Damage
    Asbestos Personal Injury/ Wrongful Death
Product Liability *(not asbestos or toxic/environmental)* (24)
Medical Malpractice (45)
    Medical Malpractice– Physicians & Surgeons
    Other Professional Health Care Malpractice
Other PI/PD/WD (23)
    Premises Liability (e.g., slip and fall)
    Intentional Bodily Injury/PD/WD (e.g., assault, vandalism)
    Intentional Infliction of Emotional Distress
    Negligent Infliction of Emotional Distress
    Other PI/PD/WD

**Non-PI/PD/WD (Other) Tort**
Business Tort/Unfair Business Practice (07)
Civil Rights (e.g., discrimination, false arrest) *(not civil harassment)* (08)
Defamation (e.g., slander, libel) (13)
Fraud (16)
Intellectual Property (19)
Professional Negligence (25)
    Legal Malpractice
    Other Professional Malpractice *(not medical or legal)*
Other Non-PI/PD/WD Tort (35)

**Employment**
Wrongful Termination (36)
Other Employment (15)

**Contract**
Breach of Contract/Warranty (06)
    Breach of Rental/Lease Contract *(not unlawful detainer or wrongful eviction)*
    Contract/Warranty Breach–Seller Plaintiff *(not fraud or negligence)*
    Negligent Breach of Contract/ Warranty
    Other Breach of Contract/Warranty
Collections (e.g., money owed, open book accounts) (09)
    Collection Case–Seller Plaintiff
    Other Promissory Note/Collections Case
Insurance Coverage *(not provisionally complex)* (18)
    Auto Subrogation
    Other Coverage
Other Contract (37)
    Contractual Fraud
    Other Contract Dispute

**Real Property**
Eminent Domain/Inverse Condemnation (14)
Wrongful Eviction (33)
Other Real Property (e.g., quiet title) (26)
    Writ of Possession of Real Property
    Mortgage Foreclosure
    Quiet Title
    Other Real Property *(not eminent domain, landlord/tenant, or foreclosure)*

**Unlawful Detainer**
Commercial (31)
Residential (32)
Drugs (38) *(if the case involves illegal drugs, check this item; otherwise, report as Commercial or Residential)*

**Judicial Review**
Asset Forfeiture (05)
Petition Re: Arbitration Award (11)
Writ of Mandate (02)
    Writ–Administrative Mandamus
    Writ–Mandamus on Limited Court Case Matter
    Writ–Other Limited Court Case Review
Other Judicial Review (39)
    Review of Health Officer Order
    Notice of Appeal–Labor Commissioner Appeals

**Provisionally Complex Civil Litigation (Cal. Rules of Court Rules 3.400–3.403)**
Antitrust/Trade Regulation (03)
Construction Defect (10)
Claims Involving Mass Tort (40)
Securities Litigation (28)
Environmental/Toxic Tort (30)
Insurance Coverage Claims *(arising from provisionally complex case type listed above)* (41)

**Enforcement of Judgment**
Enforcement of Judgment (20)
    Abstract of Judgment (Out of County)
    Confession of Judgment *(non-domestic relations)*
    Sister State Judgment
    Administrative Agency Award *(not unpaid taxes)*
    Petition/Certification of Entry of Judgment on Unpaid Taxes
    Other Enforcement of Judgment Case

**Miscellaneous Civil Complaint**
RICO (27)
Other Complaint *(not specified above)* (42)
    Declaratory Relief Only
    Injunctive Relief Only *(non-harassment)*
    Mechanics Lien
    Other Commercial Complaint Case *(non-tort/non-complex)*
    Other Civil Complaint *(non-tort/non-complex)*

**Miscellaneous Civil Petition**
Partnership and Corporate Governance (21)
Other Petition *(not specified above)* (43)
    Civil Harassment
    Workplace Violence
    Elder/Dependent Adult Abuse
    Election Contest
    Petition for Name Change
    Petition for Relief From Late Claim
    Other Civil Petition

1  Alicia J. Donahue (SBN 117412)
   Kara M. Flageollet (SBN 347646)
2  SHOOK HARDY& BACON L.L.P.
   555 Mission Street, Suite 2300
3  San Francisco, CA 94105
   Telephone: (415) 544-1900
4  Facsimile: (415) 391-0281
   adonahue@shb.com
5  kflageollet@shb.com
6
   Mayela C. Montenegro-Urch (SBN 304471)
7  SHOOK HARDY& BACON L.L.P.
   Jamboree Center
8  5 Park Plaza, Suite 1600
   Irvine, CA 92614
9  Telephone: (949)475-1500
   Facsimile: (949)475-0016
10 mmontenegro@shb.com

11 *Attorneys for Defendant*
   WILBUR-ELLIS COMPANY, LLC
12

**ELECTRONICALLY FILED**
Superior Court of California
County of Sacramento
07/16/2025
By: _____ A. Gray _____ Deputy

13          **SUPERIOR COURT OF THE STATE OF CALIFORNIA**

14              **FOR THE COUNTY OF SACRAMENTO**

15

16 DENISE SURETTE,                          | Case No. 25CV014052

17          Plaintiff,                        | **DEFENDANT WILBUR-ELLIS**
                                              | **COMPANY, LLC'S ANSWER TO**
18          v.                                | **PLAINTIFF'S COMPLAINT FOR**
                                              | **DAMAGES; DEMAND FOR JURY TRIAL**
19 MONSANTO COMPANY; BAYER                    |
   CROPSCIENCE LP;                            | Complaint Filed:    June 13, 2025
20 WILBUR-ELLIS COMPANY, LLC;                 | Trial Date:         None set
   WILBUR-ELLIS FEED, LLC;                    |
21 and DOES 1-10                              |

22          Defendants.

23

24

25

26

27

28

Comes now Defendant WILBUR-ELLIS COMPANY, LLC ("Wilbur-Ellis Company, LLC") and answers the Complaint for Damages (herein "Complaint") of plaintiff:

1.      Pursuant to Code of Civil Procedure Section 431.30(d), Wilbur-Ellis Company, LLC files its general denial to said Complaint and denies, generally and specifically, each and every allegation of said Complaint, and the whole thereof, and denies that plaintiff had sustained or will sustain damage in the sum or sums alleged, or in any sum or amount whatsoever or at all.

2.      Further answering the Complaint, Wilbur-Ellis Company, LLC denies that plaintiff sustained or will sustain any injury, damage or loss by reason of any act or omission of Wilbur-Ellis Company, LLC.

Wilbur-Ellis Company, LLC is informed and believes, and therefore alleges the following separate and affirmative defenses:

<div align="center">

**FIRST DEFENSE**

**(FAILURE TO STATE A CAUSE OF ACTION – ALL CAUSES OF ACTION)**

</div>

1.      The Complaint, in whole or part, fails to state a claim or cause of action against Wilbur-Ellis Company, LLC upon which relief can be granted.

<div align="center">

**SECOND DEFENSE**

**(PRODUCT NOT DEFECTIVE OR UNREASONABLY DANGEROUS – ALL CAUSES OF ACTION)**

</div>

2.      Plaintiff's claims against Wilbur-Ellis Company, LLC are barred in whole because plaintiff cannot proffer any scientifically reliable evidence that the products at issue were defective or unreasonably dangerous.

<div align="center">

**THIRD DEFENSE**

**(LACK OF PROXIMATE CAUSE – ALL CAUSES OF ACTION)**

</div>

3.      Any alleged negligent or culpable conduct of Wilbur-Ellis Company, LLC, none being admitted, was so insubstantial as to be insufficient to be a proximate or substantial contributing cause of any injuries allegedly experienced by plaintiff.

/ /

/ /

WILBUR-ELLIS COMPANY, LLC'S ANSWER TO PLAINTIFF'S COMPLAINT

<u>FOURTH DEFENSE</u>

(ADEQUATE WARNINGS – ALL CAUSES OF ACTION)

4.    Plaintiff's claims against Wilbur-Ellis Company, LLC are barred, in whole or in part, because the products at issue were designed, manufactured, marketed, and labeled with proper warnings, information, cautions and instructions, in accordance with the state of the art and the state of scientific and technological knowledge.

<u>FIFTH DEFENSE</u>

(STATUTORY AND REGULATORY COMPLIANCE – ALL CAUSES OF ACTION)

5.    Plaintiff's claims against Wilbur-Ellis Company, LLC are barred, in whole or in part, because the products at issue were not defective or unreasonably dangerous in that they complied with, at all relevant times, all applicable government safety standards.

<u>SIXTH DEFENSE</u>

(FIFRA STATUTORY PREEMPTION – ALL CAUSES OF ACTION)

6.    Plaintiff's claims against Wilbur-Ellis Company, LLC are preempted, in whole or in part, by applicable federal law relating to the design, testing, producing, manufacturing, labeling, distributing, modeling, processing, and supply of Roundup®-branded products and/or glyphosate-containing products.

<u>SEVENTH DEFENSE</u>

(PREEMPTION – CONTINUED EPA APPROVAL – ALL CAUSES OF ACTION)

7.    Plaintiff's claims against Wilbur-Ellis Company, LLC are preempted, in whole or in part, because of findings by the United States Environmental Protection Agency ("U.S. EPA") that glyphosate does not cause cancer in humans and/or because of U.S. EPA-approved product labeling.

<u>EIGHTH DEFENSE</u>

(PRIMARY JURISDICTION – ALL CAUSES OF ACTION)

8.    Plaintiff's claims against Wilbur-Ellis Company, LLC are barred, in whole or in part, by the doctrine of primary jurisdiction, including by the authority delegated by Congress to the U.S. EPA.

WILBUR-ELLIS COMPANY, LLC'S ANSWER TO PLAINTIFF'S COMPLAINT

<div align="center">

NINTH DEFENSE

(INDEPENDENT/INTERVENING/SUPERSEDING CAUSES – ALL CAUSES OF ACTION)

</div>

9.      Plaintiff's claims against Wilbur-Ellis Company, LLC are barred, in whole or in part, because plaintiff's injuries, if any, were the result of conduct of plaintiff, independent third parties, and/or events that were extraordinary under the circumstances, not foreseeable in the normal course of events, and/or independent, intervening and superseding causes of the alleged injuries, including but not limited to plaintiff's pre-existing medical conditions.

<div align="center">

TENTH DEFENSE

(RESTATEMENT (SECOND) OF TORTS § 402A, COMMENTS J AND K – ALL CAUSES OF ACTION)

</div>

10.      The doctrines contained in Restatement (Second) of Torts § 402A, comments j and k, bar plaintiff's claims against Wilbur-Ellis Company, LLC in whole or in part.

<div align="center">

ELEVENTH DEFENSE

(STATUTE OF LIMITATIONS AND/OR REPOSE – ALL CAUSES OF ACTION)

</div>

11.      Plaintiff's claims are barred, in whole or in part, by the applicable statutes of limitations including, but not limited to, Code of Civil Procedure sections 335.1, 338(a), 338(d) and 340.8, and Civil Code section 1783.

<div align="center">

TWELFTH DEFENSE

(MISUSE OR FAILURE TO FOLLOW INSTRUCTIONS – ALL CAUSES OF ACTION)

</div>

12.      Plaintiff's misuse or abnormal use of the product or failure to follow instructions bar plaintiff's claims against Wilbur-Ellis Company, LLC in whole or in part.

<div align="center">

THIRTEENTH DEFENSE

(ALTERNATIVE CAUSES – ALL CAUSES OF ACTION)

</div>

13.      If plaintiff suffered injury or damages as alleged, which is denied, such injury or damages resulted from: (a) acts or omissions of persons or entities for which Wilbur-Ellis Company, LLC is neither liable nor responsible or, in the alternative, Wilbur-Ellis Company, LLC is entitled to an assessment of the relative degree of fault of all such persons and entities; or (b)

<div align="center">

3

</div>

resulted from diseases and/or causes that are not related or connected with any product sold, distributed, or manufactured by Wilbur-Ellis Company, LLC. Such acts or omissions on the part of others or diseases or causes constitute an independent, intervening and sole proximate cause of plaintiff's alleged injury or damages.

<div align="center">

FOURTEENTH DEFENSE

(LACK OF PRIVITY; NO DUTY – ALL CAUSES OF ACTION)

</div>

14.    Wilbur-Ellis Company, LLC had no legal relationship or privity with plaintiff and owed no duty to plaintiff by which liability could be attributed to it.

<div align="center">

FIFTEENTH DEFENSE

(COMMERCIAL FREE SPEECH – ALL CAUSES OF ACTION)

</div>

15.    Plaintiff's claims against Wilbur-Ellis Company, LLC are preempted or otherwise barred in whole or in part by the Freedom of Speech Clause of the First Amendment of the U.S. Constitution.

<div align="center">

SIXTEENTH DEFENSE

(PUNITIVE DAMAGES UNCONSTITUTIONAL – ALL CAUSES OF ACTION)

</div>

16.    Plaintiff's claims against Wilbur-Ellis Company, LLC for punitive damages are barred because such an award would violate Wilbur-Ellis Company, LLC's due process, equal protection and other rights under the United States Constitution, the California Constitution, and/or other applicable state constitutions – and would be improper under the common law and public policies of the United States, the laws of California and/or other states' laws.

<div align="center">

SEVENTEENTH DEFENSE

(CONDUCT DOES NOT WARRANT PUNITIVE DAMAGES – ALL CAUSES OF ACTION)

</div>

17.    Plaintiff's claims against Wilbur-Ellis Company, LLC for punitive damages are barred because plaintiff has failed to allege conduct warranting imposition of punitive damages under California and/or other applicable state laws.

/ /

/ /

/ /

<div align="center">

4

WILBUR-ELLIS COMPANY, LLC'S ANSWER TO PLAINTIFF'S COMPLAINT

</div>

<div align="center">

EIGHTEENTH DEFENSE

(PUNITIVE DAMAGES BARRED OR LIMITED BY OPERATION OF LAW– ALL CAUSES OF ACTION)

</div>

18.     Plaintiff's claims against Wilbur-Ellis Company, LLC for punitive damages are barred and/or limited by operation of state and/or federal law.

<div align="center">

NINETEENTH DEFENSE

(CONTRIBUTORY/COMPARATIVE NEGLIGENCE – ALL CAUSES OF ACTION)

</div>

19.     Plaintiff's claims against Wilbur-Ellis Company, LLC are barred in whole or in part by plaintiff's own contributory/comparative negligence.

<div align="center">

TWENTIETH DEFENSE

(FAILURE TO MITIGATE DAMAGES – ALL CAUSES OF ACTION)

</div>

20.     Plaintiff's claims against Wilbur-Ellis Company, LLC are barred in whole or in part by plaintiff's own failure to mitigate damages.

<div align="center">

TWENTY-FIRST DEFENSE

(SOPHISTICATED USER DOCTRINE – ALL CAUSES OF ACTION)

</div>

21.     Plaintiff's claims against Wilbur-Ellis Company, LLC are barred in whole or in part by the sophisticated user doctrine.

<div align="center">

TWENTY-SECOND DEFENSE

(COLLATERAL SOURCE – ALL CAUSES OF ACTION)

</div>

22.     To the extent that plaintiff recovered payments for any injuries from any collateral source(s) or other source(s), plaintiff's recovery in this lawsuit, if any, shall be reduced to the extent allowed by applicable law.

<div align="center">

TWENTY-THIRD DEFENSE

(ALLEGED INJURIES NOT CAUSED BY WILBUR-ELLIS COMPANY, LLC PRODUCT – ALL CAUSES OF ACTION)

</div>

23.     If plaintiff has been injured or damaged, no injury or damages being admitted, such injuries or damages were not caused by a Wilbur-Ellis Company, LLC product.

/ /

TWENTY-FOURTH DEFENSE

(MISJOINDER OF PARTIES – ALL CAUSES OF ACTION)

24.    Plaintiff's claims are barred, in whole or in part, because some or all of the parties have been improperly joined in this action.

TWENTY-FIFTH DEFENSE

(INCONVENIENT VENUE – ALL CAUSES OF ACTION)

25.    Venue is or may be inconvenient for some or all of plaintiff's claims.

TWENTY-SIXTH DEFENSE

(FRAUD ON FEDERAL AGENCY PREEMPTION – ALL CAUSES OF ACTION)

26.    Any claims based on allegations that Wilbur-Ellis Company, LLC misled, defrauded, made misrepresentations to, or withheld information from the U.S. EPA are preempted by federal law.  *See, e.g.*, *Buckman Co. v. Plaintiffs' Legal Comm.*, 531 U.S. 341 (2001); *Nathan Kimmel, Inc. v. Dowelanco*, 275 F.3d 1199 (9th Cir. 2002).

TWENTY-SEVENTH DEFENSE

(RELIEF SOUGHT BASED ON OTHER STATES' LAWS – ALL CAUSES OF ACTION)

27.    Plaintiff's claims against Wilbur-Ellis Company, LLC are barred to the extent that plaintiff seeks relief under the laws of states that do not govern plaintiff's claims.

TWENTY-EIGHTH DEFENSE

(NO WARRANTIES – ALL CAUSES OF ACTION)

28.    Wilbur-Ellis Company, LLC made no warranties of any kind or any representations of any nature whatsoever to plaintiff.  If any such warranties were made, which Wilbur-Ellis Company, LLC specifically denies, then plaintiff failed to give notice of any breach thereof.

TWENTY-NINTH DEFENSE

(RESERVATION OF RIGHT TO ASSERT ADDITIONAL DEFENSES – ALL CAUSES OF ACTION)

29.    Wilbur-Ellis Company, LLC hereby gives notice that it intends to rely upon such other defenses as may become available or apparent during the course of discovery and thus reserves its right to amend this Answer to assert such defenses.

WHEREFORE, Wilbur-Ellis Company, LLC prays as follows:

1.      That plaintiff take nothing by way of the Complaint;

2.      That the Complaint be dismissed, in its entirety with prejudice;

3.      That Wilbur-Ellis Company, LLC be awarded judgment in this action;

4.      That Wilbur-Ellis Company, LLC be awarded costs of suit;

5.      That Wilbur-Ellis Company, LLC be awarded such other and further relief as the Court deems just and proper.

Dated:  July 16, 2025                          SHOOK, HARDY & BACON LLP

_____

Alicia J. Donahue

Attorneys for Defendant
WILBUR-ELLIS COMPANY, LLC

## DEMAND FOR JURY TRIAL

Defendant WILBUR-ELLIS COMPANY, LLC hereby demands a jury trial in the above-entitled action.

Dated:  July 16, 2025                          SHOOK, HARDY & BACON LLP

_____

Alicia J. Donahue

Attorneys for Defendant
WILBUR-ELLIS COMPANY, LLC

*Denise Surette v. Monsanto Company, et al.*
Sacramento County Superior Court, Case No. 25CV014052

1

## PROOF OF SERVICE

2   I am employed in the County of San Francisco, State of California. I am over the age of 18

3 and not a party to the within action. My business address is 555 Mission Street, Suite 2300, San Francisco, California 94105.

4   On July 16, 2025, I served a true and correct copy of the document described as

5 **DEFENDANT WILBUR-ELLIS COMPANY, LLC'S ANSWER TO PLAINTIFF'S COMPLAINT FOR DAMAGES; DEMAND FOR JURY TRIAL** on the interested parties, as

6 follows:

7

| Parties Represented | Attorneys |
|---|---|
| Plaintiff<br>**KYM HOUGH** | David J. Wool, Esq.<br>**WOOL TRIAL LAW, LLC**<br>1001 N. Bannock St., Suite 410<br>Denver, CO 80204<br>Tel: (720) 509-9101<br>david@wooltriallaw.com<br><br>Devin van der Hahn (PHV forthcoming)<br>**VANDERHAHN LLP**<br>1000 Main St., Suite 2300<br>Houston, TX 77002<br>Tel: (281) 688-5000 \| Fax: (832) 734-7120<br>devin@vanderhahn.com<br><br>Sean Duddy (PHV forthcoming)<br>**DUDDY & CZARNECKI PLLC**<br>601 Pennsylvania Ave NW<br>South Building, Suite 900<br>Washington, DC 20004<br>Tel: (202) 771-7978<br>skd@duddyczarnecki.com |

19 ☒ **VIA FIRST CLASS U.S. MAIL:** By causing a true and correct copy of the above

20 document to be placed in a sealed envelope with postage fully prepaid and deposited with the United States Postal Service on that same day in the ordinary course of business.

21 ☒ **VIA E-MAIL:** By sending the above document to the persons at the e-mail addresses listed

22 above. I did not receive, within a reasonable time after the transmission, any electronic message or other indication that the transmission was unsuccessful.

23   I declare under penalty of perjury under the laws of the State of California that the foregoing

24 is true and correct.

25   Executed on July 16, 2025, at San Francisco, California.

26

_____
Mayra Montalvo

27

28

Alicia J. Donahue (SBN 117412)
Kara M. Flageollet (SBN 347646)
SHOOK HARDY& BACON L.L.P.
555 Mission Street, Suite 2300
San Francisco, CA 94105
Telephone: (415) 544-1900
Facsimile: (415) 391-0281
adonahue@shb.com
kflageollet@shb.com

Mayela C. Montenegro-Urch (SBN 304471)
SHOOK HARDY& BACON L.L.P.
Jamboree Center
5 Park Plaza, Suite 1600
Irvine, CA 92614
Telephone: (949)475-1500
Facsimile: (949)475-0016
mmontenegro@shb.com

*Attorneys for Defendant*
BAYER CROPSCIENCE LP

**ELECTRONICALLY FILED**
Superior Court of California
County of Sacramento
07/16/2025
By: _____ A. Gray _____ Deputy

# SUPERIOR COURT OF THE STATE OF CALIFORNIA

## FOR THE COUNTY OF SACRAMENTO

| | |
|---|---|
| DENISE SURETTE,<br><br>    Plaintiff,<br><br>    v.<br><br>MONSANTO COMPANY; BAYER CROPSCIENCE LP;<br>WILBUR-ELLIS COMPANY, LLC;<br>WILBUR-ELLIS FEED, LLC;<br>and DOES 1-10.<br><br>    Defendants. | Case No. 25CV014052<br><br>**DEFENDANT BAYER CROPSCIENCE LP'S ANSWER TO PLAINTIFF'S COMPLAINT FOR DAMAGES; DEMAND FOR JURY TRIAL**<br><br>Complaint Filed:    June 13, 2025<br>Trial Date:    None set |

1    Comes now Defendant BAYER CROPSCIENCE LP and answers the Complaint for

2  Damages (herein "Complaint") of plaintiff:

3    1.    Pursuant to Code of Civil Procedure Section 431.30(d), Bayer CropScience LP files

4  its general denial to said Complaint and denies, generally and specifically, each and every

5  allegation of said Complaint, and the whole thereof, and denies that plaintiff had sustained or will

6  sustain damage in the sum or sums alleged, or in any sum or amount whatsoever or at all.

7    2.    Further answering the Complaint, Bayer CropScience LP denies that plaintiff

8  sustained or will sustain any injury, damage or loss by reason of any act or omission of Bayer

9  CropScience LP.

10    Bayer CropScience LP is informed and believes, and therefore alleges the following

11  separate and affirmative defenses:

12                              FIRST DEFENSE

13        (FAILURE TO STATE A CAUSE OF ACTION – ALL CAUSES OF ACTION)

14    1.    The Complaint, in whole or part, fails to state a claim or cause of action against

15  Bayer CropScience LP upon which relief can be granted.

16                              SECOND DEFENSE

17  (PRODUCT NOT DEFECTIVE OR UNREASONABLY DANGEROUS – ALL CAUSES OF

18                                  ACTION)

19    2.    Plaintiff's claims against Bayer CropScience LP are barred in whole because

20  plaintiff cannot proffer any scientifically reliable evidence that the products at issue were defective

21  or unreasonably dangerous.

22                              THIRD DEFENSE

23            (LACK OF PROXIMATE CAUSE – ALL CAUSES OF ACTION)

24    3.    Any alleged negligent or culpable conduct of Bayer CropScience LP, none being

25  admitted, was so insubstantial as to be insufficient to be a proximate or substantial contributing

26  cause of any injuries allegedly experienced by plaintiff.

27  / /

28  / /

BAYER CROPSCIENCE LP'S ANSWER TO PLAINTIFF'S COMPLAINT

<div align="center">FOURTH DEFENSE</div>

<div align="center">(ADEQUATE WARNINGS – ALL CAUSES OF ACTION)</div>

4.     Plaintiff's claims against Bayer CropScience LP are barred, in whole or in part, because the products at issue were designed, manufactured, marketed, and labeled with proper warnings, information, cautions and instructions, in accordance with the state of the art and the state of scientific and technological knowledge.

<div align="center">FIFTH DEFENSE</div>

<div align="center">(STATUTORY AND REGULATORY COMPLIANCE – ALL CAUSES OF ACTION)</div>

5.     Plaintiff's claims against Bayer CropScience LP are barred, in whole or in part, because the products at issue were not defective or unreasonably dangerous in that they complied with, at all relevant times, all applicable government safety standards.

<div align="center">SIXTH DEFENSE</div>

<div align="center">(FIFRA STATUTORY PREEMPTION – ALL CAUSES OF ACTION)</div>

6.     Plaintiff's claims against Bayer CropScience LP are preempted, in whole or in part, by applicable federal law relating to the design, testing, producing, manufacturing, labeling, distributing, modeling, processing, and supply of Roundup®-branded products and/or glyphosate-containing products.

<div align="center">SEVENTH DEFENSE</div>

<div align="center">(PREEMPTION – CONTINUED EPA APPROVAL – ALL CAUSES OF ACTION)</div>

7.     Plaintiff's claims against Bayer CropScience LP are preempted, in whole or in part, because of findings by the United States Environmental Protection Agency ("U.S. EPA") that glyphosate does not cause cancer in humans and/or because of U.S. EPA-approved product labeling.

<div align="center">EIGHTH DEFENSE</div>

<div align="center">(PRIMARY JURISDICTION – ALL CAUSES OF ACTION)</div>

8.     Plaintiff's claims against Bayer CropScience LP are barred, in whole or in part, by the doctrine of primary jurisdiction, including by the authority delegated by Congress to the U.S. EPA.

<div align="center">2</div>

NINTH DEFENSE

(INDEPENDENT/INTERVENING/SUPERSEDING CAUSES – ALL CAUSES OF ACTION)

9.     Plaintiff's claims against Bayer CropScience LP are barred, in whole or in part, because plaintiff's injuries, if any, were the result of conduct of plaintiff, independent third parties, and/or events that were extraordinary under the circumstances, not foreseeable in the normal course of events, and/or independent, intervening and superseding causes of the alleged injuries, including but not limited to plaintiff's pre-existing medical conditions.

TENTH DEFENSE

(RESTATEMENT (SECOND) OF TORTS § 402A, COMMENTS J AND K – ALL CAUSES OF ACTION)

10.     The doctrines contained in Restatement (Second) of Torts § 402A, comments j and k, bar plaintiff's claims against Bayer CropScience LP in whole or in part.

ELEVENTH DEFENSE

(STATUTE OF LIMITATIONS AND/OR REPOSE – ALL CAUSES OF ACTION)

11.     Plaintiff's claims are barred, in whole or in part, by the applicable statutes of limitations including, but not limited to, Code of Civil Procedure sections 335.1, 338(a), 338(d) and 340.8, and Civil Code section 1783.

TWELFTH DEFENSE

(MISUSE OR FAILURE TO FOLLOW INSTRUCTIONS – ALL CAUSES OF ACTION)

12.     Plaintiff's misuse or abnormal use of the product or failure to follow instructions bar plaintiff's claims against Bayer CropScience LP in whole or in part.

THIRTEENTH DEFENSE

(ALTERNATIVE CAUSES – ALL CAUSES OF ACTION)

13.     If plaintiff suffered injury or damages as alleged, which is denied, such injury or damages resulted from: (a) acts or omissions of persons or entities for which Bayer CropScience LP is neither liable nor responsible or, in the alternative, Bayer CropScience LP is entitled to an assessment of the relative degree of fault of all such persons and entities; or (b) resulted from

diseases and/or causes that are not related or connected with any product sold, distributed, or manufactured by Bayer CropScience LP. Such acts or omissions on the part of others or diseases or causes constitute an independent, intervening and sole proximate cause of plaintiff's alleged injury or damages.

<div align="center">FOURTEENTH DEFENSE</div>

<div align="center">(LACK OF PRIVITY; NO DUTY – ALL CAUSES OF ACTION)</div>

14.    Bayer CropScience LP had no legal relationship or privity with plaintiff and owed no duty to plaintiff by which liability could be attributed to it.

<div align="center">FIFTEENTH DEFENSE</div>

<div align="center">(COMMERCIAL FREE SPEECH – ALL CAUSES OF ACTION)</div>

15.    Plaintiff's claims against Bayer CropScience LP are preempted or otherwise barred in whole or in part by the Freedom of Speech Clause of the First Amendment of the U.S. Constitution.

<div align="center">SIXTEENTH DEFENSE</div>

<div align="center">(PUNITIVE DAMAGES UNCONSTITUTIONAL – ALL CAUSES OF ACTION)</div>

16.    Plaintiff's claims against Bayer CropScience LP for punitive damages are barred because such an award would violate Bayer CropScience LP's due process, equal protection and other rights under the United States Constitution, the California Constitution, and/or other applicable state constitutions – and would be improper under the common law and public policies of the United States, the laws of California and/or other states' laws.

<div align="center">SEVENTEENTH DEFENSE</div>

<div align="center">(CONDUCT DOES NOT WARRANT PUNITIVE DAMAGES – ALL CAUSES OF ACTION)</div>

17.    Plaintiff's claims against Bayer CropScience LP for punitive damages are barred because plaintiff has failed to allege conduct warranting imposition of punitive damages under California and/or other applicable state laws.

/ /

/ /

/ /

1

<div align="center">

EIGHTEENTH DEFENSE

</div>

2

3

<div align="center">

(PUNITIVE DAMAGES BARRED OR LIMITED BY OPERATION OF LAW– ALL CAUSES
OF ACTION)

</div>

4

5

18.    Plaintiff's claims against Bayer CropScience LP for punitive damages are barred and/or limited by operation of state and/or federal law.

6

<div align="center">

NINETEENTH DEFENSE

</div>

7

<div align="center">

(CONTRIBUTORY/COMPARATIVE NEGLIGENCE – ALL CAUSES OF ACTION)

</div>

8

9

19.    Plaintiff's claims against Bayer CropScience LP are barred in whole or in part by plaintiff's own contributory/comparative negligence.

10

<div align="center">

TWENTIETH DEFENSE

</div>

11

<div align="center">

(FAILURE TO MITIGATE DAMAGES – ALL CAUSES OF ACTION)

</div>

12

13

20.    Plaintiff's claims against Bayer CropScience LP are barred in whole or in part by plaintiff's own failure to mitigate damages.

14

<div align="center">

TWENTY-FIRST DEFENSE

</div>

15

<div align="center">

(SOPHISTICATED USER DOCTRINE – ALL CAUSES OF ACTION)

</div>

16

17

21.    Plaintiff's claims against Bayer CropScience LP are barred in whole or in part by the sophisticated user doctrine.

18

<div align="center">

TWENTY-SECOND DEFENSE

</div>

19

<div align="center">

(COLLATERAL SOURCE – ALL CAUSES OF ACTION)

</div>

20

21

22

22.    To the extent that plaintiff recovered payments for any injuries from any collateral source(s) or other source(s), plaintiff's recovery in this lawsuit, if any, shall be reduced to the extent allowed by applicable law.

23

<div align="center">

TWENTY-THIRD DEFENSE

</div>

24

25

<div align="center">

(ALLEGED INJURIES NOT CAUSED BY BAYER CROPSCIENCE LP PRODUCT –
ALL CAUSES OF ACTION)

</div>

26

27

23.    If plaintiff has been injured or damaged, no injury or damages being admitted, such injuries or damages were not caused by a Bayer CropScience LP product.

28

<div align="center">

5

</div>

<div align="center">TWENTY-FOURTH DEFENSE</div>

<div align="center">(MISJOINDER OF PARTIES – ALL CAUSES OF ACTION)</div>

24.     Plaintiff's claims are barred, in whole or in part, because some or all of the parties have been improperly joined in this action.

<div align="center">TWENTY-FIFTH DEFENSE</div>

<div align="center">(INCONVENIENT VENUE – ALL CAUSES OF ACTION)</div>

25.     Venue is or may be inconvenient for some or all of plaintiff's claims.

<div align="center">TWENTY-SIXTH DEFENSE</div>

<div align="center">(FRAUD ON FEDERAL AGENCY PREEMPTION – ALL CAUSES OF ACTION)</div>

26.     Any claims based on allegations that Bayer CropScience LP misled, defrauded, made misrepresentations to, or withheld information from the U.S. EPA are preempted by federal law. *See, e.g.*, *Buckman Co. v. Plaintiffs' Legal Comm.*, 531 U.S. 341 (2001); *Nathan Kimmel, Inc. v. Dowelanco*, 275 F.3d 1199 (9th Cir. 2002).

<div align="center">TWENTY-SEVENTH DEFENSE</div>

<div align="center">(RELIEF SOUGHT BASED ON OTHER STATES' LAWS – ALL CAUSES OF ACTION)</div>

27.     Plaintiff's claims against Bayer CropScience LP are barred to the extent that plaintiff seeks relief under the laws of states that do not govern plaintiff's claims.

<div align="center">TWENTY-EIGHTH DEFENSE</div>

<div align="center">(NO WARRANTIES – ALL CAUSES OF ACTION)</div>

28.     Bayer CropScience LP made no warranties of any kind or any representations of any nature whatsoever to plaintiff.  If any such warranties were made, which Bayer CropScience LP specifically denies, then plaintiff failed to give notice of any breach thereof.

<div align="center">TWENTY-NINTH DEFENSE</div>

<div align="center">(RESERVATION OF RIGHT TO ASSERT ADDITIONAL DEFENSES – ALL CAUSES OF ACTION)</div>

29.     Bayer CropScience LP hereby gives notice that it intends to rely upon such other defenses as may become available or apparent during the course of discovery and thus reserves its right to amend this Answer to assert such defenses.

WHEREFORE, Bayer CropScience LP prays as follows:

1.    That plaintiff take nothing by way of the Complaint;

2.    That the Complaint be dismissed, in its entirety with prejudice;

3.    That Bayer CropScience LP be awarded judgment in this action;

4.    That Bayer CropScience LP be awarded costs of suit;

5.    That Bayer CropScience LP be awarded such other and further relief as the Court deems just and proper.

Dated:  July 16, 2025                SHOOK, HARDY & BACON LLP


_____
Alicia J. Donahue

Attorneys for Defendant
BAYER CROPSCIENCE LP


**DEMAND FOR JURY TRIAL**

Defendant BAYER CROPSCIENCE LP hereby demands a jury trial in the above-entitled action.

Dated:  July 16, 2025                SHOOK, HARDY & BACON LLP


_____
Alicia J. Donahue

Attorneys for Defendant
BAYER CROPSCIENCE LP

*Denise Surette v. Monsanto Company, et al.*
Sacramento County Superior Court, Case No. 25CV014052

## PROOF OF SERVICE

I am employed in the County of San Francisco, State of California.  I am over the age of 18 and not a party to the within action.  My business address is 555 Mission Street, Suite 2300, San Francisco, California 94105.

On July 16, 2025, I served a true and correct copy of the document described as **DEFENDANT BAYER CROPSCIENCE LP'S ANSWER TO PLAINTIFF'S COMPLAINT FOR DAMAGES; DEMAND FOR JURY TRIAL** on the interested parties, as follows:

| Parties Represented | Attorneys |
|---|---|
| Plaintiff<br>**KYM HOUGH** | David J. Wool, Esq.<br>**WOOL TRIAL LAW, LLC**<br>1001 N. Bannock St., Suite 410<br>Denver, CO 80204<br>Tel: (720) 509-9101<br>david@wooltriallaw.com<br><br>Devin van der Hahn (PHV forthcoming)<br>**VANDERHAHN LLP**<br>1000 Main St., Suite 2300<br>Houston, TX 77002<br>Tel: (281) 688-5000 \| Fax: (832) 734-7120<br>devin@vanderhahn.com<br><br>Sean Duddy (PHV forthcoming)<br>**DUDDY & CZARNECKI PLLC**<br>601 Pennsylvania Ave NW<br>South Building, Suite 900<br>Washington, DC 20004<br>Tel: (202) 771-7978<br>skd@duddyczarnecki.com |

☒  **VIA FIRST CLASS U.S. MAIL:** By causing a true and correct copy of the above document to be placed in a sealed envelope with postage fully prepaid and deposited with the United States Postal Service on that same day in the ordinary course of business.

☒  **VIA E-MAIL**: By sending the above document to the persons at the e-mail addresses listed above. I did not receive, within a reasonable time after the transmission, any electronic message or other indication that the transmission was unsuccessful.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed on July 16, 2025, at San Francisco, California.

_____
Mayra Montalvo

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Alicia J. Donahue (SBN 117412)
Kara M. Flageollet (SBN 347646)
SHOOK HARDY& BACON L.L.P.
555 Mission Street, Suite 2300
San Francisco, CA 94105
Telephone: (415) 544-1900
Facsimile: (415) 391-0281
adonahue@shb.com
kflageollet@shb.com

Mayela C. Montenegro-Urch (SBN 304471)
SHOOK HARDY& BACON L.L.P.
Jamboree Center
5 Park Plaza, Suite 1600
Irvine, CA 92614
Telephone: (949)475-1500
Facsimile: (949)475-0016
mmontenegro@shb.com

*Attorneys for Defendant*
MONSANTO COMPANY

ELECTRONICALLY FILED
Superior Court of California
County of Sacramento
07/16/2025
By: _____ A. Gray _____ Deputy

## SUPERIOR COURT OF THE STATE OF CALIFORNIA

## FOR THE COUNTY OF SACRAMENTO

| | |
|---|---|
| DENISE SURETTE,<br><br>        Plaintiff,<br><br>    v.<br><br>MONSANTO COMPANY; BAYER CROPSCIENCE LP; WILBUR-ELLIS COMPANY, LLC; WILBUR-ELLIS FEED, LLC; and DOES 1-10.<br><br>        Defendants. | Case No. 25CV014052<br><br>**DEFENDANT MONSANTO COMPANY'S ANSWER TO PLAINTIFF'S COMPLAINT FOR DAMAGES; DEMAND FOR JURY TRIAL**<br><br>Complaint Filed:    June 13, 2025<br>Trial Date:        None set |

Comes now Defendant MONSANTO COMPANY ("Monsanto") and answers the Complaint for Damages (herein "Complaint") of plaintiff:

1.      Pursuant to Code of Civil Procedure Section 431.30(d), Monsanto files its general denial to said Complaint and denies, generally and specifically, each and every allegation of said Complaint, and the whole thereof, and denies that plaintiff had sustained or will sustain damage in the sum or sums alleged, or in any sum or amount whatsoever or at all.

2.      Further answering the Complaint, Monsanto denies that plaintiff sustained or will sustain any injury, damage or loss by reason of any act or omission of Monsanto.

Monsanto is informed and believes, and therefore alleges the following separate and affirmative defenses:

<u>FIRST DEFENSE</u>

(FAILURE TO STATE A CAUSE OF ACTION – ALL CAUSES OF ACTION)

1.      The Complaint, in whole or part, fails to state a claim or cause of action against Monsanto upon which relief can be granted.

<u>SECOND DEFENSE</u>

(PRODUCT NOT DEFECTIVE OR UNREASONABLY DANGEROUS – ALL CAUSES OF ACTION)

2.      Plaintiff's claims against Monsanto are barred in whole because plaintiff cannot proffer any scientifically reliable evidence that the products at issue were defective or unreasonably dangerous.

<u>THIRD DEFENSE</u>

(LACK OF PROXIMATE CAUSE – ALL CAUSES OF ACTION)

3.      Any alleged negligent or culpable conduct of Monsanto, none being admitted, was so insubstantial as to be insufficient to be a proximate or substantial contributing cause of any injuries allegedly experienced by plaintiff.

/ /

/ /

/ /

<center>FOURTH DEFENSE</center>

<center>(ADEQUATE WARNINGS – ALL CAUSES OF ACTION)</center>

4.      Plaintiff's claims against Monsanto are barred, in whole or in part, because the products at issue were designed, manufactured, marketed, and labeled with proper warnings, information, cautions and instructions, in accordance with the state of the art and the state of scientific and technological knowledge.

<center>FIFTH DEFENSE</center>

<center>(STATUTORY AND REGULATORY COMPLIANCE – ALL CAUSES OF ACTION)</center>

5.      Plaintiff's claims against Monsanto are barred, in whole or in part, because the products at issue were not defective or unreasonably dangerous in that they complied with, at all relevant times, all applicable government safety standards.

<center>SIXTH DEFENSE</center>

<center>(FIFRA STATUTORY PREEMPTION – ALL CAUSES OF ACTION)</center>

6.      Plaintiff's claims against Monsanto are preempted, in whole or in part, by applicable federal law relating to the design, testing, producing, manufacturing, labeling, distributing, modeling, processing, and supply of Roundup®-branded products and/or glyphosate-containing products.

<center>SEVENTH DEFENSE</center>

<center>(PREEMPTION – CONTINUED EPA APPROVAL – ALL CAUSES OF ACTION)</center>

7.      Plaintiff's claims against Monsanto are preempted, in whole or in part, because of findings by the United States Environmental Protection Agency ("U.S. EPA") that glyphosate does not cause cancer in humans and/or because of U.S. EPA-approved product labeling.

<center>EIGHTH DEFENSE</center>

<center>(PRIMARY JURISDICTION – ALL CAUSES OF ACTION)</center>

8.      Plaintiff's claims against Monsanto are barred, in whole or in part, by the doctrine of primary jurisdiction, including by the authority delegated by Congress to the U.S. EPA.

/ /

/ /

<center>2</center>

<div align="center">NINTH DEFENSE</div>

<div align="center">(INDEPENDENT/INTERVENING/SUPERSEDING CAUSES – ALL CAUSES OF</div>

<div align="center">ACTION)</div>

9.      Plaintiff's claims against Monsanto are barred, in whole or in part, because plaintiff's injuries, if any, were the result of conduct of plaintiff, independent third parties, and/or events that were extraordinary under the circumstances, not foreseeable in the normal course of events, and/or independent, intervening and superseding causes of the alleged injuries, including but not limited to plaintiff's pre-existing medical conditions.

<div align="center">TENTH DEFENSE</div>

<div align="center">(RESTATEMENT (SECOND) OF TORTS § 402A, COMMENTS J AND K – ALL CAUSES</div>

<div align="center">OF ACTION)</div>

10.      The doctrines contained in Restatement (Second) of Torts § 402A, comments j and k, bar plaintiff's claims against Monsanto in whole or in part.

<div align="center">ELEVENTH DEFENSE</div>

<div align="center">(STATUTE OF LIMITATIONS AND/OR REPOSE – ALL CAUSES OF ACTION)</div>

11.      Plaintiff's claims are barred, in whole or in part, by the applicable statutes of limitations including, but not limited to, Code of Civil Procedure sections 335.1, 338(a), 338(d) and 340.8, and Civil Code section 1783.

<div align="center">TWELFTH DEFENSE</div>

<div align="center">(MISUSE OR FAILURE TO FOLLOW INSTRUCTIONS – ALL CAUSES OF ACTION)</div>

12.      Plaintiff's misuse or abnormal use of the product or failure to follow instructions bar plaintiff's claims against Monsanto in whole or in part.

<div align="center">THIRTEENTH DEFENSE</div>

<div align="center">(ALTERNATIVE CAUSES – ALL CAUSES OF ACTION)</div>

13.      If plaintiff suffered injury or damages as alleged, which is denied, such injury or damages resulted from: (a) acts or omissions of persons or entities for which Monsanto is neither liable nor responsible or, in the alternative, Monsanto is entitled to an assessment of the relative degree of fault of all such persons and entities; or (b) resulted from diseases and/or causes that are

<div align="center">3</div>

not related or connected with any product sold, distributed, or manufactured by Monsanto.  Such acts or omissions on the part of others or diseases or causes constitute an independent, intervening and sole proximate cause of plaintiff's alleged injury or damages.

FOURTEENTH DEFENSE

(LACK OF PRIVITY; NO DUTY – ALL CAUSES OF ACTION)

14.     Monsanto had no legal relationship or privity with plaintiff and owed no duty to plaintiff by which liability could be attributed to it.

FIFTEENTH DEFENSE

(COMMERCIAL FREE SPEECH – ALL CAUSES OF ACTION)

15.     Plaintiff's claims against Monsanto are preempted or otherwise barred in whole or in part by the Freedom of Speech Clause of the First Amendment of the U.S. Constitution.

SIXTEENTH DEFENSE

(PUNITIVE DAMAGES UNCONSTITUTIONAL – ALL CAUSES OF ACTION)

16.     Plaintiff's claims against Monsanto for punitive damages are barred because such an award would violate Monsanto's due process, equal protection and other rights under the United States Constitution, the California Constitution, and/or other applicable state constitutions – and would be improper under the common law and public policies of the United States, the laws of California and/or other states' laws.

SEVENTEENTH DEFENSE

(CONDUCT DOES NOT WARRANT PUNITIVE DAMAGES – ALL CAUSES OF ACTION)

17.     Plaintiff's claims against Monsanto for punitive damages are barred because plaintiff has failed to allege conduct warranting imposition of punitive damages under California and/or other applicable state laws.

EIGHTEENTH DEFENSE

(PUNITIVE DAMAGES BARRED OR LIMITED BY OPERATION OF LAW– ALL CAUSES OF ACTION)

18.     Plaintiff's claims against Monsanto for punitive damages are barred and/or limited by operation of state and/or federal law.

<div align="center">NINETEENTH DEFENSE</div>

<div align="center">(CONTRIBUTORY/COMPARATIVE NEGLIGENCE – ALL CAUSES OF ACTION)</div>

19.     Plaintiff's claims against Monsanto are barred in whole or in part by plaintiff's own contributory/comparative negligence.

<div align="center">TWENTIETH DEFENSE</div>

<div align="center">(FAILURE TO MITIGATE DAMAGES – ALL CAUSES OF ACTION)</div>

20.     Plaintiff's claims against Monsanto are barred in whole or in part by plaintiff's own failure to mitigate damages.

<div align="center">TWENTY-FIRST DEFENSE</div>

<div align="center">(SOPHISTICATED USER DOCTRINE – ALL CAUSES OF ACTION)</div>

21.     Plaintiff's claims against Monsanto are barred in whole or in part by the sophisticated user doctrine.

<div align="center">TWENTY-SECOND DEFENSE</div>

<div align="center">(COLLATERAL SOURCE – ALL CAUSES OF ACTION)</div>

22.     To the extent that plaintiff recovered payments for any injuries from any collateral source(s) or other source(s), plaintiff's recovery in this lawsuit, if any, shall be reduced to the extent allowed by applicable law.

<div align="center">TWENTY-THIRD DEFENSE</div>

<div align="center">(ALLEGED INJURIES NOT CAUSED BY MONSANTO PRODUCT – ALL CAUSES OF ACTION)</div>

23.     If plaintiff has been injured or damaged, no injury or damages being admitted, such injuries or damages were not caused by a Monsanto product.

<div align="center">TWENTY-FOURTH DEFENSE</div>

<div align="center">(MISJOINDER OF PARTIES – ALL CAUSES OF ACTION)</div>

24.     Plaintiff's claims are barred, in whole or in part, because some or all of the parties have been improperly joined in this action.

/ /

/ /

1

TWENTY-FIFTH DEFENSE

2

(INCONVENIENT VENUE – ALL CAUSES OF ACTION)

3

25.    Venue is or may be inconvenient for some or all of plaintiff's claims.

4

TWENTY-SIXTH DEFENSE

5

(FRAUD ON FEDERAL AGENCY PREEMPTION – ALL CAUSES OF ACTION)

6

26.    Any claims based on allegations that Monsanto misled, defrauded, made

7

misrepresentations to, or withheld information from the U.S. EPA are preempted by federal law.

8

*See, e.g.*, *Buckman Co. v. Plaintiffs' Legal Comm.*, 531 U.S. 341 (2001); *Nathan Kimmel, Inc. v.*

9

*Dowelanco*, 275 F.3d 1199 (9th Cir. 2002).

10

TWENTY-SEVENTH DEFENSE

11

(RELIEF SOUGHT BASED ON OTHER STATES' LAWS – ALL CAUSES OF ACTION)

12

27.    Plaintiff's claims against Monsanto are barred to the extent that plaintiff seeks relief

13

under the laws of states that do not govern plaintiff's claims.

14

TWENTY-EIGHTH DEFENSE

15

(NO WARRANTIES – ALL CAUSES OF ACTION)

16

28.    Monsanto made no warranties of any kind or any representations of any nature

17

whatsoever to plaintiff.  If any such warranties were made, which Monsanto specifically denies,

18

then plaintiff failed to give notice of any breach thereof.

19

TWENTY-NINTH DEFENSE

20

(RESERVATION OF RIGHT TO ASSERT ADDITIONAL DEFENSES – ALL CAUSES OF

21

ACTION)

22

29.    Monsanto hereby gives notice that it intends to rely upon such other defenses as may

23

become available or apparent during the course of discovery and thus reserves its right to amend

24

this Answer to assert such defenses.

25

WHEREFORE, Monsanto prays as follows:

26

1.    That plaintiff take nothing by way of the Complaint;

27

2.    That the Complaint be dismissed, in its entirety with prejudice;

28

3.    That Monsanto be awarded judgment in this action;

4.    That Monsanto be awarded costs of suit;

5.    That Monsanto be awarded such other and further relief as the Court deems just and proper.

Dated:  July 16, 2025                    SHOOK, HARDY & BACON LLP

_____
Alicia J. Donahue

Attorneys for Defendant
MONSANTO COMPANY

**DEMAND FOR JURY TRIAL**

Defendant MONSANTO COMPANY hereby demands a jury trial in the above-entitled action.

Dated:  July 16, 2025                    SHOOK, HARDY & BACON LLP

_____
Alicia J. Donahue

Attorneys for Defendant
MONSANTO COMPANY

7

MONSANTO COMPANY'S ANSWER TO PLAINTIFF'S COMPLAINT

*Denise Surette v. Monsanto Company, et al.*
Sacramento County Superior Court, Case No. 25CV014052

1

## PROOF OF SERVICE

2

3  I am employed in the County of San Francisco, State of California.  I am over the age of 18 and not a party to the within action.  My business address is 555 Mission Street, Suite 2300, San Francisco, California 94105.

4

5  On July 16, 2025, I served a true and correct copy of the document described as **DEFENDANT MONSANTO COMPANY'S ANSWER TO PLAINTIFF'S COMPLAINT FOR DAMAGES; DEMAND FOR JURY TRIAL** on the interested parties, as follows:

6

7

| Parties Represented | Attorneys |
|---|---|
| Plaintiff<br>**KYM HOUGH** | David J. Wool, Esq.<br>**WOOL TRIAL LAW, LLC**<br>1001 N. Bannock St., Suite 410<br>Denver, CO 80204<br>Tel: (720) 509-9101<br>david@wooltriallaw.com<br><br>Devin van der Hahn (PHV forthcoming)<br>**VANDERHAHN LLP**<br>1000 Main St., Suite 2300<br>Houston, TX 77002<br>Tel: (281) 688-5000 \| Fax: (832) 734-7120<br>devin@vanderhahn.com<br><br>Sean Duddy (PHV forthcoming)<br>**DUDDY & CZARNECKI PLLC**<br>601 Pennsylvania Ave NW<br>South Building, Suite 900<br>Washington, DC 20004<br>Tel: (202) 771-7978<br>skd@duddyczarnecki.com |

8

9

10

11

12

13

14

15

16

17

18

19  ☒  **VIA FIRST CLASS U.S. MAIL:** By causing a true and correct copy of the above document to be placed in a sealed envelope with postage fully prepaid and deposited with the United States Postal Service on that same day in the ordinary course of business.

20

21  ☒  **VIA E-MAIL**: By sending the above document to the persons at the e-mail addresses listed above. I did not receive, within a reasonable time after the transmission, any electronic message or other indication that the transmission was unsuccessful.

22

23  I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

24

25  Executed on July 16, 2025, at San Francisco, California.

26

27  Mayra Montalvo

28

Electronically Received 11/03/2025 02:56 PM

David J. Wool (SBN: 324124)
david@wooltriallaw.com
WOOL TRIAL LAW LLC
1001 Bannock St. #410
Denver, CO 80204
T: 720.509.9101

*Attorneys for Plaintiffs*

Alicia J. Donahue (SBN: 117412)
Kara M. Flageollet (SBN: 347646)
SHOOK HARDY& BACON LLP
555 Mission Street, Suite 2300
San Francisco, CA 94105
Telephone: (415)544-1900
Facsimile: (415)391-0281
adonahue@shb.com
kflageollet@shb.com

Mayela C. Montenegro-Urch (SBN: 304471)
Jamboree Center
5 Park Plaza, Suite 1600
Irvine, CA 92614
Telephone: (949)475-1500
Facsimile: (949)475-0016
mmontenegro@shb.com

*Attorneys for Defendant*
MONSANTO COMPANY

**FILED**
Superior Court of California
County of Sacramento
11/12/2025
V. Aleman, Deputy

## SUPERIOR COURT OF THE STATE OF CALIFORNIA
### FOR THE COUNTY OF SACRAMENTO

| | |
|---|---|
| DENISE SURETTE, an individual;<br>Plaintiff,<br>v.<br>MONSANTO COMPANY, a corporation;<br>BAYER CROPSCIENCE LP, INC.,<br>WILBUR-ELLIS COMPANY, LLC; and<br>DOES 1 through 100,<br>Defendants. | Case No.: 25CV014052<br><br>**[PROPOSED] JOINT CASE MANAGEMENT ORDER REGARDING CASE MANAGEMENT DEADLINES**<br><br>Judge: Hon. Lauri Damrell<br>Complaint Filed: June 17, 2025<br>Trial Date: April 12, 2027 |

Pursuant to Rule 3.541 of the California Rules of Court, the Parties submit this Joint Case

Management Conference Statement regarding case management deadlines.

**I.      DISCOVERY AND PRE-TRIAL BREIFING SCHUDULE**

The Parties have met and conferred regarding a schedule and agree to the following

dates for discovery and briefing:

| Event | Date |
|---|---|
| Expert Disclosures Due[1] | November 18, 2026 (Wednesday) |
| Rebuttal Expert Disclosures Due | December 2, 2026 (Wednesday) |
| Close of Fact Discovery | January 29, 2027 (Monday) |
| Last Day to Depose Experts[2] | January 29, 2027 (Monday) |
| Exchange of Affirmative Deposition Designations | March 1, 2027 (Monday) |
| Last Day to File Summary Judgment Motions | December 15, 2026 (Tuesday) |
| Last Day to File Summary Judgment Oppositions | February 3, 2027 (Wednesday) |
| Last Day to File Summary Judgment Replies | February 17, 2027 (Wednesday) |
| Summary Judgment Hearing (per CCP §437c) | March 5, 2027 (Friday) |
| Last Day to File Sargon Motions | February 5, 2027 (Friday) |
| Last Day to File Sargon Oppositions | February 26, 2027 (Friday) |
| Last Day to File Sargon Replies | March 12, 2027 (Monday) Clásé D |

---

[1] The parties agree that depositions of previously deposed experts providing solely general opinions will not be taken in this case unless the expert has additional or new opinions since the expert's last deposition taken in the Roundup litigation. If the expert has additional or new opinions, the deposition will be limited in duration to 3.5 hours. New opinions do not include new materials reviewed and/or relied upon. As to experts with general and case specific opinions, the parties agree that the depositions of such experts will be limited to 3.5 hours provided they have no new opinions regarding general causation. Where the parties' dispute the existence of a New Opinion, the party seeking a deposition of a previously deposed expert shall have the burden of proving that the expert has a New Opinion.

[2] A defense expert will only be deposed *after* the corresponding plaintiff experts.

| Exchange of Objections to Affirmative Deposition Designations and Counter-Designations | March 8, 2027 (Monday) |
| --- | --- |
| Exchange of Objections to Deposition Counter-Designations | March 15, 2027 (Monday) |
| Exchange Trial Readiness Materials | March 19, 2027 (Friday) |
| Last Day to File Motions in Limine | February 27, 2027 (Friday) |
| Last Day to File Motions in Limine Oppositions (no reply briefing) | ~~March 13, 2027~~ (Friday) Tⱥ\&@ꝂJɆΛ€Ꞡꞓ |
| Trial Readiness Conference | April 2, 2027 (Friday) |
| Trial (Jury) | April 12, 2027 (Monday) |

P^ⱥꝯ * Áꞧ} Áꞧ !^Ëꞓ ⱥꝰ Á ꞧ[ꝺꝯ}•Áꝲꞧ &Ꞓ ⱥꝯ * ÁÚⱥꝯ * [}    Tⱥꞩ&@ꝂJɆΛ€Ꞡꞓ ÁꝲꝎⱥ ⱥꞩ D
ⱥꞩ ⱥ ÁꞮ Ꝿ•D

Dated: October 30, 2025

By:     /s/ David J. Wool
David J. Wool (SBN: 324124)
david@wooltriallaw.com
WOOL TRIAL LAW LLC
1001 Bannock St. #410
Denver, CO 80204
T: 720.509.9101

*Attorneys for Plaintiffs*

By:     *Kara M. Flageollet*
Kara M. Flageollet (SBN: 347646)
SHOOK HARDY& BACON LLP
555 Mission Street, Suite 2300
San Francisco, CA 94105
Telephone: (415)544-1900
Facsimile: (415)391-0281
tbwebb@shb.com
kflageollet@shb.com

Mayela C. Montenegro-Urch (SBN: 304471)
Jamboree Center

JOINT CASE MANAGEMENT ORDER REGARDING CASE MANAGEMENT DEADLINES
CASE No. 25CV014052

5 Park Plaza, Suite 1600
Irvine, CA 92614
Telephone: (949)475-1500
Facsimile: (949)475-0016
mmontenegro@shb.com

*Attorneys for Defendant*
MONSANTO COMPANY

JOINT CASE MANAGEMENT ORDER REGARDING CASE MANAGEMENT DEADLINES
CASE No. 25CV014052

## ~~[PROPOSED]~~ ORDER

IT IS SO ORDERED.

Dated: ___11/12/2025___



_____
The Honorable Lauri Damrell
Superior Court of Sacramento County

JOINT CASE MANAGEMENT ORDER REGARDING CASE MANAGEMENT DEADLINES
CASE No. 25CV014052

*Denise Surette v. Monsanto Company, et al.*
Sacramento County Superior Court, Case No. 25CV014052

1    **PROOF OF SERVICE**

2        I am over the age of 18 years and not a party to the within action. I am employed in the

3    County of San Francisco, State of California. My business address is 555 Mission Street, Suite 2300,

4    San Francisco, California 94105, my facsimile number is (415) 391-0281. On the date shown below,

5    I served the following document:

6    • **[PROPOSED] JOINT CASE MANAGEMENT ORDER REGARDING CASE
         MANAGEMENT DEADLINES**

7    on the interested parties named herein and in the manner indicated below:

8

9

| Parties Represented | Attorneys |
|---|---|
| Plaintiff<br>**DENISE SURETTE** | **WOOL TRIAL LAW, LLC**<br>David J. Wool<br>1001 N. Bannock St., Suite 410<br>Denver, CO 80204<br>Tel: (720) 509-9101<br>david@wooltriallaw.com<br><br>**VANDERHAHN LLP**<br>Devin van der Hahn<br>1000 Main /street, Suite 2300<br>Houston, TX 77002<br>Tel: (281) 688-5000<br>devin@vanderhahn.com<br><br>**DUDDY & CZARNECKII PLLC**<br>Sean Duddy<br>601 Pennsylvania Ave. NW<br>South Building, Suite 900<br>Washington, DC 20004<br>Tel: (202) 771-7978<br>skd@duddyczarnecki.com |

22    ☐    **VIA FIRST CLASS U.S. MAIL:** By causing a true and correct copy of the above document
         to be placed in a sealed envelope with postage fully prepaid and deposited with the United
         States Postal Service on that same day in the ordinary course of business.

24    ☐    **VIA FEDERAL EXPRESS, AN OVERNIGHT DELIVERY SERVICE:** By causing a
         true and correct copy of the above document(s) to be delivered to the FEDERAL EXPRESS
         Service Center, and to be delivered by their next business day delivery service to the
         addressee designated.

27    ☒    **VIA E-MAIL**: By sending the above document to the persons at the e-mail addresses listed
         above. I did not receive, within a reasonable time after the transmission, any electronic

*Denise Surette v. Monsanto Company, et al.*
Sacramento County Superior Court, Case No. 25CV014052

1    message or other indication that the transmission was unsuccessful.

2    I declare under penalty of perjury under the laws of the State of California that the foregoing

3    is true and correct.

4    Executed on November 3, 2025, at San Francisco, California.

5

6                                                        _____
                                                                      Elizabeth Erlich

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28